**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JAYVON WRIGHT, ANTOINE MURREY,)
KEITH MEDLEY, GREGORY GRIFFIN,  )
and RASHAD EL,                                          )
                                                                       )
                        Plaintiffs,                             )
                                                                       )
            v.                                                       )            Civil Action No. 13-1966-SLR-SRF
                                                                       )
CITY OF WILMINGTON,                             )
                                                                       )
                        Defendant.                            )

### REPORT AND RECOMMENDATION

## I.       INTRODUCTION

Presently before the court in this in this civil rights action, brought under 42 U.S.C. §

1983, are the following motions:  (1) a motion to certify class filed by plaintiffs Keith Medley

("Medley"), Antoine Murrey ("Murrey"), and Jayvon Wright ("Wright") (collectively,

"plaintiffs")[1] (D.I. 3); (2) a motion to dismiss for failure to state a claim pursuant to Federal Rule

of Civil Procedure 12(b)(6) filed by the City of Wilmington (the "City" or "defendant") (D.I.

10); (3) defendant's motion for a protective order (D.I. 15); (4) plaintiffs' motion to compel (D.I.

17); and (5) plaintiffs' motion to amend the complaint and add members of the proposed class

(D.I. 30).  For the following reasons, I recommend that the court deny plaintiffs' motion to

certify class, deny as moot defendant's motion to dismiss, deny as moot defendant's motion for a

protective order, deny as moot plaintiffs' motion to compel, and grant plaintiffs' motion to

amend.

---

[1] Plaintiffs seek to include additional plaintiffs as class representatives by way of their proposed
amended complaint.  (D.I. 30 at ¶ 5)  For the reasons discussed at § III.A, *infra*, I recommend
that the court deny plaintiffs' request to add Gregory Griffin ("Griffin") and Rashad El ("El") as
class representatives.  For the reasons discussed at § III.B.2, *infra*, I recommend that Griffin and
El be added as plaintiffs in the present case.

## II.    BACKGROUND[2]

Plaintiffs initiated this civil rights action under 42 U.S.C. § 1983 on November 21, 2013,

alleging that pursuant to policy and custom, the City handcuffs, transports, searches and

imprisons individuals based on reasonable suspicion rather than probable cause in violation of

the United States Constitution and relevant federal and state law.  (D.I. 30, Ex. A at ¶ 27)

Specifically, plaintiffs' proposed amended complaint alleges three separate instances of

constitutional violations by police officers involving five named plaintiffs.  (*Id.* at ¶¶ 47-127)

The first instance occurred on November 23, 2011, when Wright allegedly observed

Officer Devon Jones ("Jones"), a member of the Wilmington Police Department ("WPD"),

performing a search of Wright's friend Eduardo Griffin ("Eduardo") over the hood of a police

vehicle.  (*Id.* at ¶ 47)  Wright walked toward the search, stopped eight to ten feet away from

Eduardo and Jones, and asked Eduardo if he needed Wright to call Eduardo's parents for him.

(*Id.* at ¶ 48)  Jones responded, "What the [expletive] do you want, shouldn't you be playing

basketball."  (*Id.* at ¶ 49)  After Wright turned to walk away, Jones allegedly grabbed his arm,

tackled him to the ground, and proceeded to assault Wright for three to five minutes.  (*Id.* at ¶¶

50-51)  Wright asked Jones what he was doing, but Jones did not respond to Wright or to his

mother and uncle standing nearby.  (*Id.* at ¶¶ 52-54)

Following the assault, Jones handcuffed Wright, searched his pockets, placed him in the

back of a police car, and transported him to a police station.  (*Id.* at ¶¶ 58-61)  During the course

of these events, Jones never informed Wright that he was under arrest, or identified the crime he

was suspected of committing.  (*Id.* at ¶ 60)  Wright claims that after he arrived at the station,

---

[2] For purposes of the motion to amend the complaint, the facts alleged in plaintiffs' proposed
amended complaint will be taken as true.

officers handcuffed him to a bench and performed an inventory search of his personal effects. (*Id.* at ¶ 62) After being moved into a jail cell, Wright's handcuffs were removed and he was told he was being charged with resisting arrest. (*Id.* at ¶¶ 63-64) No one questioned Wright in the cell, and he was released approximately two hours later. (*Id.* at ¶¶ 65-66) Wright was charged with loitering and disorderly conduct, but both charges were dismissed prior to trial and Wright was not charged with resisting arrest. (*Id.* at ¶¶ 67-69)

The second incident occurred on or about March 15, 2013, when plaintiffs Medley and Murrey were confronted by WPD officers with guns drawn as they left an apartment complex. (*Id.* at ¶¶ 71-73) The officers instructed both Medley and Murrey to get down on the ground, and the men responded by lying face down on the pavement. (*Id.* at ¶¶ 74-75) The officers handcuffed Medley and Murrey, patted them down for weapons, and searched their persons. (*Id.* at ¶¶ 77-78) One of the officers removed Murrey's car keys from his pocket, and drove and searched the vehicle. (*Id.* at ¶¶ 80-82)

