IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Jayvon Wright, Antonine Medley, and Keith Murrey, individually, and on behalf of a Class of others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>City of Wilmington,<br>                  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C. A. No. 13-1966-SLR<br>)<br>)<br>)<br>) |

## THE CITY OF WILMINGTON'S OBJECTIONS
## TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE

OF COUNSEL:
Michael P. Migliore
Rosamaria Tassone-DiNardo
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, DE 19801
(302) 576-2175

C. Malcolm Cochran, IV (#2377)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Cochran@rlf.com
Haynes@rlf.com
Flynn@rlf.com

*Attorneys for Defendant*
*City of Wilmington*

Dated: February 12, 2016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 1

FACTS ..................................................................................................................................... 2

        A.    The Insufficient "Policy" Claim. ........................................................................... 3

        B.    The Insufficient "Custom and Practice" Claim .................................................... 3

        C.    The Insufficient Supervision and Training Claim ............................................... 4

        D.    The Proposed Amended Complaint is Deficient ................................................. 4

ARGUMENT ........................................................................................................................... 5

    I.    THE STANDARDS ..................................................................................................... 5

        A.    The Complaint. ....................................................................................................... 6

        B.    The Proposed Amended Complaint. ..................................................................... 7

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Andrews v. City of Philadelphia,*
  895 F.2d 1469 (3d Cir. 1990)............................................................................................*passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).........................................................................................................*passim*

*Baker v. Monroe Twp.,*
  50 F.3d 1186 (3d Cir. 1995).......................................................................................................9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).........................................................................................................*passim*

*Brown v. Muhlenberg Twp.,*
  269 F.3d 205 (3d Cir. 2001).......................................................................................................6

*In re Burlington Coat Factory Secs. Litig.,*
  114 F.3d 1410 (3d Cir. 1997).....................................................................................................9

*Cannon v. State,*
  168 A.2d 108 (Del. 1961) ..........................................................................................................8

*Carswell v. Borough of Homestead,*
  381 F.3d 235 (3d Cir. 2004).......................................................................................................6

*City of Canton, Ohio v. Harris,*
  489 U.S. 378 (1989)..........................................................................................................1, 2, 7

*City of Oklahoma City v. Tuttle,*
  471 U.S. 808 (1985)...................................................................................................................7

*Colburn v. Upper Darby Twp.,*
  946 F.2d 1017 (3d Cir. 1991).....................................................................................................7

*Davis v. City of New York,*
  75 F. App'x 827 (2d Cir 2003) .............................................................................................2, 10

*Florida v. Royer,*
  460 U.S. 491 (1983)...................................................................................................................9

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009).......................................................................................................5

*Glover v. City of Wilmington,*
   966 F. Supp. 2d 417 (D. Del. 2013) ............................................................................. 5, 7, 8, 9

*Hayes v. Florida,*
   470 U.S. 811 (1985) ............................................................................................................... 9

*Hicks v. State,*
   631 A.2d 6 (Del. 1993) .......................................................................................................... 8

*Koken v. GPC Int'l, Inc.,*
   443 F. Supp. 2d 631 (D. Del. 2006) .................................................................................. 1, 2

*McTernan v. City of York, Pa.,*
   564 F.3d 636 (3d Cir. 2009) .................................................................................................. 6

*Monell v. Dep't of Social Servs. of City of New York,*
   436 U.S. 658 (1978) ........................................................................................................... 1, 2

*Moore v. State,*
   997 A.2d 656 (Del. 2010) ...................................................................................................... 8

*Murphy v. Mifflin Cty. Reg'l Police Dep't,*
   548 F. App'x 778 (3d Cir. 2013) ....................................................................................... 8, 9

*United States v. Wrensford,*
   No. 2013-0003, 2014 WL 3907021 (D.V.I. Aug. 11, 2014) ................................................. 9

*Wright, et al. v. City of Wilmington*
   C.A. No. 13-1966-SLR-SRF (D. Del. Jan. 28, 2016) ........................................................... 1

**STATUTES & RULES**

11 *Del. C.* § 1902 ........................................................................................................................ 8

42 U.S.C. § 1983 ........................................................................................................................ 1

Fed. R. Civ. P. 72(b)(3) .............................................................................................................. 1