The officers then asked Medley and Murrey which apartment unit they had come from, and brought the men back into an apartment in the complex. (*Id.* at ¶¶ 83-85) The officers escorted Murrey to a bedroom, removed his handcuffs, and compelled him to remove his clothing before searching his mouth and between his buttocks. (*Id.* at ¶¶ 86-87, 90-91) The officers then instructed Murrey to re-dress, handcuffed him again, and returned him to the apartment's living room. (*Id.* at ¶¶ 92-94) Murrey alleges that one officer held a Taser several inches from him during this process, and that the Taser would be deployed if he moved. (*Id.* at ¶¶ 88-89)

The officers subsequently brought Medley to the bedroom, removed his handcuffs, and compelled him to remove all of his clothing before searching his mouth and between his

buttocks. (*Id.* at ¶¶ 95-97, 100-102) After the search, the officers instructed Medley to re-dress, handcuffed him again, and returned him to the apartment's living room. (*Id.* at ¶¶ 102-103) Medley alleges that one officer held a Taser during this process, and he was told that the Taser would be deployed if he moved. (*Id.* at ¶¶ 98-99)

The officers then searched the apartment unit, and seized a cell phone and a pair of bolt cutters. (*Id.* at ¶¶ 104, 106) No officer showed Medley or Murrey a search warrant for the apartment or any other location. (*Id.* at ¶ 105) Medley and Murrey were transported to a police station, placed in a cell for approximately one hour, and were subsequently released with no charges filed. (*Id.* at ¶¶ 108-10) The officers did not inform Medley or Murrey why they had been detained. (*Id.* at ¶ 111)

The third incident occurred on February 3, 2013, when four WPD police officers, including Officer Andrew Schaub, asked proposed plaintiffs Gregory Griffin and Rashad El if they had seen which way certain unidentified people fled near the intersection of Lobdell Street and Chapel Street in Wilmington.[3] (*Id.* at ¶¶ 113-114) Griffin responded, "I don't know, I didn't see anything." (*Id.* at ¶ 115) The officers took Griffin and El into custody without explanation, handcuffed them and placed them into a police vehicle. (*Id.* at ¶¶ 116-118) The officers transported Griffin and El to a police station, where they were handcuffed to a bench. (*Id.* at ¶¶ 119-122, 124) The officers searched Griffin's body until a commanding officer interrupted them and apologized to Griffin. (*Id.* at ¶ 123) The officers also searched El's body. (*Id.* at ¶ 125) Neither Griffin nor El was told why they were taken into custody, and neither was charged with a crime. (*Id.* at ¶¶ 126-127)

---

[3] Plaintiffs' motion to amend the complaint includes averments as to two additional plaintiffs, Griffin and El, which the court will accept as true for the purposes of deciding the motion to amend.

Plaintiffs' proposed amended complaint alleges that the WPD maintains a written policy permitting an individual to be taken into custody, handcuffed, transported to the police station, and held for no more than two hours based on reasonable suspicion. (*Id.* at ¶ 29) Under the WPD's investigatory detention policy, it is normal procedure to handcuff persons suspected of a crime and transport them to a police station based only on reasonable suspicion. (*Id.* at ¶ 31)

Plaintiffs also rely on the WPD's Directive 6.10(K) (the "Directive") in the proposed amended complaint to establish a factual basis for their allegations that the WPD maintains an unconstitutional written policy of detaining, transporting, and searching individuals based only on reasonable suspicion. (*Id.* at ¶¶ 37) The Directive allegedly authorizes officers to exceed the scope of 11 *Del. C.* § 1902, and assumes many individuals will be detained without probable cause. (*Id.* at ¶ 32) According to plaintiffs' proposed amended complaint, the WPD maintains a Turnkey Prisoner Log ("turnkey log") containing easily identifiable records of individuals detained pursuant to the Directive. (*Id.* at ¶¶ 38-43)

## III.   DISCUSSION

### A.   Motion for Class Certification

Plaintiffs move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the class as follows:

> All persons who have been handcuffed, transported, searched, and imprisoned by Wilmington Police Department based only upon reasonable suspicion of a crime during a period lasting from November 22, 2011 to the date on which the WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching, and imprisoning citizens based only upon reasonable suspicion, in contravention of the Constitution, the laws of the United States, and the laws of Delaware. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

(D.I. 3 at 1)

Pursuant to Federal Rule of Civil Procedure 23(a), the court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there
are questions of law or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) the
representative parties will fairly and adequately protect the interests of the class.