RLF1 13825362v.1

## NATURE AND STAGE OF THE PROCEEDINGS

This case is brought under 42 U.S.C. § 1983. The Magistrate Judge has recommended (i) denial of the City of Wilmington's ("City") Motion to Dismiss the Complaint (D.I. 10, 11, 22, 23, the "Motion to Dismiss") and; (ii) that Plaintiffs' Motion to Amend Complaint (D.I. 30, 31, 33, 42, the "Motion to Amend") be granted. Report and Recommendations, *Wright, et al. v. City of Wilmington* C.A. No. 13-1966-SLR-SRF (D. Del. Jan. 28, 2016) ("Report") (D.I. 52).[1]

The City of Wilmington ("City") objects to the proposed findings and recommendations on the Motion to Dismiss and the Motion to Amend. The Motion to Dismiss should be granted because the Complaint fails to state a claim under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Plaintiffs' Motion to Amend should be denied as futile because, as amended, the Complaint still would not state a claim. *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006).

Rulings in the City's favor on these motions would be dispositive of the Plaintiffs' claims. Review in this Court is thus *de novo*. Fed. R. Civ. P. 72(b)(3).

## SUMMARY OF ARGUMENT

1. The Complaint fails to state a claim that the City has an unconstitutional policy of "handcuffing, transporting, searching, and imprisoning individuals based only on reasonable suspicion" because it contains no factual allegations supporting the existence of the policy, such

---

[1] The Magistrate Judge also recommended in her Report (i) denial of the Plaintiffs' Motion for Class Certification (D.I. 3, 12, 18), and (ii) denial (as moot) of the parties' cross discovery motions, including the City's Motion for Protective Order (D.I. 15, 19) and the Plaintiffs' Motion to Compel (D.I. 17, 19). The City does not object to denial of the Motion for Class Certification, but maintains that its Motion for Protective Order (D.I. 15) should be granted, if the case is not dismissed, for the reasons stated in the motion.

1

RLF1 13825362v.1

as the identity of the authorized decision maker who adopted the policy, the specific language of the policy, or citation to any proclamation or ordinance. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).

2.  The Complaint also fails to state a claim that the City has adopted an unconstitutional custom and practice of "handcuffing, transporting, searching and imprisoning individuals based only upon reasonable suspicion." The two incidents alleged do not establish a pattern sufficient to impose *Monell* liability on the City. *See Davis v. City of New York*, 75 F. App'x 827, 830 (2d Cir 2003)("[T]wo incidents . . . can never provide a reasonable basis for finding a widespread or well-settled custom."). The claim that the City failed to provide proper training or supervision is conclusory, and thus fails under *Twombly* and *Iqbal*.

3.  The Proposed Amended Complaint ("PAC") would not cure these deficiencies. The WPD directive cited in the PAC (6.10K) is not unconstitutional on its face. The deposition excerpts of two WPD officers from another case are taken out of context. The Plaintiffs have failed to plead sufficient factual content. *Iqbal*, 556 U.S. at 678. The Motion to Amend should be denied as futile. *Koken*, 443 F. Supp. 2d at 634.

## FACTS

No individual police officers are sued in this case. The Plaintiffs have attempted to allege only *Monell* and *Canton* claims for municipal liability, against the City. The Complaint states that the Wilmington Police Department ("WPD") "has adopted a policy and custom which allows officers to handcuff, transport, search, and imprison citizens based only upon reasonable suspicion that a crime has been committed . . . ." Compl. ¶ 25 (D.I. 1). The Complaint alleges that each of the named Plaintiffs was "handcuffed, transported, searched, and imprisoned based only on reasonable suspicion that they had committed a crime." *Id.* ¶ 26. Finally, the Plaintiffs

allege that the City "failed to adequately and properly supervise and train [its] police officers . . . ." *Id.* ¶ 99.

### A. The Insufficient "Policy" Claim.

The Complaint contains no allegations of fact regarding the "policy" purportedly at issue. The "policy" is nowhere identified, quoted or cited. There are no allegations regarding when the policy was adopted, nor by whom. There is no indication as to whether the "policy" was adopted by an authorized policymaker. The allegation that there was a policy of the sort described is entirely conclusory and thus insufficient to state a claim under *Twombly* and *Iqbal*.