In addition to these four requirements, the Third Circuit has adopted an ascertainability
requirement, which is generally considered as a "preliminary matter" before turning to the
explicit requirements of Rule 23. *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013)
(characterizing class ascertainability as "an essential prerequisite of a class action."); *see also*
*Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). To plead ascertainability, (1) "the class
must be defined with reference to objective criteria;" and (2) "there must be a reliable and
administratively feasible mechanism for determining whether putative class members fall within
the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citing
*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)). "If class members are
impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a
class action is inappropriate." *Marcus*, 687 F.3d at 593.

A class may only be certified if all four elements of Rule 23(a) are met and at least one
part of Rule 23(b) is met. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6
(3d Cir. 2008). Plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3). (D.I. 3
at ¶¶ 10-11, 14) A Rule 23(b)(2) class is one in which "final injunctive or . . . declaratory relief
is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) sets forth
two additional requirements for class certification: (1) common questions must predominate
over questions affecting only individual members; and (2) class resolution must be superior to

6

other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

### 1.   Ascertainability

In support of the motion to certify class, plaintiffs argue that a review of WPD incident reports over a period of two years is a feasible and economical way to ascertain the class without extensive or individualized fact finding. (D.I. 3 at ¶ 16; D.I. 18 at ¶ 23) In response, defendant alleges that the proposed class in the present matter is not ascertainable because the court would need to conduct individual inquiries regarding each police detention involving individuals who were handcuffed, transported, searched, and imprisoned by the WPD, and whether those actions were based on reasonable suspicion or probable cause. (D.I. 12 at ¶¶ 11-12)

Plaintiffs have failed to establish the ascertainability of the class in the present matter. To ascertain members of plaintiffs' proposed class, the court would have to engage in individualized fact-finding and "mini-trials" in contravention of Third Circuit precedent. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013). Sifting through the WPD's records to determine which individuals were detained under the circumstances identified in plaintiffs' proposed class, and then determining whether each of those individuals was detained based on reasonable suspicion or probable cause, is precisely the kind of inquiry the Third Circuit has held is inappropriate.

### 2.   Numerosity

Numerosity requires a finding that the putative "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (2001). "No single magic number exists satisfying the numerosity requirement," but the Third Circuit generally has approved classes of forty or more. *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007); *Stewart v. Abraham*, 275 F.3d

7

220, 226-27 (3d Cir. 2001).  Other relevant factors in the numerosity inquiry include the "ease of identifying members and determining addresses, the ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis." *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993).

Plaintiffs contend that this action satisfies the numerosity requirement under Rule 23(a) because the potential number of class members and their dispersed geographical locations render joinder impracticable, and plaintiffs have shown sufficient circumstantial evidence for the court to rely on common sense in certifying the class.  (D.I. 3 at ¶¶ 2-4)  In the alternative, plaintiffs request precertification discovery.  (D.I. 18 at ¶ 4)  In response, defendant argues that plaintiffs' allegations do not demonstrate a pattern of conduct, and plaintiffs' ability to identify only three potential class members and two alleged incidents[4] at this stage in the litigation suggests that they will be unable to justify class certification.  (D.I. 12 at ¶¶ 16-19)

The five plaintiffs[5] identified in the amended complaint are not sufficient in number to warrant class certification.  The turnkey log and other evidence referenced by plaintiffs may supply the identities of additional class members sufficient to meet the numerosity requirement, and the Third Circuit encourages the district court to conduct a "rigorous analysis" of the evidence and arguments that "resolve[s] all factual or legal disputes relevant to class certification." *Marcus,* 687 F.3d at 591 (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316, 307 (3d Cir. 2009)).  However, precertification discovery would be futile in this

---

[4] As defendant's answering brief on the motion to certify class was filed prior to plaintiffs' motion to amend the complaint, it does not address the third incident alleged by plaintiffs regarding Griffin and El.

[5] For purposes of the court's class certification analysis, the court will consider the allegations in the proposed amended complaint regarding Griffin and El.

case because it cannot remove the obstacles to class certification under Rule 23(b), discussed at §

III.A.6 & 7, *infra*. *See* Fed. R. Civ. P. 23(d)(1)(D); *Thompson v. Merck & Co., Inc.*, 2004 WL

62710, at *2 (E.D. Pa. Jan. 6, 2004) (stating that a court may order class allegations to be

stricken where "no amount of additional class discovery will alter the conclusion that the class is

not maintainable.").