### B. The Insufficient "Custom and Practice" Claim

The Plaintiffs also claim in their Complaint that "the City developed and maintained . . . [unconstitutional] practices and/or customs . . . ." Compl. ¶ 98 (D.I. 1). The conclusion is premised on two incidents alleged in the Complaint, one involving Jayvon Wright in November of 2011, and one on March 15, 2013 involving Plaintiffs Medley and Murrey. *Id.* ¶¶ 28-93.

With regard to Mr. Wright, however, the Complaint alleges that he was arrested by officers when he interfered with the search of another subject. *Id.* ¶¶ 28, 29. Mr. Wright was charged with "loitering and disorderly conduct" thus inferring the existence of probable cause when he was (purportedly) detained. *Id.* ¶¶ 39-48. It is not alleged that Mr. Wright was "handcuffed [etc.] and imprisoned based only on reasonable suspicion . . . ."

With regard to Murrey and Medley, the pair were purportedly confronted by officers as they emerged from a friend's apartment, searched, transported to the station, held in a cell for approximately one hour, and then released. *Id.* ¶¶ 52-90. The Complaint does not allege facts, regarding the reasons the men were detained, does not allege that they were detained for no reason, and does not allege that the detention was based solely on reasonable suspicion. *Id.*

3

### C. The Insufficient Supervision and Training Claim

Finally, the Complaint alleges no facts to support the claim that the City failed to supervise and train its police officers. As with the "policy" and "custom" claims, there is only the conclusory allegation that the City "failed to adequately and properly supervise and train [its officers] . . . in various aspects of law enforcement procedure . . . ." *Id.* ¶ 99.

### D. The Proposed Amended Complaint is Deficient

The PAC would add a reference to a specific directive—WPD Directive 6.10K. *See, e.g.*, PAC ¶¶ 32-37 (D.I. 30). The directive states, in pertinent part:

> K. Detention of Suspects
>
> 1. Relative to the detention of suspects, all personnel are advised to review the contents of the Title 11, Section 1902 of the Delaware Criminal Code as it relates to the "Two Hour Uniform Arrest Law." This section provides sufficient guidance in the conduct of such detention.
>
> 2. Many people are picked up as suspects in a particular crime. Until they have been identified and arrested, we must remember that they are only suspects. The majority of such detentions result in the person being released without criminal charges being placed. They should not be brought to Central or taken from one location to another, then released to find their own means of transportation. Officers are to offer to transport them back to the location where the [sic] were originally stopped and provide them with an explanation of why they were detained.
>
> 3. At the time of their detention, officers should be mindful that any person suddenly deprived of his freedom may be dangerous, therefore, the proper precautions should always be taken to ensure the officers' safety.

City's Answering Brief in Opposition to Plaintiffs' Motion to Amend, Ex. A (D.I. 31).

The PAC also adds a reference to testimony, taken in another action, of Officers Gestwicki and Schifano. PAC ¶¶ 29-31 (D.I. 30). The testimony was taken out of context, however, as the remainder of the transcript illustrates. D.I. 23 at 8-10 and Ex. 3 (Gestwicki); D.I. 32, Ex. E (Schifano). The officers were testifying about a hypothetical DUI investigation, where the subject was transported to the station for a blood draw. The officers did not state that WPD

4

has a general policy or practice of handcuffing and transporting detainees based on reasonable suspicion. Judge Andrews considered the Gestwicki and Schifano testimony in the *Glover* case, and concluded that it does not demonstrate that the City maintains an illegal policy. *Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 431-32 (D. Del. 2013).

Finally, the Proposed Amended Complaint would add two plaintiffs: Mr. Griffin and Mr. El. PAC ¶¶ 113-127 (D.I. 30). The pair were allegedly detained and transported to the police station together, in one incident. But no facts are alleged regarding the circumstances that lead to the detention and transport – only that the two were not told why they were detained. *Id.* ¶ 117. It is not alleged that the men were taken into custody based only on reasonable suspicion, nor that probable cause was absent. *Id.*

## ARGUMENT

The Magistrate Judge erred by (i) not analyzing the Complaint, which is deficient under *Twombly* and *Iqbal*, (ii) failing to reject the proposed "policy" claim as deficient on its face, and (iii) by failing to reject the PAC in its entirety, as futile.