### 3. Commonality

In support of their motion to certify class, plaintiffs contend that this case presents only

one common question of law regarding whether the WPD policy and custom of handcuffing,

transporting, searching and imprisoning individuals based only upon reasonable suspicion is

constitutional. (D.I. 3 at ¶ 5) Plaintiffs suggest that this common question of law can be

resolved by an analysis of common facts relating to purported class members, namely that they

were each subjected to and injured by the alleged policy and custom at issue. (*Id.*) Defendants

respond that issues of fact relating to the existence or absence of probable cause will diverge

between purported class members. (D.I. 12 at ¶¶ 22-23)

Commonality is satisfied when "the named plaintiffs share at least one question of fact or

law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.

1994). "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts

among class members. [E]ven a single common question will do." *Marcus*, 687 F.3d at 597

(internal citations and quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

predicates is sufficient, as is a common core of salient facts coupled with disparate legal

remedies within the class."). The Third Circuit has held that "'class relief is consistent with the

need for case-by-case adjudication,' especially where '[i]t is unlikely that differences in the

factual background of each claim will affect the outcome of the legal issue.'" *Baby Neal*, 43

F.3d at 57 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

In the case at bar, plaintiffs have sufficiently established commonality. Although certain

issues of fact may vary by class member, the same issue of law applies to all potential class

members' claims regarding "whether the WPD policy and custom of handcuff, transport, search,

and imprisonment based solely on reasonable suspicion is Constitutional." (D.I. 3 at ¶ 5) Thus,

the named plaintiffs "share at least one question of . . . law with the grievances of the prospective

class." *Baby Neal*, 43 F.3d at 56. The commonality requirement does not require a common set

of identical facts among all class members when a common question of law exists. *See Marcus*,

687 F.3d at 597. Defendant's reliance on the Supreme Court's decision in *Wal-Mart Stores, Inc.*

*v. Dukes* is misplaced because the plaintiffs in that case were unable to identify a specific

employment practice that was challenged. 131 S. Ct. 2541, 2555-56 (2011). In contrast,

plaintiffs in the present action identify a specific policy of handcuffing, transporting, searching,

and imprisoning suspects based on reasonable suspicion.

### 4.    Typicality

"Typicality . . . derives its independent legal significance from its ability to screen out

class actions in which the legal or factual position of the representatives is markedly different

from that of other members of the class even though common issues of law or fact are present."

*Marcus*, 687 F.3d at 598 (internal quotations omitted). However, "[c]omplete factual similarity

is not required; just enough factual similarity so that maintaining the class action is reasonably

economical and the interests of the other class members will be fairly and adequately protected

in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

In assessing typicality, courts within the Third Circuit consider the following three factors:

10

(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough*, 589 F.3d at 599.

In support of their motion to certify class, plaintiffs allege that the typicality requirement is satisfied because any defenses applicable to the class representatives would also apply to members of the class as a whole, and all class members are seeking the same relief. (D.I. 3 at ¶ 8) In response, defendant alleges that questions regarding whether probable cause was present as to each class member would become a major focus of the litigation, noting that the Wright incident resulted in two criminal charges, and plaintiffs fail to allege a lack of probable cause in the Medley and Murrey incident.[6] (D.I. 12 at ¶¶ 28-29) Defendant further contends that individualized proof of damages is required because the requested relief is not limited to declaratory and injunctive relief. (*Id.* at ¶ 30)

Defendant plans to assert a defense of probable cause, but there is insufficient information regarding the other members of the class to determine whether the class as a whole will be subject to defenses applicable to the class representatives. *See In re Schering Plough*, 589 F.3d at 600 ("[N]o conclusion as to [the proposed class representative's] typicality can be reached without knowing more about the composition of the class"). However, a definitive resolution of this inquiry would not remove the obstacles to class certification under Rule 23(b), discussed at § III.A.6 & 7, *infra. See* Fed. R. Civ. P. 23(d)(1)(D); *Thompson v. Merck & Co.,*

---

[6] Defendant's response refers to the original complaint, but the court notes that the amended complaint reflects no changes in the factual allegations regarding Medley and Murrey. (D.I. 30, Ex. A at ¶¶ 71-112)

11

*Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (stating that a court may order class allegations to be stricken where "[n]o amount of additional class discovery will alter th[e] conclusion" that the class is not maintainable).

### 5.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This analysis requires the court to determine "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001).

The adequacy requirement is not met under the facts of the present case due to foreseeable conflicts between Wright and the proposed class. Plaintiffs define the proposed class to include "[a]ll persons who have been handcuffed, transported, searched, and imprisoned by Wilmington Police Department based only upon reasonable suspicion of a crime." (D.I. 3 at 1) However, the amended complaint expressly states that Wright "was charged with two misdemeanors, loitering and disorderly conduct." (D.I. 30, Ex. A at ¶ 67) On its face, this allegation distinguishes Wright from the other proposed class representatives and suggests that he will fall outside the scope of the proposed class.