### I. THE STANDARDS

While the Court must accept the "well pleaded" facts in the Complaint as true for this motion, more is required than labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court need not assume the truth of legal conclusions, nor of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Rather, the court must determine whether the facts alleged are sufficient to show a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "[T]he plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

5

complaint must "show" entitlement to relief with its facts. *See id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.

### A.   The Complaint.

The Complaint fails to meet the "rigorous standards of culpability and causation required for municipal liability." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658–59 (3d Cir. 2009). Specifically, to hold a municipality liable, a plaintiff must "identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact," *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004), and prove "'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton*, 489 U.S. at 385). The Complaint in this matter fails to allege facts sufficient to meet these elements.

Specifically, "[p]olicy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480. The Complaint contains no allegations of fact in this regard. No official proclamation, policy or edict is cited or quoted. No policy maker is identified. The policy claim is unsupported by allegations of fact. *See, e.g.*, Compl. ¶¶ 25, 101.

The "custom and practice" claim is also conclusory, except for the allegation that Wright, Medley and Murrey were detained pursuant to the alleged unlawful practice. Compl. ¶¶ 28-93. As for Wright, however, the Complaint alleges that he was charged with two crimes—meaning that he was detained based on probable cause, rather than reasonable suspicion. Compl. ¶ 48. As for Murrey and Medley, the pair were purportedly detained in the same incident, but there is no allegation as to why they were detained, nor that they were detained on less than probable

6

cause. Compl. ¶¶ 52-93. Further, for a course of conduct to constitute "custom" it must be " 'so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480. One incident, even if the Plaintiffs are correct that the Murrey/Medley detention was unlawful, does not constitute "custom." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

As for the "training and supervision" claim (Compl. ¶ 99), the hurdle is high and the Plaintiffs have failed to plead facts. To establish municipal liability the Plaintiffs must identify specific training deficiencies, *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991), and show either a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or that "the need for more or different training [or supervision] [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" as to amount to deliberate indifference. *City of Canton*, 489 U.S. at 390 & n.10.

But the only allegation related to training and supervision is the conclusory claim that the City "failed to adequately and properly supervise and train its police officers in various aspects of law enforcement procedure . . . ." Compl. ¶ 99 (D.I. 1). The claim is "threadbare" — there are no allegations regarding what training was deficient, how, or why. There are no factual allegations regarding the inadequacy of discipline. There are no facts alleged that show a "pattern of constitutional violations." There is no factual basis alleged for the (false) conclusion that the City was "deliberately indifferent." Under *Twombly* and *Iqbal*, the Complaint should be dismissed. *See, Glover*, 966 F. Supp. at 430 n.8 (finding virtually identical "training and supervision" claim "so broad as to be meaningless").

B. **The Proposed Amended Complaint.**

The PAC does not save the Plaintiffs' claims. The directive cited is not invalid. PAC ¶¶ 32-37 (D.I. 30). Directive 6.10K (D.I. 31 Ex. A) directs officers to review and follow a valid state statute — 11 *Del. C.* § 1902. The Plaintiffs admit in their Complaint, at footnote 2, that

7

RLF1 13825362v.1

they do not challenge "[t]he legality of the Delaware investigative detention statute codified at 11 *Del. C.* § 1902 . . . ", which has been repeatedly upheld. Compl. n. 2; *see, e.g., Cannon v. State*, 168 A.2d 108, 110 (Del. 1961); *Moore v. State*, 997 A.2d 656, 663 (Del. 2010); *see also, Glover*, 966 F. Supp. 2d at 431.

Subpart 2 of Directive 6.10K does not render the directive invalid. Subpart 2 does not announce a policy of "handcuffing . . . transporting and imprisoning" suspects based on less than probable cause. Rather, subpart 2 cautions officers that until identified and arrested, people picked up as suspects "are only suspects" who should not be relocated and left without transportation, in the event they are released. The subpart does not authorize cuffing and transporting all suspects on less than probable cause. *See, e.g., Glover*, 966 F. Supp. 2d. at 431-32 Subpart 3 merely cautions officers to take proper precautions for their own safety, when persons are detained. Such common sense cautions do not convert a valid state statute into an unconstitutional policy of unlawful imprisonment, based solely on reasonable suspicion. They instead reflect concern for citizens' well-being, and not "deliberate indifference."[2]