### 6.    Rule 23(b)(2) requirements

Rule 23(b)(2) is intended for classes where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class certified under Rule 23(b)(2) must not primarily seek individualized awards of money damages. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560 (2011). Where, as here, the putative class seeks injunctive and declaratory relief as well as compensatory damages, the Third

Circuit measures the predominance of money damages in the Rule 23(b) context using the "incidental damages" standard set forth by the Fifth Circuit to determine whether the monetary damages are incidental to the injunctive and declaratory relief sought. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 198-99 (3d Cir. 2009). The Supreme Court upheld application of the incidental damages standard, explaining that "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case." *Wal-Mart Stores,* 131 S. Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). "[T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief," and should not depend "on the intangible, subjective differences of each class member's circumstances." *See Allison*, 151 F.3d at 415.

Plaintiffs contend that all damages requested in this case meet the requirements of Rule 23(b)(2) because no individualized hearings on damages will be required and no new substantive legal or factual issues will be presented. (D.I. 3 at ¶ 12) Defendant argues that the disparate factual circumstances of each of potentially thousands of investigatory detentions would require individualized injunctive or declaratory relief, and that class certification under Rule 23(b)(2) is inappropriate because each class member would be entitled to an individualized award of money damages upon a showing of liability. (D.I. 12 at ¶ 37-38)

Pursuant to the proposed amended complaint, plaintiffs seek "[a] judgment against Defendant . . . awarding damages to Plaintiffs and each Member of the Proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a Class-wide basis." (D.I. 30, Ex. A at 19, ¶ 2) Plaintiffs also seek a declaratory judgment declaring defendant's policy and custom unconstitutional, and an injunction enjoining defendant from

perpetuating the allegedly unconstitutional policy and custom.  (*Id.* at ¶¶ 3-4)  However,

plaintiffs also expressly seek "[a]ll lawful damages, including compensatory damages in an

amount to be determined, against Defendant," as well as attorneys' fees and costs.  (*Id.* at ¶¶ 5-6)

The requested money damages are not incidental to the injunctive and declaratory relief

sought.  Plaintiffs seek compensatory damages, which "necessarily implicate[] the subjective

differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."

*Allison*, 151 F.3d at 417.  Determining each class member's monetary damages will require an

individualized analysis of the factual circumstances of his or her detention.  Therefore, plaintiffs

fail to satisfy the requirements of Rule 23(b)(2).

### 7.    Rule 23(b)(3) requirements

To qualify for class certification under Rule 23(b)(3), "(a) common questions must

predominate over any questions affecting only individual members; and (b) class resolution must

be superior to other available methods for the fair and efficient adjudication of the controversy."

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002) (citing *Amchem*

*Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  The predominance element of Rule

23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 227 (D. Del. 2008)

(citing *Amchem*, 521 U.S. at 623; *In re Warfarin*, 391 F.3d at 527).  The predominance

requirement incorporates the commonality requirement, but "predominance is significantly more

demanding, requiring more than a common claim." *Newton v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001).  In assessing the superiority factor, the court must

"balance, in terms of fairness and efficiency, the merits of a class action against those of

alternative available methods of adjudication." *Teva Pharm. USA*, 252 F.R.D. at 231 (citing *In*

14

*re Prudential,* 148 F.3d at 316). The primary purpose of certifying cases under Rule 23(b)(3) is "to vindicate the rights of people who individually would be without the strength to bring their opponents into court [and] ... overcome[] the problem of small recoveries, which do not provide enough incentive for individual actions to be prosecuted." *In re Warfarin*, 212 F.R.D. at 247 (citing *Amchem Products*, 521 U.S. at 617).

Plaintiffs argue that common questions of law and fact regarding the constitutionality of WPD's alleged detention policy predominate over any questions affecting only individual class members, and pursuing individualized litigation would be impracticable and would increase delay and expense for both the parties and the court. (D.I. 3 at ¶¶ 14-15) Defendant responds that individual control of the prosecution of this action would be in the best interest of the putative class members, and the failure to join other potential claimants may preclude maintenance of individual claims after settlement or judgment. (D.I. 12 at ¶ 40) Defendant also contends that plaintiffs have failed to offer a reason that claimants cannot present their claims individually, and notes that 42 U.S.C. § 1983 actions are routinely filed on an individual basis in this court. (*Id.*)

The requirements of Rule 23(b)(3) are not satisfied in the present action because the need for individualized findings of the factual circumstances and relevant legal classifications surrounding each detention precludes class certification. The predominance requirement cannot be met when each individual's "claim raises radically different factual and legal issues from those of other plaintiffs." *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 618 (3d Cir. 1996), *aff'd, Amchem*, 521 U.S. 591. In this case, the factual circumstances of detention vary significantly even between the five named plaintiffs, and each class member's inclusion would require an analysis of whether the facts and legal character of the detention comport with

plaintiffs' theory, and whether probable cause was present in each individual case. (D.I. 30, Ex. B at ¶¶ 47-127)  Plaintiffs have failed to establish that common questions predominate over concerns affecting only individual class members.