Further, the detention, handcuffing and transport of suspects to the station, on less than probable cause, has been found permissible by courts where circumstances such as the need for safety and security so require. *See, e.g., Hicks v. State*, 631 A.2d 6, 11-12 (Del. 1993); *Murphy v. Mifflin Cty. Reg'l Police Dep't*, 548 F. App'x 778, 781 (3d Cir. 2013); *Glover*, 966 F. Supp. 2d at 424-35. Courts have recognized that there are no "per se" rules regarding whether (or when) handcuffing and transporting a suspect to the police station converts an investigatory detention into an arrest requiring probable cause. *Florida v. Royer*, 460 U.S. 491, 504-05

---

[2] If, *arguendo*, questions were raised regarding the validity of subpart 2, those would be properly resolved only in the context of WPD's other policies, directives and training on subjects such as detention, and arrest. *See Andrews*, 895 F.2d at 1481-82.

(1983); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995); *United States v. Wrensford*, No. 2013-0003, 2014 WL 3907021, at *13-15 and n.10 (D.V.I. Aug. 11, 2014). The circumstances of each situation must be examined to determine whether the conduct was justified. *See, e.g.*, *Baker*, 50 F.3d at 1192-93; *see also Hayes v. Florida*, 470 U.S. 811, 817 (1985) (removal to station for fingerprinting may be permitted).

The Third Circuit also has noted that "the use of handcuffs does not necessarily transform an investigatory seizure into a formal arrest requiring probable cause." *Murphy*, 548 F. App'x at 781; *Baker*, 50 F.3d at 1193; *see also, Glover*, 966 F. Supp. 2d at 425 (finding that handcuffing suspect "for officer safety and to maintain order was reasonable").

In short, the PAC fails to plead facts sufficient to give rise to a plausible "policy" claim.

The PAC also does not save the "custom and practice" claim. The deposition excerpts from Gestwicki and Schifano (PAC ¶¶ 28-31 (D.I. 30) should have been considered by the Magistrate Judge in the context of their deposition(s), but were not. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (document explicitly relied upon on in complaint may be considered on motion to dismiss). The context makes clear that Gestwicki and Schifano were testifying about a hypothetical DUI investigation, where the suspect was removed to the station for a blood draw—which was found permissible in *Glover*, 966 F. Supp. 2d at 425, 431-32. Neither officer testified that there was a policy (or practice) of imprisonment, on less than probable cause. *Id.* at 431-32. Similarly, the Turnkey Log attached to the PAC as Exhibit 2 documents a 35 minute "ID" (highlighted) but the PAC is devoid of facts regarding the circumstances under which the person was held, or whether probable cause was present.

Finally, the PAC seeks to join two new Plaintiffs, Messrs Griffin and El. No facts are alleged to establish why the pair were detained in March of 2013, nor in support of the

9

RLF1 13825362v.1

proposition that officers had no valid basis to detain them. It is only alleged that the pair were not told why they were detained, and were not charged with a crime. PAC ¶¶ 117, 126, 127. Even assuming (*arguendo*) unlawful conduct, this additional incident when added to the Murrey / Medley incident (of February 2013) does not establish a course of conduct "'so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480; *Davis*, 75 F. App'x at 830 ("[T]wo incidents of unconstitutional conduct by low-level employees . . . can never provide a reasonable basis for finding a widespread or well-settled custom.").

## CONCLUSION

The Motion to Amend should be denied as futile, and the Complaint dismissed.

|  |  |
|---|---|
| | */s/ C. Malcolm Cochran, IV* |
| | C. Malcolm Cochran, IV (#2377) |
| OF COUNSEL: | Christine D. Haynes (#4697) |
| Michael P. Migliore | Richards, Layton & Finger, P.A. |
| Rosamaria Tassone-DiNardo | 920 N. King Street |
| City of Wilmington Law Department | Wilmington, DE 19801 |
| City/County Building, 9th Floor | (302) 651-7700 |
| 800 N. French Street | Cochran@rlf.com |
| Wilmington, DE 19801 | Haynes@rlf.com |
| (302) 576-2175 | |
| | *Attorneys for Defendant* |
| | *City of Wilmington* |

Dated: February 12, 2016