In light of the foregoing analysis, I recommend that the court deny plaintiffs' motion to certify class.  Plaintiffs have failed to establish the ascertainability, numerosity, and adequacy factors of the Rule 23(a) analysis.  Further, because a determination of the proper measure of monetary damages for each class member would require individualized analysis of the factual circumstances surrounding detention, certification under Rule 23(b)(2) is improper.  Plaintiffs also do not satisfy the predominance requirement of Rule 23(b)(3), because the legal character of each class member's detention depends on individualized factual circumstances.

### B.     Motion to Amend Pursuant to Rule 15(a)

#### 1.     Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990).  In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party.  *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

## 2.    Analysis

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decisionmaker possess[ing] final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: "(1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the 'moving force' behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights." *Holmes v. City of Wilmington*, C.A. No. 13-842-SLR, 2015 WL 467989, at *9 (D. Del. Feb. 4, 2015) (citing *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997)).

17

### a.   Policy

Policy is created when a "decisionmaker possess[ing] final authority to establish

municipal policy with respect to the action issues an official proclamation, policy, or edict."

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 481 (1986)) (internal quotations omitted).  In addition to showing the

existence of a policy,[7] "the plaintiff must also demonstrate that, through its deliberate conduct,

the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs*, 520

U.S. 397, 404; *see also Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 432 ("The

unconstitutional policy or custom can only be the basis for a *Monell* violation if there is a 'causal

link' between the unconstitutional policy or custom … and the injury.").

Defendant contends that the proposed amended complaint fails to state a claim on policy

grounds because the Directive is not unconstitutional on its face. (D.I. 31 at 8-9)  Moreover,

defendant argues that the proposed amended complaint fails to allege the requisite causal link

between the Directive and the injuries sustained by plaintiffs or the absence of probable cause.

(*Id.* at 11)  In response, plaintiffs contend that the Directive supports an unconstitutional policy

because it improperly equates arrests and administrative detentions by assuming that many

suspects will be detained and transported without probable cause under 11 *Del. C.* § 1902.  (D.I.

33 at 5-6)

The proposed amended complaint sufficiently alleges a policy in violation of 42 U.S.C. §

1983 because it identifies the Directive as an allegedly unconstitutional policy that caused

plaintiffs' injuries.  The amended complaint quotes the portion of the Directive stating that

---

[7] The parties do not dispute the existence of a policy.  Therefore, the court will not address this
issue.

> [m]any people are picked up as suspects in a particular crime. Until they have been identified and arrested, we must remember that they are only suspects. The majority of such detentions result in the person being released without criminal charges being placed. They should not be brought to Central or taken from one location to another, then released to find their own means of transportation. Officers are to offer to transport them back to the location where they were originally stopped and provide them with an explanation of why they were detained.

(D.I. 30, Ex. A at ¶ 35)  The proposed amended complaint then sets forth plaintiffs' interpretation of the Directive, stating that the Directive "makes it clear that WPD has a written policy of detaining, transporting, and imprisoning persons merely suspected of a crime based solely on reasonable suspicion." (D.I. 30, Ex. A at ¶ 37)  The three incidents described by plaintiffs in the proposed amended complaint, taken as true, support plaintiffs' allegations regarding the practical application of the Directive because each incident involved the detention and transportation of individuals without the identification of specific charges. (*Id.* at ¶¶ 47-127)  Viewing plaintiffs' characterization of the Directive's language in conjunction with the facts surrounding the three incidents set forth in the amended complaint, the court concludes that a reasonable jury could credit plaintiffs' allegations.

The proposed amended complaint also sufficiently demonstrates a direct causal link between the Directive and the alleged deprivation of federal rights. Specifically, the amended complaint states that,

> [p]ursuant to this WPD policy and custom each member of the Class, including the named Plaintiffs, were handcuffed, transported, searched, and imprisoned based only on reasonable suspicion that they had committed a crime.
>
> As a direct and proximate result of the unlawful policy and custom of WPD handcuffing, transporting, searching, and imprisoning individuals based only on reasonable suspicion, each member of the class, including the named Plaintiffs – has suffered a loss of their liberty, physical injuries, psychological pain, humiliation, suffering and mental anguish.

19

(D.I. 30, Ex. A at ¶¶ 45-46) Defendant's contention that an officer's subjective belief of the existence of probable cause constitutes an absolute defense to plaintiffs' allegations is not persuasive in the context of a Rule 15 analysis, as plaintiffs' allegations are deemed true and discovery is required to ascertain the merits of the affirmative defenses.

Defendant alleges that the court should disregard the deposition testimony of Gestwicki and Schifano quoted by plaintiffs in the proposed amended complaint because the testimony is taken out of context. (D.I. 30 at 11) However, at this stage of the proceedings, the facts set forth in the amended complaint must be taken as true. *See Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007). The court cannot properly resolve challenges to the admissibility or characterization of this testimony at the pleadings stage.

### b. Custom

Customs, as opposed to policies, are "practices of state officials so permanent and well-settled as to virtually constitute law." *Wooleyhan v. Cape Henlopen Sch. Dist.*, C.A. No. 10-153, 2011 WL 4048976, at *4 (D. Del. 2011) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)). A plaintiff may demonstrate the existence of a custom "by showing the practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it." *Id.* Although a single incident by a lower level employee acting under color of law cannot establish either an official policy or custom, "if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1983) (citing *Okla. City v. Tuttle*, 471 U.S. 808 (1985)).

Defendant argues that three alleged incidents over a period of eighteen months are insufficient as a matter of law to establish a custom, pattern, or practice pursuant to 42 U.S.C. §

1983, especially because the factual allegations regarding the majority of the named plaintiffs do not support a custom claim under plaintiffs' theory.[8]  (D.I. 31 at 14-15)  In response, plaintiffs contend that the WPD implemented the practice with respect to each of the five named plaintiffs, and the turnkey log will facilitate identification of other potential class members.  (D.I. 33 at 13-14)  Moreover, plaintiffs contend that a single application of the alleged custom is sufficient to establish the existence of an official policy under the facts of this case.  (*Id.*)

The proposed amended complaint alleges facts that, taken as true, establish the existence of a custom of handcuffing, transporting, searching, and detaining individuals based only on reasonable suspicion in violation 42 U.S.C. § 1983.  Allegations regarding the five named plaintiffs, Gestwicki and Schifano's testimony, and the contents of the turnkey log plausibly show that the "practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it."  *Wooleyhan*, 2011 WL 4048976, at *4. Specifically, the proposed amended complaint states that it is "normal procedure to place persons suspected of a crime in handcuffs and transport them to the police station based only on reasonable suspicion" when conducting an investigatory detention.  (D.I. 30, Ex. A at ¶ 31) Further, plaintiffs allege that in each of the three specific incidents described in the amended complaint, plaintiffs were detained, searched, brought to a WPD facility, and eventually released. (D.I. 30, Ex. A at ¶¶ 47-127)  Although Wright was allegedly charged with two misdemeanors after he was detained, the amended complaint indicates that Medley, Murrey, Griffin, and El were not charged with any crime, and none of the named plaintiffs were told why they had been

---

[8] Although Griffin and El are not currently class representatives in this action based on the court's disposition of the motion to certify class, the amended complaint names them as plaintiffs, and factual allegations regarding the incident involving Griffin and El may still be properly considered with regard to plaintiffs' § 1983 allegations.

detained initially.  (D.I. 30, Ex. A at ¶¶ 67, 110, 111, 126, 127)  Finally, the amended complaint

asserts that the turnkey log identifies other individuals who have been transported to and

detained in jail pursuant to an investigatory detention.  (D.I. 30, Ex. A at ¶ 39)

　　　Defendant cites *City of Oklahoma v. Tuttle* for the proposition that showing a pattern in a

42 U.S.C. § 1983 claim requires "considerably more proof than a single incident."  471 U.S. 808,

824 (1985).  The court in *Tuttle* concluded that "[p]roof of a single incident of unconstitutional

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be

attributed to a municipal policymaker."  *Id.*  Defendant's assertion that two incidents are

insufficient as a matter of law to establish a pattern of conduct ignores the proposition that a

single application of a well-settled custom is sufficient if it was done pursuant to official policy.

*Wooleyhan*, 2011 WL 4048976, at *4.  Viewed in combination with the factual allegations

regarding the remaining incidents, Gestwicki and Schifano's testimony, and plaintiffs' proposed

interpretation of the turnkey log, plaintiffs have alleged sufficient facts to demonstrate a settled

practice.  (D.I. 30, Ex. A at ¶¶ 29, 31, 38-44, 47-127)  Alternatively, the amended complaint

sufficiently identifies a custom beyond a single incident by describing the turnkey log and

Gestwicki and Schifano's testimony, both of which suggest that the practice of detaining

suspects based only on reasonable suspicion was well-established.  *See Fletcher*, 867 F.2d at

793.  At the pleadings stage, plaintiffs have pleaded plausible § 1983 claims.

### c.　Moving force

　　　Plaintiffs have also alleged sufficient facts to show that the municipality is the moving

force behind the alleged injury.  A pleading sufficiently alleges the "moving force" requirement

when it establishes that "the municipal action was taken with the requisite degree of culpability

and a causal link exists between the action and the deprivation." *Wooleyhan*, 2011 WL 4048976, at *4. When a plaintiff claims a municipal practice or custom violates federal law on its face, "issues of fault and causation are straightforward: proof the authorized decision maker deprived the plaintiff of a federally protected right necessarily establishes the municipality acted culpably and that the municipal action was the moving force behind the plaintiff's injury." *Id.* Plaintiffs allege that they were deprived of federal rights under § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution as a result of their detention, search, handcuffing, and transport. (D.I. 30, Ex. A at ¶¶ 38-44, 47-127) Assuming the truth of the amended complaint's factual allegations regarding the three incidents and the turnkey log, the amended complaint plausibly alleges that the WPD's custom of handcuffing, searching, transporting, and imprisoning individuals based on reasonable suspicion resulted in plaintiffs' injuries.

### d.    Failure to train

Defendant contends that the proposed amended complaint fails to specifically identify the allegedly deficient training, or establish a pattern of constitutional violations sufficient to charge policymaking officials with knowledge of the need for changes to training. (D.I. 31 at 16) In response, plaintiffs argue that a reasonable inference may be drawn that the officers were trained to enforce the unconstitutional policy because defendant admitted to maintaining the unconstitutional policy. (D.I. 33 at 16) Plaintiffs allege that they need not identify specific training deficiencies at this stage, as long as the pleaded facts show that the need for more or different training is apparent and the inadequacy of the current training is likely to result in a constitutional violation. (*Id.*)

A plaintiff alleges a failure to properly train or supervise employees under 42 U.S.C. § 1983 when "the failure to train amounts to deliberate indifference to the rights of persons with

whom the police come into contact." *City of Canton, Ohio v. Harris* 489 U.S. 378, 390 (1989). To show a failure to train or supervise amounts to deliberate indifference, a plaintiff must demonstrate that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter,* 181 F.3d at 357 (citing *Walker*, 974 F.2d at 297-98)). A failure to train may amount to deliberate indifference "where the need for more or different training is obvious, and inadequacy [is] very likely to result in violation of constitutional rights." *Carter*, 181 F.3d at 357 (citing *Canton*, 489 U.S. at 389).

The allegations in the amended complaint, taken as true, sufficiently establish deficiencies in training amounting to deliberate indifference. Specifically, the proposed amended complaint states that defendant "failed to adequately and properly supervise and train its police officers in various aspects of law enforcement procedure, including but not limited to, the nature and existence of probable cause, on the constitutional limitations on investigative stops, detentions, searches and seizures, and on the [l]aws of Delaware." (D.I. 30, Ex. A at ¶ 133) Although this allegation lacks specific details regarding the training program, "the Third Circuit has recognized ... that a plaintiff cannot be expected to know what training was in place or how training procedures were adopted without the benefit of discovery." *Arnold v. Minner*, C.A. No. 04–1346–JJF, 2005 WL 1501514 (D. Del. 2005) (citing *Carter v. City of Phila.*, 181 F.3d 339 (3d Cir. 1999)). The Third Circuit has determined that a plaintiff may reasonably surmise that a pattern of misconduct reflects inadequate training and supervision, but the plaintiff cannot be "expected to know, without discovery, exactly what training policies were in place or how they were adopted." *Carter*, 181 F.3d at 358. Allowing discovery on plaintiffs' claim for

failure to train is appropriate in the present case to establish the precise nature of the policies. For the foregoing reasons, I recommend that the court grant the motion to amend the complaint as to the policy, custom or practice, and failure to train claims. Plaintiffs may file within thirty days an amended complaint which conforms to the recommendations herein, i.e., denial of certification of class but allowance of individual plaintiffs' § 1983 claims.

### C.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Having recommended that the court grant plaintiffs' motion to amend, I recommend that the court deny defendant's motion to dismiss as moot.  Defendant may file an answer or motion in response to the amended complaint in accordance with Rule 12.

### D.     Motion for Protective Order & Motion to Compel

In support of its motion for a protective order, defendant requests that the court preclude discovery until defendant's motion to dismiss and plaintiffs' motion to certify class are resolved. (D.I. 15)  In response to defendant's motion for a protective order, plaintiffs filed a motion to compel defendant to produce certain pre-certification discovery.  (D.I. 17)  In light of the fact that the court recommends denial of the motion to dismiss as moot and denial of the motion to certify class, I recommend that defendant's motion for a protective order and plaintiffs' motion to compel be denied as moot.

## IV.    CONCLUSION

For the reasons discussed above, I recommend that the court deny plaintiffs' motion to certify class (D.I. 3), deny as moot defendant's motion to dismiss (D.I. 10); deny as moot defendant's motion for a protective order (D.I. 15); deny as moot plaintiffs' motion to compel (D.I. 17); and grant plaintiffs' motion to amend (D.I. 30).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: January 28, 2016

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE