IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


JAYVON WRIGHT and          )
ANTOINE MURREY and         )
KEITH MEDLEY,              )
                          )
          Plaintiffs,      )   C.A. No. 13-1966 SLR-SRF
                          )
v.                         )
                          )
CITY OF WILMINGTON,        )
                          )
          Defendant.       )



              Wednesday, June 17, 2015
              10:00 a.m.
              Courtroom 6C



              844 King Street
              Wilmington, Delaware



BEFORE:  THE HONORABLE SHERRY R. FALLON
     United States District Court Judge



APPEARANCES:



          THE NORMAN LAW FIRM,
          BY:  STEPHEN PRICE NORMAN, ESQ.

                    Counsel for the Plaintiffs

```
 1   APPEARANCES CONTINUED:

 2

              RICHARDS, LAYTON & FINGER, PA
 3            BY:  C. MALCOLM COCHRAN, IV, ESQ.
              BY:  CHRISTINE D. HAYNES, ESQ.
 4
                         Counsel for the Defendant
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                THE COURT:  Just give me a moment,

2    if you will, to get my computer up and running

3    here.  It may take some time.  In the meantime

4    while that's booting up, let's do the

5    introductions.  Mr. Norman.

6                MR. NORMAN:  Yes.  Good morning,

7    Your Honor.  Steve Norman from the Norman Law

8    Firm on behalf of the named class

9    representatives in the case.

10               THE COURT:  Very well.  Mr.

11    Cochran.

12               MR. COCHAN:  Your Honor, Mike

13    Cochran with Richards, Layton & Finger on behalf

14    of the City of Wilmington.  And I have with my

15    me colleague Christine Haynes.  Also in the

16    courtroom our summer associate Renee Mosley.

17    And Your Honor may know Rose DeSanni Dinardi,

18    First Assistant City Solicitor from the City of

19    Wilmington.

20               THE COURT:  Thank you.  And I do

21    have as well some of my summer externs in our

22    courtroom sitting in on our hearing today.

23               MR. NORMAN:  Your Honor, Erwin

24    Jansen, my paralegal, has come up from Maryland

1     for this hearing as well.

2                   THE COURT:  Very good.  Thank you.

3     All right.  I don't have a computer.  All right.

4     So we'll resort to -- oh, there, it's coming up.

5     You may be seated counsel.  Let me just play

6     around with this for a few minutes and then

7     we'll talk about just, you know, overall

8     procedure today, as I realize there are a number

9     of pending motions, plus I've asked counsel to

10    weigh in on a Rule 16 scheduling order, so we'll

11    discuss those as well.  Let's go off the record

12    for a moment.  I apologize.

13                   (Discussion off the record.)

14                   THE COURT:  Let's go back on the

15    record.  As we were discussing off the record,

16    there are a number of pending motions.  I

17    scheduled oral argument on the motion to amend

18    and the motion to dismiss.  I understand that to

19    some extent these motions overlap or your

20    comments, each sides' comments and argument with

21    regard to these motions may also overlap with

22    the motion for class certification, motion for

23    protective order, motion to compel discovery and

24    such.  I am not going to be restrictive, because

1        I understand that it's just very hard to

2        compartmentalize these arguments.  I would like

3        to stay on our path with regard to the two

4        motions that I most wanted to hear oral argument

5        on, but to the extent your comments may affect

6        other motions, you're permitted to make those

7        comments, I just want us to be mindful of the

8        time constraints this morning and then we'll

9        talk about Rule 16 scheduling.

10               So, Mr. Cochran, you started to

11       apprise me of what the parties had agreed to as

12       far as housekeeping details of how we're going

13       to spend our morning, so I'd like you to put

14       those on the record.

15               MR. COCHRAN:  Thank you, Your

16       Honor.  In light of the Court's oral order on

17       the docket, which we received on May 7, I

18       believe the parties are prepared to argue the

19       motion to dismiss and the motion to amend.  Of

20       course I'm sure both sides also would be

21       permitted or would be prepared to comment on the

22       other pending motions should Your Honor wish to

23       hear that.

24               THE COURT:  That's correct.

1          MR. COCHRAN:  And so we're happy

2    to proceed in such order as you may.

3    Procedurally we have a complaint and a motion to

4    dismiss and then a pending motion to amend,

5    which is subject to a futility challenge.

6          THE COURT:  Right.

7          MR. COCHRAN:  And that's sort of

8    the -- those are the, I think, the kind of the

9    first orders of business, if you will, with

10   respect to where we stand procedurally.

11         THE COURT:  All right.  Well,

12   let's then --

13         MR. NORMAN:  Your Honor, if I may

14   briefly.

15         THE COURT:  Go ahead.

16         MR. NORMAN:  I'm a big fan of

17   judicial economy, as I'm sure the Court is as

18   well, and our position is that the motion to

19   dismiss is moot.  A large portion of the motion

20   to dismiss was based on a request to dismiss the

21   claim with prejudice, arguing in the motion to

22   dismiss that any attempt to amend would be

23   futile.  So it seems like if we argue the motion

24   to dismiss and it's dismissed, we're going to

1   say it wouldn't be futile, they are going to say

2   it would be futile, we're going to get back to

3   the same position we would be in if we just went

4   straight to the motion to amend.  So our

5   position is that it is moot and it would be in

6   the interest of judicial economy to go and argue

7   the same exact standard in the motion to amend.

8   Little bit different.  Normally you've got a

9   motion to amend, an answer and then a reply.  In

10  this case defense was given the opportunity to

11  file a sur reply here, so it's been fully

12  briefed just like a motion to dismiss, it's got

13  new, more detailed factual averments and I think

14  it would be in the interest of everybody's time,

15  with the limited amount of time we have, to just

16  go directly to the motion to amend, Your Honor.

17  Thank you.

18          MR. COCHRAN:  Your Honor, the

19  arguments that we're prepared to make on both

20  the motion to dismiss and the motion to amend

21  essentially do overlap.  And in my comments I

22  would be addressing both at the same time.  As a

23  matter of procedure, though, we do have a

24  complaint and a motion to dismiss and then a

1   motion to amend and an opposition to that on

2   grounds of futility.  And with regard to the

3   futility argument, the standard is 12(b)(6),

4   same as the motion to dismiss.  So I am prepared

5   to address both in my remarks.

6              THE COURT:  All right.  Well,

7   let's proceed that way.  I will give you the

8   floor, Mr. Cochran.  I think rather than getting

9   ourselves entangled about the priority of the

10  order, I will make sure that each side gets an

11  opportunity to provide oral argument to the

12  extent they find necessary and within our time

13  constraints.  I'm not going to cut anyone off

14  based on the order in which we proceed with

15  these motions, if that is your primary concern

16  Mr. Norman, so --

17             MR. NORMAN:  Thank you.  That

18  addresses it, Your Honor.  Thank you.

19             THE COURT:  So we'll hear from Mr.

20  Cochran first.

21             MR. COCHRAN:  May it please the

22  Court.  Your Honor has set argument on the two

23  motions we've discussed, the motion to dismiss

24  the original complaint on 12(b)(6) grounds and

1   the Plaintiff's motion to amend.  The City has

2   moved to dismiss the original complaint under

3   Twombly and Iqbal for failure to state facts

4   sufficient to plausibly show entitlement to

5   relief.  The Plaintiff subsequently moved to

6   amend, as I noted in my comments before we

7   opposed that motion to amend as futile for the

8   same reasons essentially as we asserted in

9   12(b)(6).  So I will be addressing both in my

10  comments this morning.

11              In the alternative, in our motion

12  to dismiss, we move -- if Your Honor does not

13  dismiss the complaint in full, we move to strike

14  the class action allegations and I will briefly

15  touch on that alternative request for relief.  I

16  would ask Ms. Haynes to hand to the Court her

17  transmittal affidavit that attaches four

18  exhibits which I will be referring to this

19  morning that are part of the record.

20              THE COURT:  Okay.

21              MR. COCHRAN:  That were submitted

22  with the briefing.

23              THE COURT:  If you will provide a

24  copy to Mr. Normal, so he's aware of what is

1     being presented to the Court.

2                    MR. COCHRAN:  We have do have

3     copies for Mr. Norman.

4                    THE COURT:  Thank you.

5                    MR. COCHRAN:  And I thought it

6     would be convenient to have for the Court those

7     exhibits that I'll be talking about this

8     morning.

9                    THE COURT:  Very good.

10                    MR. COCHRAN:  With regard to our

11    motion to dismiss and the futility argument on

12    the motion to amend, initially it's important to

13    understand that in this case there is only a

14    Monell claim asserted against the City.  That is

15    this is only a claim for municipality liability,

16    no police officers are sued.  As I know Your

17    Honor is familiar, the standard for municipal

18    liability under Monell and its companion Canton,

19    is very high.  The Plaintiff must identify one,

20    a policy or two, a custom that amounts to and I

21    quote, deliberate indifference, end quote, to

22    the rights of people with whom the police come

23    into contact.  Now, that's the City of Canton

24    case, U.S. Supreme Court and in the Third

| 1 | Circuit, that standard, and it was essentially |
| 2 | repeated in the Carswell decision, both of which |
| 3 | are related in our papers.  So negligence or |
| 4 | gross negligence is not enough, rather the |
| 5 | standard is deliberate indifference.  The |
| 6 | Plaintiffs must also demonstrate that the |
| 7 | purported unlawful policy or custom was the |
| 8 | moving force of any injury they may have |
| 9 | suffered.  Again, that comes from Canton and in |
| 10 | the Third Circuit, it's Carswell.  I will |
| 11 | address policy first, the policy claim first and |
| 12 | then I will address the custom and practice |
| 13 | claim.  With regard to the policy claim, the |
| 14 | original complaint fails to identify any |
| 15 | specific policy, no, quote, official |
| 16 | proclamation, edict or policy, end quote, and |
| 17 | that's language taken directly from Monell and |
| 18 | Canton, is identified as having been issued by |
| 19 | an authorized decision maker.  Rather there is |
| 20 | only an unsupported conclusion, unsupported by |
| 21 | any factual allegation that there is an unlawful |
| 22 | policy as related in the original complaint.  It |
| 23 | is our contention that that, that pleading |
| 24 | deficiency is fatal to the policy claim under |

1    Twombly and Iqbal.

2              THE COURT:  What about with regard

3    to the proposed amended complaint were it to be

4    permitted?

5              MR. COCHRAN:  Correct.

6              THE COURT:  Does that get it, get

7    a foot in the courtroom, so to speak, by

8    correcting the pleading, the alleged pleading

9    deficiencies?

10             MR. COCHRAN:  Right.  The amended

11   complaint attempts to correct this pleading

12   deficiency by identifying directive 6.10K from

13   the city police department's policy manual or

14   directives.  6.10K does not reflect deliberate

15   indifference to the rights of persons with whom

16   the police come into contact.  And if Your Honor

17   looks at Ms. Haynes' transmittal affidavit --

18   and I put a sticky on the -- there's a purple

19   sticky on about the fourth page.

20             THE COURT:  I have it.  Thank you.

21             MR. COCHRAN:  That's where the

22   policy that we're talking about, the directive

23   appears, K, detention of suspects.  The bottom

24   of page has page number 15 on it, and it goes

 1          over to the next page, 16.  Initially 6.10K

 2          refers the reader to Title 11, section 1902 of

 3          the Delaware Criminal Code, which is a statute

 4          that has been held to be constitutional by the

 5          Delaware courts and by the federal courts and

 6          which, in fact, the Plaintiff concedes is valid,

 7          is constitutional, so there's no issue with

 8          respect to the validity of the Delaware statute

 9          that is incorporated by reference in the

10          directive.  In particular, the reader is

11          directed to review the contents of section 1902

12          and the directive states this section provides

13          sufficient guidance in the conduct of such

14          detention.  Courts have held that.  That's not

15          simply a statement of the law.  The directive

16          goes on to provide guidance for circumstances

17          where suspects are picked up or detained and

18          moved and it reads many people are picked up as

19          suspects in a particular crime.  Until they have

20          been identified and arrested, we must remember

21          they are only suspects.  The majority of such

22          detentions result in the person being released

23          without criminal charges being placed.  They

24          should not be brought to central or taken from

1    one location to another then released to find

2    their own means of transportation.  And it goes

3    on from there.  It's our contention that this

4    language reflects concern essentially for the

5    subjects of detention.  It doesn't direct that

6    in all cases they may be or should be brought to

7    the police station.  It says rather don't bring

8    them to central or if you do move them, make

9    certain that you take them back where you got

10   them.  That's not deliberate indifference under

11   Canton or Carswell.  That reflects, I think,

12   concern and with respect to the rights of

13   detainees.  It's important to note, as we relate

14   in the brief and as the Glover decision actually

15   indicates, this directive does not require that

16   all suspects be brought to the station and does

17   not say that you may bring all suspects to the

18   station.  Judge Andrews in Glover drew that

19   distinction where this issue was essentially

20   presented and I'm going to come back to that in

21   just a moment.  So that distinction is important

22   from the standpoint of the deliberate

23   indifference test.  Further, the law is clear

24   and we recited in our briefs that detainees can

1     be brought to the station based on reasonable

2     suspicion in certain circumstances.  For

3     example, in the Glover decision, Judge Andrews

4     found it permissible in the case of a blood draw

5     where safety and security was of concern and a

6     blood draw could not be accomplished in the

7     field.

8                    THE COURT:  But aren't we getting

9     into more of the merits and less focused on, at

10    this stage, whether or not a cause of action has

11    been properly pled and the related question of

12    if it has, in order to test the merits of what

13    Defendant is arguing, should there be some

14    measure of discovery?

15                    MR. COCHRAN:  Right.  The

16    Plaintiff here has incorporated by reference the

17    policy 6.10K into the proposed amended

18    complaint.

19                    THE COURT:  Right.

20                    MR. COCHRAN:  So we do think that

21    we're focused on that pleading.

22                    THE COURT:  Right.

23                    MR. COCHRAN:  And whether that

24    pleading essentially states a claim.  And it's

1      our contention that the policy does not reflect

2      deliberate indifference, and therefore no claim

3      has been stated.  So for example, under Glover,

4      Judge Andrews permitted the suspect to be

5      brought to the police station for the blood

6      draw.  In Murphy versus Mifflin, cited in our

7      papers, the Third Circuit says that safety and

8      security can justify bringing the suspect to the

9      station.  That case, the suspect was brought to

10     await the arrival of a drug sniffing doing and

11     that was held by the Third Circuit to be valid.

12     In the Wrensford case, safety and security is a

13     valid justification.  In Florida versus Royer,

14     the United States Supreme Court says safety and

15     security can be a justification.  In U.S. versus

16     Barron, 9th Circuit says safety and security

17     when bringing to the station is the least

18     intrusive method available.  In Hicks versus

19     State, Delaware Supreme Court says safety and

20     security or other special law enforcement

21     interest presented under the circumstances can

22     justify bringing to the station.  In the cases

23     cited in the complaint or the amended complaint

24     by the Plaintiffs, Cop versus Texas, the United

1        States Supreme Court expressly leaves open that

2        fingerprinting, bringing back to the station to

3        fingerprint can be an acceptable justification.

4        And Hayes versus Florida, an earlier case, the

5        United States Supreme Court noted that

6        fingerprinting is another justification.  So

7        there are a number of reasons recognized by the

8        courts that justify bringing detainees back to

9        the station, where there is less than probable

10       cause for further investigation.  This policy

11       corresponds directly with that, that approach.

12       In short, with respect to 6.10K, it's not a

13       perfect policy, but that's not required.  It is

14       not unconstitutional on its face.  It does not

15       reflect deliberate indifference.  It is

16       consistent with the law.  Whether it could be

17       better, whether the City was somehow negligent

18       in drafting it, that's not the standard.  The

19       standard is deliberate indifference, and that's

20       just not present here.  So the policy claim

21       should be dismissed.

22              And again, with respect to the

23       amended complaint, to allow the amendment would

24       be futile.  And under the case law, as I know

1     the Court is familiar, where the amendment is

2     futile, it should not be permitted.  I want to

3     state for the record at this point and just in

4     the alternative and put kind of a place holder

5     here.

6               THE COURT:  Okay.

7               MR. COCHRAN:  It's important to

8     remember on this 12(b)(6) record, this 12(b)(6)

9     motion that if Your Honor went the other way

10    with respect to the policy somehow and said that

11    the claim wasn't deficient, we would contend

12    then that 6.10K would need to be interpreted in

13    the light of other provisions of policy and law

14    and training that these officers are provided.

15    So that those are matters outside the pleadings.

16    They aren't appropriate for 12(b)(6) motion or

17    the futility argument, but we just want to put

18    this place holder in the record that if Your

19    Honor goes the other way, we're going to have

20    additional proof that puts this policy in its

21    proper context with all of the training and

22    other information that these officers are given.

23               That takes me to the second part

24    of the analysis and that's custom or practice.

| | |
|---|---|
| 1 | Essentially the same thing.  Both the complaint |
| 2 | and the proposed amended complaint are |
| 3 | conclusory contrary to Twombly and Iqbal. |
| 4 | Specifically with respect to custom or practice, |
| 5 | the Plaintiff must allege facts sufficient to |
| 6 | show a course of conduct, and I quote, that is |
| 7 | so permanent and well settled as to virtually |
| 8 | constitute law.  And that's Monell out of the |
| 9 | United States Supreme Court at Page 690 and |
| 10 | that's Andrews out of the Third Circuit at 1480, |
| 11 | both cited in our papers.  The authorities state |
| 12 | that this proof, this course of conduct must |
| 13 | involve considerably more than one incident. |
| 14 | And as we cited in our papers, many courts have |
| 15 | held more than two incidents.  The Plaintiff |
| 16 | must also allege facts with respect to the |
| 17 | custom and practice allegation demonstrating |
| 18 | that the -- that an authorized policy maker |
| 19 | acquiesced in the custom or practice.  An |
| 20 | authorized policy maker acquiesced in the custom |
| 21 | or practice and that's Baker out of the Third |
| 22 | Circuit and Canton.  There are no allegations in |
| 23 | the original complaint or the proposed amended |
| 24 | complaint with respect to acquiescence by an |

1    authorized policy maker.

2              THE COURT:  Well, isn't there case

3    authority that states that a single application

4    of a well-settled custom establishes that it was

5    done according to an official policy?

6              MR. COCHRAN:  But you would have

7    to establish that there's a well-settled custom.

8    And in this case the complaint doesn't plead

9    that.

10             THE COURT:  It doesn't plead that?

11             MR. COCHRAN:  It's deficient.

12   Specifically the City would make two points in

13   this regard.  There are a total of five -- if

14   you count the proposed amended complaint.

15             THE COURT:  All right.

16             MR. COCHRAN:  Five individuals

17   identified.

18             THE COURT:  Right.

19             MR. COCHRAN:  In a total of three

20   incidents.  Now, under Twombly and Iqbal, I'll

21   demonstrate to the Court that those are not

22   sufficient to state claims.  And really you have

23   only two incidents, for reasons I'll explain in

24   a moment.  And two incidents it's been

1    repeatedly held, even if they stated claims,

2    wouldn't be sufficient.  The second argument the

3    Plaintiffs make is that we have somehow admitted

4    an unconstitutional policy in a 30(b)(6)

5    deposition taken in the Glover case.  We

6    disagree with that as well.  And I'll explain to

7    the Court in just a moment.  So those are the

8    two ways in which the Plaintiff attempts to

9    plead custom or practice.  That is with regard

10   to the five individuals and with regard to the

11   purported admission in the Glover case.

12             Turning to the individual claims,

13   Mr. Wright, the complaint actually alleges that

14   Mr. Wright was taken into custody and charged

15   with two crimes.  Mr. Wright, on the face of the

16   complaint, was not a detainee on reasonable

17   suspicion.  He was actually charged.  The only

18   appropriate inference here is that the officers

19   at least felt they had probable cause.  That

20   takes it out -- that takes Mr. Wright out from

21   the class, if you will, and we don't -- we don't

22   concede that there should be a class.

23             THE COURT:  Understood.

24             MR. COCHRAN:  But that takes him

1    out of this category.  Other facts regarding

2    Wright, Wright approached -- it's alleged in the

3    complaint that he approached to within 8 to 10

4    feet of officers who were searching another

5    suspect over the hood of a car and essentially

6    interfered with the search.  During the search

7    he spoke to the subject, inquired as to whether

8    the subject needed he, Wright, to call his

9    parents.  The officers, it is alleged, then took

10   Mr. Wright to the ground.  Mr. Wright, his uncle

11   and his mother began to scream at the officers

12   and Mr. Wright was then taken into custody.  In

13   addition to being charged with loitering and

14   disorderly conduct, other charges would have

15   been appropriate on the face of the complaint as

16   we state in the brief, hindering prosecution,

17   interference with officers.  There would be

18   probable cause on those based on the facts as

19   alleged.  So we think Wright drops out.  That

20   leaves you with Murrey and Medley, which were

21   together in one incident, and Rashad and El,

22   E-L, were together in a second incident.  In the

23   Murrey and Medley allegation, now there are no

24   facts alleged at all regarding why they were

1   detained, whether they were properly detained or

2   what they had done before they were detained.

3   There's nothing from which the Court can infer

4   wrongful purpose on the part of the police

5   officers.  Essentially the pleading is silent

6   regarding why they were taken into custody.

7   That is significant under Twombly and Iqbal for

8   this reason.  While you might conclude that on

9   the face of the pleading there was possibly

10  police misconduct, there's nothing that would

11  push you over the line to plausibility under

12  Twombly and Iqbal.  There are no facts stating

13  that the police officers did not have probable

14  cause, stating that the police officer -- that

15  there are exigent circumstances that would have

16  justified the detention.  The pleading is silent

17  and that is significant under Twombly and Iqbal.

18  And it's not an academic question in this case,

19  Your Honor, because if you find this complaint

20  to be appropriate under Twombly and Iqbal, my

21  friend Mr. Norman is going to argue that that

22  opens the door to all kinds of discovery which

23  the City shouldn't be subject to under Iqbal.

24  Iqbal is clear, United States Supreme Court has

1    said if the Plaintiff doesn't plead sufficient

2    facts, then that deficient claim does not give

3    him the keys to the kingdom of discovery.  Same

4    argument with regard to Griffin and El.  There's

5    even less in the proposed amended complaint

6    which seeks to add Griffin and El.  There's even

7    less with respect to the Griffin and El

8    allegations.  Again, this was one incident.

9    There's no statement as to whether there was

10   probable cause or not probable cause or no facts

11   demonstrating that there was not probable cause.

12   There's nothing regarding why the officers took

13   them in or whether they did or didn't have

14   justification.  The pleading is silent on what

15   motivated these police officers to take these

16   gentlemen into custody and whether or not it was

17   appropriate.  Same argument, under Twombly and

18   Iqbal there's nothing to push this from the

19   realm of the possible into the realm of the

20   plausible.  In the alternative, Your Honor, we

21   say Wright drops out for the reason I stated and

22   even if you conclude that Murrey, Medley and

23   Griffin El somehow state claims, which we say

24   they do not, two incidents alone are not enough

1    to establish a permanent, well-settled custom of

2    deliberate indifference that is tandamental to

3    law, approved by an authorized policy maker.

4    Pages 8 and 9 of our opening brief on the motion

5    to dismiss, we recite quite a number of cases

6    that say two incidents is not enough.

7            Finally, on this theory, again,

8    with respect to the policy -- I'm sorry, the

9    custom and practice claim, there's nothing.  The

10    complaint is completely silent with respect to

11    factual allegations demonstrating that an

12    authorized policy maker acquiesced or approved.

13    There is zero in the complaint factually.  For

14    that reason we contend that the Monell claim is

15    conclusory, should be dismissed.

16            The second basis cited for the

17    Monell claim is the so-called admission by

18    Officer Gestwicki in the Glover case.  That's

19    recited in the proposed amended complaint.  It's

20    not in the original complaint.  They say in the

21    original complaint that we admitted an

22    unconstitutional policy, custom or practice, but

23    they didn't provide any facts to back that up.

24    In the proposed amended complaint they cite the

1    Gestwicki testimony.  It's important for the

2    Court to understand that that specific

3    testimony, Gestwicki, was given in the Glover

4    case.  He was a 30(b)(6) witness.  Judge Andrews

5    expressly considered that testimony.  It's

6    related, it's reflected at page 431, 966 F Sup

7    2nd 431 of Judge Andrews' decision.  There's a

8    reference to DI 96, Docket Item 96, pages 15 to

9    17.  That is the same -- that was one that was

10   filed under seal.  The public version is DI 102

11   and Judge Andrews talks about pages 15 to 17.

12   That's exactly the same testimony that is at

13   issue here.  Judge Andrews held the testimony to

14   be insufficient.  He wrote, and I quote, pages

15   431 and 432, the testimony was that the police

16   can transport detainees to the police station,

17   not that they automatically do, period, closed

18   quote.  And he found it insufficient to give

19   rise to Monell liability.  We could look, with

20   the Court's permission, at that testimony

21   briefly.  Your Honor does have the flexibility

22   under 12(b)(6) to consider it in its context.

23   If I may approach?

24                THE COURT:  You may.

1          MR. COCHRAN:  I have a copy for

2     the Court.  And in particular --

3          THE COURT:  Hang on for a moment,

4     Mr. Cochran.  Should we mark both the

5     transmittal affidavit as Defendant's Exhibit 1

6     to the oral argument and the portions of the

7     Gestwicki transcript as Exhibit 2?

8          MR. COCHRAN:  Thank you, Your

9     Honor.

10          THE COURT:  So that we have a

11     clear record?

12          MR. NORMAN:  To determine whether

13     I object or not, I'd like a proffer as to what

14     this is.  I'm not a hundred percent certain

15     what's in front of us.

16          MR. COCHRAN:  Happy to give you a

17     proffer.  It is, Your Honor, pages 45 through 56

18     of the Gestwicki testimony which includes the

19     specific pages cited by the Plaintiff at pages

20     49 through 52.  So we've got the context of the

21     testimony relied upon by the Plaintiff in his

22     proposed amended complaint.  And specifically,

23     the Plaintiff relies on the testimony.

24          MR. NORMAN:  Your Honor, just for

1    the record, I did want to object to this coming

2    in because I think we're getting more to the

3    standard for the motion for summary judgment.

4    There's been averment of specific facts.  The

5    facts are getting challenged.

6              THE COURT:  Understand, I'm not

7    admitting it for that purpose, I'm really just

8    admitting it so we have clear record when we

9    look at this transcript down the line and we

10   refer to this, portions of this transcript in

11   the arguments made by Mr. Cochran, and I don't

12   know if we're going to address it, that we have

13   the actual exhibit to put it in context.

14             MR. NORMAN:  Yes, Your Honor.  And

15   for simplicity sake and time sake, the motion

16   would be that we're getting into the realm of

17   motion for summary judgment.  We're not going to

18   do that.

19             THE COURT:  Understood.  Thank

20   you.

21             MR. COCHRAN:  Just briefly to

22   respond for the record, at paragraphs 28 and 29

23   of the proposed amended complaint, the Plaintiff

24   actually recites the testimony from the

1    deposition.  And under the 12(b)(6) standard, to

2    the extent that the testimony is, is relied upon

3    in the pleading and is integral to the pleading,

4    Your Honor has the flexibility to consider it in

5    its context.  Not only is it integral to the

6    pleading, it is quoted in the pleading, so we

7    contend you can consider this on 12(b)(6).  And

8    what I would like to direct the Court's

9    attention to, at pages 51 -- I'm sorry, 50 and

10   51 of the transcript, that's what the Plaintiff

11   recites in the proposed amended complaint.

12   Almost a few lines after what the Plaintiff

13   cites in the proposed amended complaint is what

14   I've highlighted at the bottom of page 51

15   starting at line 24.  Turning over to page 52,

16   going to line 7, where Officer Gestwicki says --

17   I'm sorry, Mr. Norman asks, okay, so reasonable

18   suspicion is?  And Officer Gestwicki says, I

19   have reason to believe that this person, based

20   upon some factors, if you will, that have

21   occurred out at the scene or what have you, I

22   have reason to believe that this person may have

23   operated, driven or had under actual physical

24   control that motor vehicle under the influence

```
 1        of alcohol.  I may further investigate that
 2        complaint, bring them in under the two-hour law
 3        of detention.  I may.  Judge Andrews
 4        distinguished that and says that the officer
 5        didn't testify that he could in every case.  He
 6        said he may, depending on the facts and
 7        circumstances.  And when the Court reads this
 8        testimony, which is cited at pages 28 and 29 of
 9        the complaint, of the proposed amended complaint
10        in its context, there are a few things that
11        become clear; number one, Officer Gestwicki was
12        not talking about detention in every case, he
13        was talking about DUI's involving alcohol or
14        drugs.  That was the plain context, alcohol or
15        drugs.  And Judge Andrews found that in the case
16        of the blood draw, issues of safety and security
17        can justify detention and return to the station
18        for the blood draw.  That's the context in which
19        Officer Gestwicki was giving this testimony.
20        The testimony on its face, as held by Judge
21        Andrews, frankly, we think in the Glover case,
22        page 431, is insufficient to give rise to the
23        claim made here; that is, that there is a policy
24        that is so enshrined as a matter of law that we
```

```
 1    do this in every case.  It's just not the case.

 2    Secondly, with regard to the Gestwicki testimony

 3    as we relate in the brief and I won't belabor

 4    it, Officer Gestwicki was noticed as a Rule

 5    30(b)(6) witness.  The 30(b)(6) notice, which is

 6    attached to Mrs. Haynes' affidavit as Exhibit

 7    C --

 8              MR. NORMAN:  Your Honor, I do want

 9    to object on the record to consideration of

10    this.

11              THE COURT:  We'll note your

12    continuing objection, Mr. Norman.

13              MR. NORMAN:  Thank you, Your

14    Honor.

15              MR. COCHRAN:  Again, in the

16    pleading, my friend characterizes Officer

17    Gestwicki as a 30(b)(6) witness and contends and

18    states in the pleading that there was a 30(b)(6)

19    deposition.  That notice of deposition we think

20    is within the scope of what the Court can

21    consider under 12(b)(6) as to it's integral as

22    to whether or not this gentleman was an

23    appropriate 30(b)(6) witness and this notice

24    contains no subject matters for the 30(b)(6)
```

```
1    deposition.  Rule 30(b)(6) plainly requires that

2    the subject matters be stated.  There was, I'll

3    represent to the Court, an e-mail exchange where

4    subject matters were related, but none of them

5    relate to what we're talking about here.  That

6    is detention of suspects under section 1902,

7    Title 11 of the Delaware Code.  So we didn't

8    have a 30(b)(6) deposition witness and the

9    testimony in that respect is not an admission of

10   the City.  Secondly, or finally, with respect to

11   the purported admission that we have this

12   practice or custom, my friends for the

13   Plaintiffs cite unspecified testimony of Officer

14   Ralph Chiafano.  They characterize -- they say

15   that Officer Chiafano testified in the Glover

16   case, but they don't quote the testimony in this

17   case.  They characterize it and we contend it's

18   mischaracterized.  Again, under the 12(b)(6)

19   standards, it's our position you can consider

20   that testimony since it's referred to and

21   incorporated by reference in the proposed

22   amended complaint.  Officer Chiafano was not a

23   30(b)(6) witness.  To the extent there were

24   admissions, they are not binding on the City.
```

```
 1        And furthermore, when you look at the testimony,

 2        which is attached to Ms. Haynes' affidavit, as I

 3        believe it's the final exhibit, I think that's

 4        E, when you look at the testimony, it's plain

 5        that Officer Chiafano was not testifying that

 6        there was a policy that in every case they can

 7        bring people back to the station.  He was being

 8        asked about and talking expressly about drug and

 9        alcohol investigation, a hypothetical drug and

10        alcohol investigation, in the context of Glover,

11        where what the City did was found to be

12        appropriate under the law by Judge Andrews.  So

13        it's not an admission that we have a policy.

14        It's not even evidence that there is a policy or

15        custom that is tantamount to well-settled,

16        established law approved by an authorized policy

17        maker.  It's not sufficient under Twombly and

18        Iqbal or Canton or Monell.  So that's the --

19        that's the custom and practice argument.  And

20        Your Honor, again, I pause to note, it's not an

21        academic exercise here because what my friends

22        have asked for is wide-ranging discovery on --

23        we'll get into this at another point, I'm sure,

24        on a broad range of topics that would be
```

1      extraordinarily burdensome for the City based on

2      a pleading that doesn't, doesn't satisfy the

3      Twombly Iqbal test.  And we'll pause briefly on

4      the training claim.  We'd rely on the papers

5      primarily with respect to that.  There is

6      nothing alleged with respect to training other

7      than the conclusion that training was

8      inadequate.  No facts are alleged at all

9      regarding what training was deficient, how it

10     was deficient or how that unspecified, deficient

11     training might have been the moving force in the

12     alleged constitutional violation.  The training

13     allegation is wholly inadequate under Twombly

14     and Iqbal.  I would pause to note also the

15     standard on training.  Whether training is

16     negligent or grossly negligent isn't sufficient.

17     It's got to be deliberately indifferent

18     training.  And there's nothing in the complaint,

19     they have no facts alleged that would support

20     the conclusion that somehow there was some

21     unspecified training that was deliberately

22     indifferent.  So under Twombly and Iqbal, the

23     training should be stricken or dismissed.

24                    The final point that we would make

```
1        relates to the alternative request for relief on

2        the class action allegations.  In the

3        alternative we are, if Your Honor does not

4        dismiss the individual Monell claims, it's our

5        position that the class claims should be

6        stricken under 23(d)(1)(D) of the federal rules.

7        Your Honor has the ability to do that.  Here the

8        case plainly say that where no amount of

9        precertification discovery would remedy the

10        defect in the class allegations that they can be

11        stricken without precertification discovery.

12        And this is such a case.  In particular, the

13        Third Circuit in the Wal-mart decision, which is

14        cited in our papers, adds the so-called

15        ascertainability element to the standard

16        elements that are engrafted in the rule,

17        commonality, typicality and the like.  Under the

18        ascertainabiity element, the Plaintiff must show

19        by a preponderance of the evidence that the

20        classes are ascertainable, and that is that we

21        can know who is and who is not a member of the

22        class for notice purposes and to avoid

23        essentially fraudulent class claims.

24        Ascertainability has two elements; one, that the
```

1    class can be defined by reference to objective

2    criteria and two, that there is a manageable

3    process for identifying class members, and this

4    is the key, the manageable process for

5    identifying class members that does not require

6    much, if any, individual fact finding.  Under

7    the Wal-mart decision, Third Circuit, where

8    members of a class cannot be determined without

9    individual fact finding or mini trials, class

10   certification is inappropriate.  Here, Your

11   Honor, the ascertainability element cannot be

12   met.  No amount of discovery can cure the

13   defect, because of the way in which the law

14   works.  Probable cause would be an absolute

15   defense in every case.  If the officers had

16   probable cause to bring the detainee to the

17   police station, there could be no claim under

18   the theory alleged by the Plaintiff.  As Your

19   Honor is well aware, I am sure, probable cause

20   is a very fact-dependent concept stated in

21   Illinois v. Gates, has the phrase that we all

22   learn in law school at page 232 and I quote,

23   probable cause is a fluid concept turning on the

24   assessment of probabilities in particular of

```
 1        factual contexts.  In order to know whether
 2        probable cause existed in each one of these
 3        cases, Your Honor would have to have mini
 4        trials.  The facts are all different.  We'd have
 5        to bring the officers in.  We'd have to bring
 6        the accused in.  We'd have to bring the
 7        witnesses in and we'd have to hear the evidence.
 8        There were, in 2013, 4,500 arrests in the City
 9        of Wilmington, almost 100,000 calls for service.
10        Ascertainability can't be met here.  No amount
11        of discovery will cure that defect.  The same
12        arguments -- and I might also add with respect
13        to ascertainability, with regard to the
14        detentions, even where there's not probable
15        cause, there can be circumstances that justify
16        the detention.  For example, in the moving to
17        the station, for example, if safety and security
18        put the officer and the detainee at risk under
19        even the Supreme Court cases that my friends
20        cite, they can be moved to the station if that's
21        the least restrictive way to do it.  Well, that
22        would be at issue in every single one of these
23        matters and Your Honor would have to hear the
24        evidence and make a determination as to whether
```

```
1    or not there was some other justification to

2    move them to the station.  There aren't enough

3    resources to do all of what Mr. Norman is asking

4    us to do in order to certify a class.  To

5    shortcut it, it's not ascertainable under the

6    Third Circuit standard.  The same arguments

7    apply with regard to commonality and typicality.

8    There are not common factual issues in these

9    cases.  They are all unique.  They are all

10   distinct.  Your Honor sees them, I'm sure, on

11   the other side of your practice on this court,

12   the myriad of circumstances under which people

13   are taken into detention.  They are all --

14   whether there's probable cause or reasonable

15   suspicion, they are all factually unique.  And

16   so for that -- and from that standpoint there

17   can't be commonality sufficient to certify a

18   class.  The same argument is made with respect

19   to typicality in the factual issues.  No amount

20   of discovery would cure these impediments to

21   class certification.  If the case is not

22   dismissed in its entirety, the class allegation

23   should be stricken.  And again, it's not -- for

24   us, it's not an academic exercise.  My friends
```

```
1    for the Plaintiffs have literally asked that we

2    identify as ESI custodians every single police

3    officer involved in an arrest or the detention

4    of --

5              MR. NORMAN:  I'm going to object

6    to that.  That's a mischaracterization of what

7    was asked.

8              THE COURT:  All right.  Mr.

9    Norman, you'll have your opportunity.  As I said

10   at the outset, I'm going to give each side fair

11   opportunity to address these issues.

12             MR. COCHRAN:  Let me amend it and

13   say my understanding of our meet and confer on

14   ESI is my friends want us to identify every

15   single police officer involved in an arrest or a

16   detention, as an ESI custodian.  So this is

17   not -- on the class action claim.  So this is

18   not an academic exercise.  This is a classic

19   could not be certified no matter how much

20   precertification discovery is permitted given

21   the ascertainability and commonality and

22   typicality problems.  And Your Honor, if you

23   have additional questions, I'm happy to try to

24   answer them.  Otherwise I would -- I'd cede the
```

```
1    balance of my time to my friend.

2              THE COURT:  All right.  Very well.

3    I'll hear from Mr. Norman at this time.  Thank

4    you.

5              MR. COCHRAN:  Thank you, Your

6    Honor.

7              MR. NORMAN:  Thank you.  Your

8    Honor, I do want to address the ascertainability

9    issue right off the bat, because we are asking

10   for the class certification under 23(b)(2),

11   which is for amorphous civil rights class.  That

12   is what it was intended for.  Typically some

13   cases have held that class certification is not

14   even required for this type of a class action

15   and they recognize that the ascertainability

16   requirement is not applicable to these types of

17   class action.  Secondly, what we're asking for

18   specifically is an intake log document.

19             THE COURT:  I'm sorry, you need to

20   speak up or speak closer to the microphone.

21   Thank you.

22             MR. NORMAN:  Yes, Your Honor.

23             THE COURT:  Go ahead.

24             MR. NORMAN:  In terms of
```

 1      identification of class members, there was an

 2      intake log that tells you when people are

 3      detained based on this policy.  In this intake

 4      log it says ID, investigatory detention.  Could

 5      mean something else, except for under reason

 6      they are brought there, it's left blank.  So a

 7      reasonable conclusion would be that they are

 8      being brought there under this policy with no

 9      crime.  And that's what we're after, to get

10      these logs and to determine exactly who was

11      brought there and the number of them that were

12      brought there during the time period applicable

13      to this class.

14              THE COURT:  Well, doesn't that

15      proposal for discovery support what Mr. Cochran

16      was arguing with regard to ascertainability,

17      that is it requires an inquiry or a mini trial

18      into each of those arrests and/or detentions

19      noted on that log that you are referring to,

20      which defeats class certification?

21              MR. NORMAN:  Your Honor, what

22      we're asking for is injunctive relief, so

23      injunctive relief, based on the 23(b)(3) class

24      actions, ascertainability is not a requirement.

```
 1                    THE COURT:  I'm sorry, your

 2      support for that?

 3                    MR. NORMAN:  Yes, Third Circuit

 4      case Stuart v. Abraham, 275 F 3rd 220 -- I

 5      believe that's at 228.

 6                    THE COURT:  All right.

 7                    MR. NORMAN:  And it says it is

 8      generally recognized that civil rights actions

 9      seeking relief on behalf of classes like the

10      punitive class normally meet the requirements of

11      23 B 2nd.  And that had to do with a class

12      action pertaining to a rearrest policy of a

13      municipality.  Also, recently, the Stopping

14      Thress(sic) cases, class action, was similar to

15      this case in it was asking for injunctive relief

16      under 23 B 2nd.  That is Ford vs. City of New

17      York, 283 FRD 153, 2012.  And at 162, the

18      implied requirement of definiteness does not

19      apply to rule 23(b)(2) class actions as notes

20      state that 23(b)(2) was designed to cover

21      actions in the civil rights field where a party

22      is charged with discriminating unlawfully

23      against a class, usually one whose members are

24      incapable of specific enumeration.  That's at
```

```
 1      page 162.  Okay.  So ascertainability is really
 2      a red herring in this case.  Your Honor, this is
 3      not a civil rights case day in and day out.
 4      This is a pretty simple case regarding what
 5      we're pleading.  There is a state statute that
 6      allows for some kind of stop for two hours.
 7      It's really what's called a Terry stop.  You can
 8      stop somebody, you can do a quick pat down and
 9      what the state statute is saying is that if
10      you're doing this Terry stop based on reasonable
11      suspicion alone, they have to be let go within
12      two hours, okay.  Within constitutional
13      parameters, you can search them, you can
14      investigate a little bit, but when that two-hour
15      time limit hits, they need to be gone.  That's
16      an outer perimeter.  Nothing anywhere in 11 Del
17      Code 1902 talks about handcuffing, talks about
18      transport, talks about taking to the police
19      station.  There was a mistake made at the City
20      of Wilmington where they interpret this statute
21      that way.  And it wasn't only interpreted this
22      way, it was codified or whatever you want to
23      call it, but it was stated in writing in the
24      directives of the Wilmington Police Department,
```

1    and admittedly 6.10K is not a model of clarity,

2    but in there you can tell certain things.  First

3    thing you can tell is many people, many, that's

4    key here, many people are picked up as suspects

5    in a particular crime.  Until they have been

6    identified and arrested, we must remember that

7    they are only suspects.  So we know that a lot

8    of people are picked up who are only suspects

9    and they don't have probable cause yet.  Then it

10   says the majority of such detentions result in

11   the person being released without criminal

12   charges being placed.  So of the many detentions

13   under this policy, most of them are never

14   charged right there in their own directive.

15            THE COURT:  Doesn't say -- all

16   right.  Okay.  Go on.

17            MR. NORMAN:  And then the next

18   sentence, not very clear, they should not be

19   brought to central or taken from one location to

20   another.  If there was a period there that would

21   be great, but there's not, there's a comma, then

22   released to find their own means of

23   transportation.  So what they are saying is that

24   when these officers transport them, take them to

```
 1        the police station, you can't just leave them

 2        there.  If you do that, and there's no crime,

 3        you better drive them back to where you detained

 4        them in the first place.  Officers, right there,

 5        are to offer to transport them back to the

 6        location where they were originally stopped and

 7        provide them with an explanation of why they

 8        were detained.

 9                 THE COURT:  Well, how does this

10        run afoul under Del Code Section 1902, which

11        claim concedes is unconstitutional?

12                 MR. NORMAN:  11 Delaware code 1902

13        does not authorize a handcuffing, does not

14        authorize transport, does not authorize taking

15        them to the police station.  All it says is you

16        could do -- within constitutional parameters,

17        you can stop them, but they better be gone for

18        two hours.  Any extrapolation beyond that Terry

19        stop where you can do a quick pat down for

20        weapons is an inference by the City.  This

21        specific case was addressed in Glass v. City of

22        Philadelphia, almost exact same policy, where

23        they had an investigatory detention policy where

24        they were handcuffing, transporting, taking to
```

```
1    the police station and the Monell claim in that

2    case was upheld.  Wasn't a class action, but the

3    Monell claim was upheld.  Any question about

4    what this directive says was answered by James

5    Gestwicki.  Now, out of context, I don't know

6    how it could be out of context.  He was asked to

7    come to talk about arrest procedures, procedures

8    for arrest.  That was part of the e-mail chain

9    that went back and forth.  We've cited cases

10   that even if it wasn't in the notice, it's still

11   something that he has to respond to.  Once again

12   we're at the motion to dismiss stage.  And in

13   his -- in his testimony, he says it's a written

14   policy.  He actually -- you know, it's not just

15   a custom, this is a written policy according to

16   the 30(b)(6) deponent that the City had the

17   opportunity to provide.  They chose this person.

18            THE COURT:  Well, didn't Judge

19   Andrews address that already and say it wasn't

20   sufficient to establish?

21            MR. NORMAN:  Your Honor, the

22   Glover opinion was a great opinion in some ways.

23   I don't necessarily agree with the Monell claim,

24   but there are differences that distinguish
```

1          Glover from this case.  Number one, in Glover,

2     no written directive was identified.  So if you

3     were going solely based on the testimony of

4     Gestwicki and Officer Ralph Chiafano, who

5     corroborated what Gestwicki was saying, we have

6     now identified a written directive that

7     clarifies what Gestwicki was talking about, that

8     talks about these taking it over the limit

9     beyond what is allowed under 1902.  And the

10    second thing we have here is that we have

11    limited universe.  These intake logs for the

12    three years, for the four years, whatever is in

13    play here is going to show whether they were

14    brought in without probable cause under ID,

15    investigatory detention, where they show there's

16    no reason, no charges.  That right there shows

17    you there's no probable cause.  And the other --

18    the other people in this log who are identified

19    are people brought in for resisting arrest.  How

20    can you resist arrest if you're not being

21    detained?  So those two are key identifiers

22    within these prison logs.  These things are

23    three pages, Your Honor.  This would be a couple

24    thousand pages of documents.  I don't see how

1     that's burdensome.  There's also one other log

2     that identifies the race here.  Every one of our

3     class members is black.  And there's -- there's

4     the discovery that we're seeking is to determine

5     the racial, the racial identity of all these

6     individuals.  Once again, a one page per day,

7     two page per day document, couple thousand

8     pages, not very burdensome, probably kept

9     electronically.  We would also seek -- and if

10    you have a policy that allows you to arrest

11    under this, we would also ask for a compilation

12    of data.  If you're keeping these logs that

13    identify investigatory detention detainees

14    brought to the police station, there better be

15    some kind of log or something that favors

16    towards our deliberate indifference where you're

17    not even keeping track of how this policy is

18    affecting people.  So that's what we're asking

19    for.  This class is ascertainable even though

20    it's not required to be, because we're seeking

21    injunctive relief.

22              So I want to come back to why this

23    is such a simple case.  You have this written

24    directive.  Any question about what it means was

1    clarified by Gestwicki.  Any confusion about

2    what the 30(b)(6) Gestwicki said was confirmed

3    by Chiafano.  There's no DUI exception.  You

4    can't arrest somebody based on less than

5    probable cause for a DUI.  And I've cited a case

6    in here that we'll get to as I go through my

7    argument.  He nonchalantly -- and this goes to

8    our training argument, nonchalantly said you

9    know, he must have been taken under

10   investigatory detention, because I sure hadn't

11   determined whether there was probable cause yet.

12   What he was saying is that he was the chief

13   officer, investigating officer and if the

14   assisting officer took somebody to the police

15   station, well, it couldn't be based on probable

16   cause, because he was the one that made that

17   determination.  And he talked about it being a

18   normal procedure.  So you've got -- we're not at

19   summary judgment.  This is enough, I proffer,

20   that we could survive summary judgment at this

21   point.  We've got motion to dismiss and these

22   are solid factual averments that certainly

23   extend the day to give us our precertification

24   discovery we've been fighting for for so long.

1          I will no go back to the beginning of the

2          argument, but I do -- and I did distinguish

3          Glover.  Figure out where I am.

4                    THE COURT:  Take your time.

5                    MR. NORMAN:  Technology is not

6          working for me today.  We're here and I'm going

7          to focus on the motion to amend.

8                    THE COURT:  All right.

9                    MR. NORMAN:  Clearly the factual

10         averments are much more detailed.  And the

11         standard is that we then asked for consent,

12         which wasn't granted, understandably from my

13         friend.  And but it should be, the Court should

14         give, freely give leave when justice so requires

15         and the Third Circuit has actually adopted a

16         liberal policy to ensure the claims are decided

17         on the merits and not just on technicalities.

18         And an amendment should ordinarily be permitted

19         absent a showing of undue delay, bad faith or

20         dilatory motive.

21                   THE COURT:  I think the main

22         argument here is futility of amendment, so --

23         and we've heard from Mr. Cochran why the defense

24         believes even the greater detail in your

 1       proposed amended complaint still should not be

 2       permitted, because it would be futile and not

 3       save the cause of action under Monell and

 4       Canton, so if you could address that aspect of

 5       your motion to amend.

 6                 MR. NORMAN:  Certainly, Your

 7       Honor.  And I do have that in here.  I just want

 8       to point out, because we did get into some

 9       factual allegations and documents --

10                 THE COURT:  Like I said, I'm being

11       liberal, giving each side an opportunity to say

12       what they want in oral argument despite my

13       efforts in, you know, containing this and

14       compartmentalizing it, I understand it's a

15       little bit difficult, so I'll give you free

16       reign.

17                 MR. NORMAN:  Yes, Your Honor, and

18       this is just briefly.  I just want to reiterate

19       that the Court is required to accept as true all

20       the allegations contained in the complaint and

21       draw reasonable inferences in favor of the

22       Plaintiff once they factor out what are facts

23       and what are conclusions.

24                 THE COURT:  Exactly.  And I think

1    that's part of the argument here as to what

2    Defendants, the Defendant sees as conclusory and

3    what he may argue otherwise.

4            MR. NORMAN:  Some of the cases the

5    Defendant cites are distinguished.  I did want

6    to distinguish them.  Davis versus the City of

7    New York was one case cited by the Defendant for

8    the proposition that two incidents are

9    insufficient as a matter of law to establish a

10    pattern.  It's not on point.  Davis did not deal

11    with an admitted policy, specifically identified

12    policy, but only two instances of

13    unconstitutional conduct by low level employees,

14    that was the issue there.  Didn't have decision

15    makers, you had low level employees that were in

16    play.  Another case, Palmer versus City of

17    Marion cited by the Defendant also did not

18    concern an admitted policy, but rather a policy

19    alleged by an incarcerated inmate in one

20    affidavit.  That was it.  Not comparable to

21    what's being alleged here.  I'll note in Palmer,

22    it actually has language that says a single

23    incident could suffice if proof of the incident

24    includes proof that it was caused by an existing

```
 1      unconstitutional policy, so that case actually
 2      supports the Plaintiff's position that one
 3      instance is enough, when the policy on its face
 4      is unconstitutional.  Like I said, similar
 5      Monell claims have been upheld.  Investigatory
 6      detentions, and I'm quoting, without probable
 7      cause to arrest, violate an individual's fourth
 8      amendment right to be free from unreasonable
 9      seizures.  Therefore the City of Philadelphia
10      violated Plaintiff's fourth amendment rights
11      when they were brought in voluntarily to the
12      police station in the back of a police car,
13      handcuffed and placed in a cell for two to three
14      hours for investigative purposes, without
15      probably cause to arrest.  And that's from this
16      Circuit, Your Honor.  That's Glass versus City
17      of Philadelphia, 455 F Sup 2nd 302 at page 347.
18      The Glass case is right on point, Your Honor.
19      It's a very similar policy, very similar claim,
20      not a class action.  And this is a case that I
21      litigated, Your Honor, and we prevailed on
22      summary judgment on Monell claim in this
23      district.  The Whelihan case.  Once the policy
24      is established, the single application of the
```

```
 1          custom suffices to establish it was done

 2          pursuant to official policy and thus established

 3          the municipality's liability.  And it goes

 4          further and says when the municipal action

 5          violates federal law on its face, issues of

 6          fault causation are straightforward.  That's

 7          Whelihan versus Cape Henlopen School District.

 8          2011 Westlaw 404 8976 at 4 and 5.  And what's

 9          critical in that case, Your Honor, is that that

10          summary judgment motion was based solely on the

11          testimony of the 30(b)(6) witness who admitted

12          there was a policy just like here.  Not motion

13          to dismiss summary judgment.  And that was

14          regarding both practice and causation.  That's

15          at page 6 and 7.  Now, the failure to train is

16          pretty obvious from what's been -- if you've got

17          an unconstitutional policy and you're training,

18          your 30(b)(6) witnesses think it's

19          constitutional and you've got an officer that

20          tells you this is what we do, obviously they are

21          being trained on an unconstitutional policy.

22          That's where the failure to train comes in.  Not

23          very complex, but if you're training them

24          improperly, that's where the claim lies.  And if
```

```
 1        you look at, I don't -- Your Honor, I think
 2        we've gone over.  I don't want to go over the
 3        testimony again, because it's before the Court,
 4        I know we're on a time constraint here, but the
 5        averments are what the averments are, that
 6        Wilmington has a policy of arresting or
 7        detaining, handcuffing, transporting based on
 8        reasonable suspicion alone and that is
 9        corroborated by Officer Chiafano.  I'm not going
10        to get into the testimony ad nauseum.  I think
11        we've been over that.  And I'm still trying to
12        figure out what the out of context was.  Because
13        I know that I've seen out of context.  I know
14        there's been arguments about out of context.  If
15        you're going to argue out of context, you need
16        to explain why.  There's no DUI exception.  If
17        there's no probable cause, you can't do this.  I
18        don't care if it's DUI, I don't care if it's
19        theft, it doesn't matter.  Even pertaining to a
20        DUI suspect, I'm quoting, transportation from
21        the site of the traffic stop to the police
22        station cannot be supported on reasonable
23        suspicion alone and constituted a defect or
24        arrest.  And that's the City of Devil's Lake
```

```
 1      versus Grove 755 NW 2nd 485 and that's at page
 2      492, North Dakota 2008.  Not a lot of cases on
 3      point on this, but there is case law that
 4      says -- you haven't seen any case law that says
 5      there are DUI exceptions.  And I do want
 6      to -- I want to touch on Officer Chiafano's
 7      corroborating testimony.  We're basically saying
 8      that he supported Officer Gestwicki's testimony,
 9      stating that WPD has a policy of investigatory
10      detention.  It should be enough at the plausible
11      stage.  There's an attack by Defendants, some of
12      the excerpts are inaccurate and you don't look
13      at everything, you need to look at all of his
14      testimony.  They state in their pleading that
15      Officer Chiafano did not testify that WPD has a
16      sweeping policy of handcuffing and transporting
17      persons suspected of a crime based only on
18      reasonable suspicion.  That's in their argument
19      at page 17 and 18.  What he did testify to is
20      that the arresting officer transported the
21      suspect to the police station under an
22      investigatory detention pending his
23      investigation.  That's at Chiafano's deposition,
24      70, 71.  And then I quote in layman's terms to
```

1      describe it, to describe it is you are being

2      held pending the investigation.  If the

3      investigation uncovers something that you should

4      be charged accordingly, then you're charged

5      accordingly.  If the investigation yields that

6      there was not enough or insufficient evidence to

7      charge you accordingly, then you would be

8      released.  And then he clarifies that taking to

9      the station is part of the detention.

10                  THE COURT:  Hang on for one

11     moment.  I think there's an objection by Mr.

12     Cochran.

13                  MR. COCHRAN:  If we could just

14     have page and line?

15                  MR. NORMAN:  Page 71.

16                  MR. COCHRAN:  And line?  I'm

17     sorry.

18                  MR. NORMAN:  It's cited in the

19     brief.  I've got the page number here.  And I've

20     got the --

21                  MR. COCHRAN:  This was Chiafano?

22                  MR. NORMAN:  This was Chiafano,

23     correct.  It's actually in the reply.  All this

24     is taken directly out of the reply.

1              THE COURT:  Very well.

2              MR. NORMAN:  He terms it normal

3     procedure to place suspects in handcuffs and

4     actually transport them to the police station.

5     That's at page 213 of his deposition.  Now, I'm

6     going to read his testimony.  Okay.  But your

7     impression was that the suspect had been

8     arrested for DUI?  That's me asking him.

9     Answer, correct.  Question, okay.  This is --

10             THE COURT:  If you can just

11    pinpoint where you're reading from.

12             MR. NORMAN:  This is page 95.

13             MR. COCHRAN:  Your Honor, aren't

14    finding that testimony at the pages cited, so --

15             THE COURT:  Is it attached to your

16    reply -- well, can you identify which court

17    document you're reading from Mr. Norman, so we

18    can all follow along?

19             MR. NORMAN:  Yeah.  Sure.  It's

20    document 33-1, page 95.  Okay.  But your

21    impression was that the suspect had been

22    arrested for DUI?  Answer, correct.  Question,

23    okay.  Answer, I should say investigative

24    purposes because at that point we still

1        didn't -- I was still working on the rest of it,

2        the probable cause.  Question, okay.  She was

3        arrested for investigatory purposes and taken to

4        the police station?  Answer, correct.  And then

5        we move on to 101, page 101.  Okay.  So he

6        wasn't arresting her for DUI?  Answer, I don't

7        know what he was arresting her for.  The only

8        thing I can tell you is that it had to have been

9        for investigative detention because he couldn't

10       arrest her until I was done with my

11       investigation on the official charge.  Question,

12       okay.  Now, you have to have probable cause to

13       detain someone on suspicion of driving under the

14       influence and actually know to take them into

15       custody and transport them to the police

16       station.  Answer, no, you don't.  Question, what

17       level of proof do you need to have?  Answer,

18       reasonable suspicion.

19                    MR. COCHRAN:  Again, Your Honor, I

20       think he's jumped from testimony on 101 to

21       testimony on another page, which isn't cited.

22       I'm -- so we're not following it.

23                    THE COURT:  I followed to the line

24       7 of page 101 and I think the comment after that

1     may have been argument of Mr. Norman, if I'm not

2     mistaken or you're quoting from -- oh, quoting

3     from 211 of that transcript after 101.

4                 MR. NORMAN:  Let me see.  Your

5     Honor, I apologize.  Yeah, that would be 211,

6     Your Honor.

7                 THE COURT:  That's what I thought.

8                 MR. COCHRAN:  All right.  Thank

9     you.

10                MR. NORMAN:  Just examples, Your

11    Honor, once again, this is more for motion for

12    summary judgment, so I'm going to move on.  I

13    want to talk about the law of our land, the U.S.

14    Supreme Court.  There's three kinds of stops,

15    three kinds of encounters with the police;

16    consensual encounter where you're free to leave,

17    Terry stop where you can briefly detain them and

18    then where you have probable cause where you can

19    have detention or have an arrest.  You can stop

20    and briefly detain a person for investigative

21    purposes.  That's United States versus Zochalov,

22    490 U.S. 1, 7, 1989.  Reasonable suspicion is a

23    reasonable, articulable suspicion that in the

24    case of a traffic stop must be temporary and

```
 1          last no longer than is necessary to effectuate
 2          the purpose of the stop.  That's 677 F Sup 2nd
 3          784 at 791.  Handcuffs are restraints on freedom
 4          of movement normally associated with arrests,
 5          such that the use of handcuffs substantially
 6          aggravates the intrusiveness of a Terry stop.
 7          Basically if you're going to use handcuffs there
 8          has to be some kind of identifiable safety
 9          issue.  It's not part of the -- you can't just
10          do it unless there's some specific
11          circumstances.  Another Supreme Court case, an
12          important one right on point, transport of
13          suspects subject to investigatory detentions is,
14          in fact, permissible where the circumstances
15          reasonably require, is what the Defendants are
16          setting forth.  The Supreme Court, however, has
17          squarely held that transportation to an
18          investigative detention at a station house is
19          not a permissible incident to a Terry stop.  And
20          that's actually Hayes, Dunaway -- that's the
21          Hayes case, and also supported by Dunaway versus
22          New York 442 U.S. 200 at 212, based on
23          reasonable suspicion when a Plaintiff was
24          handcuffed, transported and imprisoned, these
```

1   are all factors that would transform a Terry

2   stop into a de facto arrest.  That's the Glass

3   versus City of Philadelphia case, at 347.

4   Really, Your Honor, what we have here is it just

5   comes down to that statute and a

6   misinterpretation of what that statute lets you

7   do and you can really tell from the title of

8   what's in the directive, it calls it a two-hour

9   arrest statute.  And that's not what it is, it's

10  a two hour stop and frisk.  In terms of

11  ascertainability, once again not required in

12  23(b)(2) actions.  Court's indulgence, Your

13  Honor.  I'm just about done.

14          THE COURT:  Sure.

15          MR. NORMAN:  Your Honor, I do want

16  to talk about the class members, class

17  representative.  There are additional class

18  members.  There's no requirement that every

19  single class member be named as a class

20  representative.  Actually it's, it's frowned

21  upon.  You pick class representatives that are

22  representative of the class and there's no

23  requirement as to the number.

24          THE COURT:  What about the fact

```
1      that Wright was arrested and did not serve --

2      what's your position on whether or not he can

3      serve as class representative assuming

4      hypothetically that the Court consider class

5      certification?

6                  MR. NORMAN:  I don't think that's

7      necessarily true, Your Honor.  I think that what

8      you're going to find may happen here and I think

9      we need to get these logs, is that some people

10     that are brought in under this section, they may

11     say hey, we've been here for more than two

12     hours, we need to come up with some charges.

13     The charges were dismissed before trial, but

14     just because there were eventually charges

15     filed, it doesn't necessarily mean that they

16     were not brought in according to this

17     unconstitutional policy.  As to the other named

18     plaintiffs, we're not suing individual officers,

19     this is based on the policies.  What we're doing

20     is outlining the facts.  You're not going to

21     have probable cause because there's no -- we're

22     not going to allege there was a crime submitted.

23     We are alleging there was no crime committed.

24     Basically the averments are showing these guys
```

```
 1        didn't do anything that would justify them being

 2        arrested and then the specific averments, we're

 3        saying all these individuals were arrested

 4        pursuant to this unconstitutional policy.  We go

 5        ahead and bring in all the preceding and

 6        subsequent averments as well in the pleading.

 7        Not a big number, you know, 40 is pretty much

 8        the standard for numerosity.  We have five named

 9        representatives.  We have several others.  We're

10        looking for three to four years of these logs.

11        The one day of this log that we have, one day,

12        we've identified three potential class members,

13        just in one day.  So that's where we're coming

14        up with this number.  And it's a reasonable

15        inference to say if you got three people in one

16        day and you've got, you know, a thousand days

17        since then that you know you may be talking

18        about a thousand, 2,000, 3,000 individuals.

19        There's no requirement for specific

20        identification at this point and, you know,

21        we're looking for an opportunity to get this not

22        overbearing discovery.  This is less discovery

23        than I've asked for in 99 percent of my

24        individual cases.  Very specific, look at these
```

1    logs, identify potential individuals on these

2    logs.  You can have incident reports once these

3    individuals are identified, so you want to get

4    the incident reports.  Once identified -- but

5    you don't need all that until you see whether

6    there's evidence that they were brought in

7    according to this policy, once again,

8    specifically states the policy on the law or

9    just brought in for resisting arrest, those will

10   be two clear identifiers.  Typicality --

11              THE COURT:  Do you know -- you've

12   talked about the logs.  Do you know anything

13   about the volume of pages?  I know they are

14   electronically stored, but how large a document

15   are we speaking to based on your experience

16   obtaining logs or portions thereof in those

17   cases?

18              MR. NORMAN:  There was an example

19   attached.  And I believe one of the logs was one

20   page, one of the logs was two or three pages.

21              THE COURT:  All right.

22              MR. NORMAN:  And that's for a

23   whole day.  So it may be several thousand pages,

24   but I printed out that much for this hearing,

1    you know.  And we're talking about a class

2    action, so it's really non-intrusive.  It's not

3    a whole lot to ask for.  See, we just want a

4    chance to explore this typicality, commonality,

5    typicality commonality.  We're seeing people

6    were injured based on this.  It's -- the core

7    here is this policy and that's been found in the

8    two cases I cited earlier that recognizes that

9    for typicality and commonality purposes if you

10   have an unconstitutional policy that's being

11   alleged, that that's enough for that issue.  A

12   lot of times they are looked at together.  Your

13   Honor, you know, open for any more questions?  I

14   think I'm done with most of my presentation.

15              THE COURT:  Very well.  Thank you.

16   Back to Mr. Cochran.

17              MR. NORMAN:  Thank you, Your

18   Honor.

19              MR. COCHRAN:  Your Honor, I have

20   just a couple of things I'd like to try to

21   straighten out.  The -- Mr. Norman says that

22   ascertainability is not an element here because

23   he's not seeking money damages.  The original

24   complaint and the amended complaint and addendum

```
1      paragraph 5, he's seeking all lawful damages
2      including compensatory damages in an amount to
3      be determined against the Defendant.
4      Furthermore, we don't know of any Third Circuit
5      authority that says that ascertainability is not
6      an element where the relief requested is
7      injunctive.  And in addition to that, if the
8      relief requested is -- were solely injunctive,
9      which it is not, I'm having trouble
10     understanding why a class action would be better
11     than any other form of proceeding, which is an
12     element of 23(b)(2) or (b)(3), particularly
13     maybe there are issues regarding the scope of
14     the injunction that would be different if there
15     were a class.  I don't see it.  You know, I
16     don't think it needs to be a class if the relief
17     being sought were only injunctive relief.  You
18     could render your decision regarding the policy
19     and whether or not there's a custom and practice
20     based on one case.  So in any event, even if Mr.
21     Norman is correct that you don't need
22     ascertainability where only injunctive relief is
23     sought, he is seeking damages, at least in these
24     pleadings.  He cited two cases on the
```

1    ascertainability issue that were not cited in

2    his papers.  I think he said it was Stuart and

3    Floyd, 275 FRD -- I'm sorry F 3rd and 283 FRD.

4    To the extent the Court considers those, we'd

5    like an opportunity also to consider them.  We

6    don't think they should be considered at this

7    point, but if those are cases that are of

8    relevance, I don't believe they were cited in

9    the papers and we'd like an opportunity to

10   address them.

11              THE COURT:  Can you address -- I'm

12   sorry, go through your list and then I have a

13   question of Mr. Norman on behalf of the

14   Plaintiffs cited a few times to a case Glass

15   versus City of Philadelphia, if you would give

16   me the defense view of that case and whether it

17   should be considered on point?

18              MR. COCHRAN:  Your Honor, that

19   case I think was cited for the first time in a

20   pleading that we didn't have an opportunity to

21   respond to, so I want to do that.  But secondly,

22   that was a 2006 Eastern District of Pennsylvania

23   case.  The law on the Third Circuit, at least as

24   of 2013 is stated in the Murphy decision which I

1    referred to in my remarks.  And Murphy plainly

2    permits detention and removal to the station on

3    less than probable cause where the circumstances

4    require.  In that case it's issues involving

5    safety and security and the need to wait for a

6    drug sniffing dog.  The gentleman was on a bus

7    trip and he got off the bus and then gave the

8    police officers a confusing story about where he

9    was going and what he was doing.  He was

10   ultimately returned to the station by the police

11   to the police station.  And the Third Circuit

12   held, because the bus station was in a bad part

13   of town and there were people in the vicinity,

14   the officer perceived a security threat and in

15   addition to that, they needed to wait for a drug

16   sniffing dog, so they decided to remove him to

17   the police station.  Third Circuit said that's

18   fine, in those unique circumstances, that was

19   fine.  So we think that's the law, that Murphy

20   is the law.

21              THE COURT:  Wasn't there a more

22   recent --

23              MR. COCHRAN:  Sorry?

24              THE COURT:  Wasn't there a more

1    recent Supreme Court decision -- perhaps I

2    recall reading the Murphy decision.  I thought

3    there was a decision, I thought it was Supreme

4    Court, not necessarily the Third Circuit, where

5    there was a traffic stop and it was determined

6    that it was impermissible to detain at a traffic

7    stop to wait for a drug sniffing dog.  I may

8    have that wrong.  Maybe it was the Murphy case

9    and the outcome was as you've proffered.

10                MR. COCHRAN:  I'm not sure, Your

11   Honor.

12                THE COURT:  All right.  I'll look

13   into that.  Thank you.

14                MR. COCHRAN:  So and the series of

15   other cases, and they are all cited in our

16   papers, Murphy mentions the Third Circuit, U.S.

17   versus Wrensford, Florida versus Royer, which is

18   a U.S. Supreme Court case that says safety and

19   security can justify.  U.S. versus Barron, 9th

20   Circuit.  Hicks versus State, Delaware Supreme,

21   former Justice Moore.  Cop versus Texas actually

22   leaves open the possibility of the

23   fingerprinting being justified.  Hayes versus

24   Florida.  So I think the point here is that

```
 1        6.10K is not perfect.  Nobody contends that it
 2        is, but it's not deliberately indifferent.  It
 3        incorporates by reference a statute that has
 4        been found to be constitutional.  It doesn't say
 5        you may bring them back in every case and for
 6        the same reasons Judge Andrews found in Glover
 7        that when they returned Arthea Glover to the
 8        police station for a blood draw, that is that
 9        they don't permit it in all cases, only where
10        the circumstances justify it.  And in fact and
11        my friend Mr. Norman does seem to concede that
12        transport is permissible where the circumstances
13        under the case law justifies.  6.10K is not
14        inconsistent with that.  You know, could they
15        have done it a little differently, sure, but
16        that's not the standard.  There's got to be
17        deliberate indifference and it's not fair in our
18        view.  My friend Mr. Norman mentioned the
19        Dunaway case.  Again, I cited to Your Honor
20        cases decided after the Dunaway case just a
21        moment ago, which are in our papers.  If I may,
22        just a moment, Your Honor.
23                   THE COURT:  Sure.
24                   MR. COCHRAN:  Now, Officer
```

```
 1      Gestwicki wasn't even asked about 6.10K.  So I'm

 2      not certain where that comes in.  In addressing

 3      ascertainability, my friend Mr. Norman, this is

 4      something I wanted to mention.  Talked about

 5      wanting prison logs in order to identify cases

 6      where there were detentions or arrests for

 7      resisting arrest.  Essentially seeking to

 8      involve the Court in second guessing whether

 9      those resisting arrest charges were properly

10      placed.  That's the kind of detailed factual

11      inquiry that would render this case

12      uncertifiable as a class.

13                  THE COURT:  On that point just

14      tell me in terms of volume in a sense of what

15      the volume of pages is of such a log for the

16      time period requested by the Plaintiffs?  Do you

17      have a sense?

18                  MR. COCHRAN:  I don't have an

19      estimate of the volume, but I can get that for

20      you and provide it by letter if that's

21      permissible.

22                  THE COURT:  Sure.

23                  MR. COCHRAN:  The other issues,

24      discovery issues that he mentioned with respect
```

1    to the class in addition to second guessing the

2    arrests for resisting arrest, he wanted

3    information on racial identity and compilations

4    of data and I wrote in the margin of my notes

5    the words fishing expedition.  I think we're in

6    a case where, as a matter of law, given the

7    unique circumstances that are in every single

8    one of these detentions, he can't satisfy the

9    ascertainability elements, but he wants the

10   discovery in order to look for evidence of

11   racial profiling, unspecified compilations of

12   data.  It emphasizes what we say in our motion

13   for protective order.  This is a case where

14   ascertainability can't be established for the

15   same reasons commonality and typicality can't be

16   established and what will happen is we'll

17   embroil the City in unnecessary discovery in a

18   fishing expedition at public expense, so without

19   more on the face of these pleadings, we don't

20   think it's justified.  With regard to the

21   training claim, my friend stated essentially,

22   and I wrote in my notes, if you're training them

23   improperly, then there is a claim.  But there

24   are no facts alleged to demonstrate or that may

```
 1      show plausibility with respect to the claim,

 2      that is that any particular training is improper

 3      or that any purportedly improper training was

 4      the moving force in the injury of anyone.  So

 5      that allegation is plainly subject to dismissal

 6      under Twombly and Iqbal.  Your Honor, unless the

 7      Court has questions, that's all I have.

 8                THE COURT:  Not at this time.

 9      I'll give Mr. Norman a final opportunity to

10      address the motions themselves and then we'll

11      have our discussion about Rule 16 scheduling.

12                MR. COCHRAN:  Thank you.

13                MR. NORMAN:  Thank you, Your

14      Honor.  Your Honor, there's certification being

15      sought under both 23(b)(2) for injunctive relief

16      and 23(b)(3), which has to do with

17      ascertainability.  The case for 23(b)(3) is when

18      there is a reliable and administratively

19      feasible mechanism for determining members of

20      the class, that addresses ascertainability.

21      Went over ad nauseum and we're looking for

22      specific documents, not a lot of them that

23      should ascertain the numerosity issue here.

24      Glass was cited directly in the reply front and
```

1    center.  It was front and center in the Glover

2    opinion that this policy is unconstitutional.

3    Nearly identical policies as we're talking about

4    today.  Wasn't addressed, wasn't confronted, but

5    there was an opportunity to do so.  So I did

6    want to bring that up.  The Supreme Court has,

7    you know, was cited all over class.  The Dunaway

8    case, regarding what reasonable suspicion is and

9    when you go past that, when it gets more

10   intrusive, which could even be handcuffing

11   without special circumstances.  The Hicks case,

12   the Hicks case did address 11 Delaware code 1902

13   and said what I said, that it can be interpreted

14   in a constitutional fashion.  I don't think we

15   would have heard if the statute itself was

16   unconstitutional.  I had the exact same issue in

17   Whelihan.  When you can interpret state statute

18   in a constitutional way, you, you know, you get

19   to the policy.  And what the Hicks case actually

20   said is that 1902 has to be enforced in the

21   parameters of the constitution.  That brought --

22   I don't have the specific quote, but that was in

23   our reply brief.  You know, so Hicks recognized

24   1902 needs to follow the constitution.  We're

1    not looking -- you know, when you say the word

2    compilation, I know Mr. Cochran is a very

3    sophisticated litigator.

4                THE COURT:  Can you articulate, I

5    wrote down from your -- when you were up at the

6    podium, at the lectern a few minutes ago I wrote

7    down the Plaintiff is looking for three to four

8    years of these logs.  I haven't given these logs

9    a name.  Are they the detention logs or what

10   are --

11               MR. NORMAN:  One is intake log,

12   Your Honor.  And the other one was attached to

13   the discovery, you know.  We're not hiding the

14   ball here.  We specifically attached what we're

15   looking for to the discovery request, so there's

16   an intake log and then I think there's a release

17   log or maybe it's a turnkey log, Your Honor.

18               THE COURT:  Turnkey log, that's

19   how it was.

20               MR. NORMAN:  Intake and turnkey.

21               THE COURT:  And for specifically

22   what period of time are you looking for the

23   intake and turnkey?

24               MR. NORMAN:  Your Honor, the date

1       of the complaint to, you know, ongoing.  So --

2       and I don't have the date of the complaint in

3       front of me.

4                 THE COURT:  That's fine.  I'm just

5       trying to get a sense.  Mr. Cochran indicated

6       that he would look into answering the Court's

7       question about just how voluminous the logs

8       themselves are.

9                 MR. NORMAN:  We know what they

10      look like.  And the compilation isn't -- if they

11      are keeping track of these investigatory

12      detentions, they keep track of the amount of

13      arrests they have.  This is a policy.  They

14      should be keeping track of how many

15      investigatory detentions there are.  We want to

16      know that.  We want those documents, whether

17      they are documents or in electronic form.  That

18      makes it easy.  If there's somebody keeping

19      track of this and there's 500 investigatory

20      detentions, then we have our number.  Okay.

21      Your Honor, yeah, damages are being sought,

22      damages are allowable incidental in a 23(b)(2)

23      injunctive action and under 23(b)(3), damages

24      are being sought.  Damages don't have to be

1    exactly the same for every single Plaintiff.  As

2    long as you have the typicality and commonality

3    requirements met, damages do not have to be

4    identical.  All right.  Thank you, Your Honor.

5    Any more questions, Your Honor?

6              THE COURT:  No further questions

7    at this time.  Thank you.

8              MR. NORMAN:  Thank you.

9              THE COURT:  And I think the

10   complaint was actually filed November 21, 2013,

11   according to the docket, for clarification on

12   the record.  Let me ask the question this way

13   with regard to the Rule 16.  I've been given

14   alternate proposals by Plaintiff and Defendant,

15   and are these alternate proposals really driven

16   by whether or not there's precertification

17   discovery permitted?

18             MR. COCHRAN:  Both that and

19   ultimately whether this is going to be a class

20   action or five individual actions or three or

21   two.

22             THE COURT:  Right.

23             MR. COCHRAN:  The scope is going

24   to be very different.  You know, I sat down and

1      looked at the initial disclosure requirements

2      and thought about, about how to, how to craft

3      initial disclosures.  And until we have, you

4      know, definitions as to what this proceeding

5      will look like, if any, if any proceeding is

6      permitted, it's awfully hard to do it.  You

7      know, you could see one view of the world is if,

8      if there were five individual claims and perhaps

9      the officers could be custodians of ESI or if

10     there were -- but if this were a class action

11     and I heard my friend say if it's class action,

12     he says he didn't say this or I misheard it, but

13     I was -- what I thought I heard is that they

14     would want ESI from all officers involved in the

15     arrests and detentions, so we've got a very

16     broad spectrum here, if it's one thing.  The

17     discovery is fairly narrow, if it's another

18     thing.  But Plaintiff would like the discovery

19     to be very broad.  I heard today for the first

20     time racial data, which isn't related to any

21     claim in this case.  So until we have some

22     definition regarding the nature and scope, it's

23     awfully hard to do the discovery.  That's why I

24     proposed in our proposed plan as scheduled it

1    was tied into your, you know, rulings on these

2    motions.

3              THE COURT:  That's what -- you

4    answered my question.  And I'll pose the same

5    question, Mr. Norman, is the schedule really

6    tied into the decisions on these motions and

7    whether or not discovery --

8              MR. NORMAN:  I don't think so,

9    Your Honor.  I think that we've been going for a

10   year and a half.  I think precertification

11   discovery right now is justifiable especially in

12   light of the fact that if you don't have a

13   class, I would imagine we may have individual

14   claims.  If you have Monell claims, you need to

15   show a policy and practice, so we're going to be

16   asking for the same stuff, anyway, to show the

17   wide spread practice.  So I think, you know,

18   whether it's individual or class, it's fair game

19   at this point and I also believe that it's not

20   complicated.  Most of the cases I have, I've got

21   five experts, I've got this and that.  I mean,

22   you know, maybe a police practices expert.  The

23   experts here aren't very complicated, so it's a

24   streamlined case.  We've been through it once

 1      before.

 2                  THE COURT:  I'll give you an

 3      opportunity too, Mr. Cochran.

 4                  MR. NORMAN:  We know what we're

 5      looking for.  We have a relationship, but we've,

 6      you know, have had a couple gettogethers with

 7      the City of Wilmington, so we're familiar with

 8      each other.  This can be a streamlined case.  We

 9      know what we're looking for.  It's not a fishing

10      expedition.  We do this a few times a year.

11      That's why we have an expedited, you know,

12      discovery, nine months we think.  Let us start

13      today, we think we can get what we need in nine

14      months.

15                  THE COURT:  Let me just, if this

16      helps, counsel, frame your further comments for

17      purposes of our Rule 16 conference.  I'm going

18      to reserve decision on everything including what

19      the scheduling order might look like, because I

20      think, at least in my mind, in my view, it's

21      linked, but just so you know, I'm not going to

22      make a decision on the spot here today as to

23      whether or not to permit discovery to come to a

24      screeching halt or to go forward with regard to

1    precertification discovery and also I'd like to

2    wait and hear from Mr. Cochran about the --

3    about these intake and turnkey logs, since

4    regardless of the Court's findings on

5    certification, they may have arguably some

6    relevance to the Monell and Canton claims of the

7    individuals, so again, I'm not making any

8    rulings.  I need a little bit more information

9    as to what the volume and burden would be and

10   Mr. Cochran will provide that while the Court

11   takes it under advisement.  But did you have any

12   further comments?

13              MR. NORMAN:  We're ready to go,

14   Your Honor, that's why we have an expedited

15   schedule.  Theirs is a little different.

16              THE COURT:  Mr. Cochran?  You need

17   to come to the microphone.  Little easier for

18   the court reporter to hear.

19              MR. COCHRAN:  I apologize.  And I

20   understand the importance of the microphone

21   because my hearing, as Your Honor may know,

22   really bad for me not to walk up to the

23   microphone is particularly negligence and I

24   apologize.

1              THE COURT:  It's all right.  At

2     this point in the hearing we're probably more

3     likely to be casual than, you know, enforce the

4     formalities, but --

5              MR. COCHRAN:  I remember when I

6     found out about my hearing I was in Judge

7     Robinson's courtroom, and she was -- she was

8     speaking and her mouth was moving and I heard

9     nothing.  I apologize.  I understand the

10    importance of the microphone.  I just would note

11    that to the extent we move over into, and I know

12    Your Honor is reserving decision on everything

13    essentially the scheduling of discovery, would

14    implicate our motion for a protective order, so

15    we have taken the position in the motion for

16    protective order that there should be no

17    discovery pending rulings on certification,

18    which we think there shouldn't be class

19    certification, that no amount of discovery could

20    get there.  So I just wanted to make sure to

21    focus the Court on that, that that will

22    implicate our motion for protective order which

23    is fully briefed.

24              THE COURT:  Very well.  All right.

```
 1        Well, I appreciate the arguments of counsel.
 2        Mr. Cochran, if you could get that information
 3        to me about the status in keeping of the logs
 4        and their volume in terms of how large they are,
 5        if you can get that to me in a week, is that
 6        enough time?
 7                    MR. COCHRAN:  Yes, Your Honor.
 8                    THE COURT:  Just a short letter.
 9        I don't think I'm going to request from counsel
10        any further -- I don't want to reopen the
11        briefing on this.  To the extent we have been
12        discussing cases that perhaps were or were not
13        cited in the papers, I think I'm comfortable,
14        even if I do read those cases.  If, when I read
15        those cases, it causes me to decide that I'd
16        like to hear each sides' viewpoint on those
17        cases, I'll ask for it, and I'll put a page
18        limitation on it.  But I think more likely than
19        not, I have a volume that I've read already and
20        I don't think I need any further oral argument
21        with regard to any cases we've discussed in our
22        hearing today.
23                    MR. NORMAN:  Your Honor, if I may,
24        just one brief issue?
```

1          THE COURT:  Step up to the

2     microphone.

3          MR. NORMAN:  I know that when we

4     were talking about these logs, you know, inquiry

5     of whether or not there's a, you know, a logging

6     of investigatory, you know, how many

7     investigatory detentions there are, I wasn't

8     sure whether you were asking Mr. Cochran to go

9     ahead and make that determination also.

10          THE COURT:  No.  No, I'm just

11     looking for, you know, what -- how voluminous

12     these logs are and I'm referring specifically to

13     the intake and turnkey logs.  I'm just speaking

14     about the logs in general without doing anything

15     with the information that's contained in those

16     logs at this point.

17          MR. NORMAN:  Thank you, Your

18     Honor.

19          THE COURT:  Anything further?

20          MR. COCHRAN:  Nothing further,

21     Your Honor.

22          THE COURT:  All right.  Well, I

23     thank counsel for your arguments and for the

24     briefing.  I will take this under consideration

1    as I've said.  I will, you know, get to it in

2    due course.  I do want to spend some more time

3    with it and I recognize that the parties are

4    eager to either put the issues to rest or get on

5    with the case and I will definitely -- I am

6    aware of the time sensitivity, so I'll do my

7    best to get something out soon.  So I appreciate

8    it.  We're adjourned.  I'm just going to log off

9    of the computer.  Hopefully it won't take as

10   long as logging on, but you're free to move

11   about, collect your things.  And again, we're in

12   recess.  Thank you.

13                  (End at 11:59 a.m.)

14

15

16

17

18

19

20

21

22

23

24

1    State of Delaware )
                      )
2    New Castle County )

3

4

5                CERTIFICATE OF REPORTER

6

7         I, Stacy M. Ingram, Certified Court Reporter

8    and Notary Public, do hereby certify that the

9    foregoing record, Pages 1 to 87 inclusive, is a true

10   and accurate transcript of my stenographic notes

11   taken on June 17, 2015, in the above-captioned

12   matter.

13

14        IN WITNESS WHEREOF, I have hereunto set my

15   hand and seal this 17th day of June 2015, at

16   Wilmington.

17

18

19                  */s/ Stacy M. Ingram*

20             Stacy M. Ingram, CCR

21

22

23

24

**/**

**/s** [1] - 87:19

# 1

**1** [3] - 27:5, 60:22, 87:9
**10** [1] - 22:3
**100,000** [1] - 37:9
**101** [5] - 59:5, 59:20, 59:24, 60:3
**102** [1] - 26:10
**10:00** [1] - 1:11
**11** [5] - 13:2, 32:7, 43:16, 45:12, 75:12
**11:59** [1] - 86:13
**12(b)(6** [9] - 8:3, 8:24, 18:8, 18:16, 26:22, 29:1, 31:21, 32:18
**12(b)(6)** [2] - 9:9, 29:7
**13-1966** [1] - 1:5
**1480** [1] - 19:10
**15** [3] - 12:24, 26:8, 26:11
**153** [1] - 42:17
**16** [6] - 4:10, 5:9, 13:1, 74:11, 78:13, 81:17
**162** [2] - 42:17, 43:1
**17** [5] - 1:11, 26:9, 26:11, 56:19, 87:11
**17th** [1] - 87:15
**18** [1] - 56:19
**1902** [10] - 13:2, 13:11, 32:6, 43:17, 45:10, 45:12, 47:9, 75:12, 75:20, 75:24
**1989** [1] - 60:22

# 2

**2** [1] - 27:7
**2,000** [1] - 64:18
**200** [1] - 61:22
**2006** [1] - 68:22
**2008** [1] - 56:2
**2011** [1] - 54:8
**2012** [1] - 42:17
**2013** [3] - 37:8, 68:24, 78:10
**2015** [3] - 1:11, 87:11, 87:15
**21** [1] - 78:10
**211** [2] - 60:3, 60:5
**212** [1] - 61:22
**213** [1] - 58:5

**220** [1] - 42:4
**228** [1] - 42:5
**23** [2] - 42:11, 42:16
**23(b)(2** [7] - 40:10, 42:19, 42:20, 62:12, 67:12, 74:15, 77:22
**23(b)(3** [4] - 41:23, 74:16, 74:17, 77:23
**23(d)(1)(D** [1] - 35:6
**232** [1] - 36:22
**24** [1] - 29:15
**275** [2] - 42:4, 68:3
**28** [2] - 28:22, 30:8
**283** [2] - 42:17, 68:3
**29** [2] - 28:22, 30:8
**2nd** [6] - 26:7, 42:11, 42:16, 53:17, 56:1, 61:2

# 3

**3,000** [1] - 64:18
**30(b)(6** [15] - 21:4, 26:4, 31:5, 31:17, 31:18, 31:23, 31:24, 32:1, 32:8, 32:23, 46:16, 49:2, 54:11, 54:18
**302** [1] - 53:17
**33-1** [1] - 58:20
**347** [2] - 53:17, 62:3
**3rd** [2] - 42:4, 68:3

# 4

**4** [1] - 54:8
**4,500** [1] - 37:8
**40** [1] - 64:7
**404** [1] - 54:8
**431** [4] - 26:6, 26:7, 26:15, 30:22
**432** [1] - 26:15
**442** [1] - 61:22
**45** [1] - 27:17
**455** [1] - 53:17
**485** [1] - 56:1
**49** [1] - 27:20
**490** [1] - 60:22
**492** [1] - 56:2

# 5

**5** [2] - 54:8, 67:1
**50** [1] - 29:9
**500** [1] - 77:19
**51** [3] - 29:9, 29:10,

29:14
**52** [2] - 27:20, 29:15
**56** [1] - 27:17

# 6

**6** [1] - 54:15
**6.10K** [10] - 12:12, 12:14, 13:1, 15:17, 17:12, 18:12, 44:1, 71:1, 71:13, 72:1
**677** [1] - 61:2
**690** [1] - 19:9
**6C** [1] - 1:12

# 7

**7** [5] - 5:17, 29:16, 54:15, 59:24, 60:22
**70** [1] - 56:24
**71** [2] - 56:24, 57:15
**755** [1] - 56:1
**784** [1] - 61:3
**791** [1] - 61:3

# 8

**8** [2] - 22:3, 25:4
**844** [1] - 1:14
**87** [1] - 87:9
**8976** [1] - 54:8

# 9

**9** [1] - 25:4
**95** [2] - 58:12, 58:20
**96** [2] - 26:8
**966** [1] - 26:6
**99** [1] - 64:23
**9th** [2] - 16:16, 70:19

# A

**a.m** [2] - 1:11, 86:13
**ability** [1] - 35:7
**above-captioned** [1] - 87:11
**Abraham** [1] - 42:4
**absent** [1] - 50:19
**absolute** [1] - 36:14
**academic** [4] - 23:18, 33:21, 38:24, 39:18
**accept** [1] - 51:19
**acceptable** [1] - 17:3
**accomplished** [1] -

15:6
**according** [5] - 20:5, 46:15, 63:16, 65:7, 78:11
**accordingly** [3] - 57:4, 57:5, 57:7
**accurate** [1] - 87:10
**accused** [1] - 37:6
**acquiesced** [3] - 19:19, 19:20, 25:12
**acquiescence** [1] - 19:24
**action** [18] - 9:14, 15:10, 35:2, 39:17, 40:14, 40:17, 42:12, 42:14, 46:2, 51:3, 53:20, 54:4, 66:2, 67:10, 77:23, 78:20, 79:10, 79:11
**actions** [6] - 41:24, 42:8, 42:19, 42:21, 62:12, 78:20
**actual** [2] - 28:13, 29:23
**ad** [2] - 55:10, 74:21
**add** [2] - 24:6, 37:12
**addendum** [1] - 66:24
**addition** [4] - 22:13, 67:7, 69:15, 73:1
**additional** [3] - 18:20, 39:23, 62:17
**address** [12] - 8:5, 11:11, 11:12, 28:12, 39:11, 40:8, 46:19, 51:4, 68:10, 68:11, 74:10, 75:12
**addressed** [2] - 45:21, 75:4
**addresses** [2] - 8:18, 74:20
**addressing** [3] - 7:22, 9:9, 72:2
**adds** [1] - 35:14
**adjourned** [1] - 86:8
**administratively** [1] - 74:18
**admission** [5] - 21:11, 25:17, 32:9, 32:11, 33:13
**admissions** [1] - 32:24
**admitted** [5] - 21:3, 25:21, 52:11, 52:18, 54:11
**admittedly** [1] - 44:1
**admitting** [2] - 28:7, 28:8
**adopted** [1] - 50:15

**advisement** [1] - 82:11
**affect** [1] - 5:5
**affecting** [1] - 48:18
**affidavit** [9] - 9:17, 12:17, 27:5, 31:6, 33:2, 52:20
**afoul** [1] - 45:10
**aggravates** [1] - 61:6
**ago** [2] - 71:21, 76:6
**agree** [1] - 46:23
**agreed** [1] - 5:11
**ahead** [4] - 6:15, 40:23, 64:5, 85:9
**alcohol** [5] - 30:1, 30:13, 30:14, 33:9, 33:10
**allegation** [6] - 11:21, 19:17, 22:23, 34:13, 38:22, 74:5
**allegations** [9] - 9:14, 19:22, 24:8, 25:11, 35:2, 35:10, 51:9, 51:20
**allege** [3] - 19:5, 19:16, 63:22
**alleged** [14] - 12:8, 22:2, 22:9, 22:19, 22:24, 34:6, 34:8, 34:12, 34:19, 36:18, 52:19, 52:21, 66:11, 73:24
**alleges** [1] - 21:13
**alleging** [1] - 63:23
**allow** [1] - 17:23
**allowable** [1] - 77:22
**allowed** [1] - 47:9
**allows** [2] - 43:6, 48:10
**almost** [3] - 29:12, 37:9, 45:22
**alone** [4] - 24:24, 43:11, 55:8, 55:23
**alternate** [2] - 78:14, 78:15
**alternative** [6] - 9:11, 9:15, 18:4, 24:20, 35:1, 35:3
**amend** [17] - 4:17, 5:19, 6:4, 6:22, 7:4, 7:7, 7:9, 7:16, 7:20, 8:1, 9:1, 9:6, 9:7, 10:12, 39:12, 50:7, 51:5
**amended** [19] - 12:3, 12:10, 15:17, 16:23, 17:23, 19:2, 19:23, 20:14, 24:5, 25:19, 25:24, 27:22, 28:23,

29:11, 29:13, 30:9, 32:22, 51:1, 66:24

**amendment** [6] - 17:23, 18:1, 50:18, 50:22, 53:8, 53:10

**amorphous** [1] - 40:11

**amount** [8] - 7:15, 35:8, 36:12, 37:10, 38:19, 67:2, 77:12, 83:19

**amounts** [1] - 10:20

**analysis** [1] - 18:24

**Andrews** [13] - 14:18, 15:3, 16:4, 19:10, 26:4, 26:11, 26:13, 30:3, 30:15, 30:21, 33:12, 46:19, 71:6

**Andrews'** [1] - 26:7

**answer** [9] - 7:9, 39:24, 58:9, 58:22, 58:23, 59:4, 59:6, 59:16, 59:17

**answered** [2] - 46:4, 80:4

**answering** [1] - 77:6

**ANTOINE** [1] - 1:4

**anyway** [1] - 80:16

**apologize** [5] - 4:12, 60:5, 82:19, 82:24, 83:9

**APPEARANCES** [2] - 1:20, 2:1

**applicable** [2] - 40:16, 41:12

**application** [2] - 20:3, 53:24

**apply** [2] - 38:7, 42:19

**appreciate** [2] - 84:1, 86:7

**apprise** [1] - 5:11

**approach** [2] - 17:11, 26:23

**approached** [2] - 22:2, 22:3

**appropriate** [7] - 18:16, 21:18, 22:15, 23:20, 24:17, 31:23, 33:12

**approved** [3] - 25:3, 25:12, 33:16

**arguably** [1] - 82:5

**argue** [6] - 5:18, 6:23, 7:6, 23:21, 52:3, 55:15

**arguing** [3] - 6:21, 15:13, 41:16

**argument** [23] - 4:17, 4:20, 5:4, 8:3, 8:11,

8:22, 10:11, 18:17, 21:2, 24:4, 24:17, 27:6, 33:19, 38:18, 49:7, 49:8, 50:2, 50:22, 51:12, 52:1, 56:18, 60:1, 84:20

**arguments** [8] - 5:2, 7:19, 28:11, 37:12, 38:6, 55:14, 84:1, 85:23

**arrest** [19] - 39:3, 39:15, 46:7, 46:8, 47:19, 47:20, 48:10, 49:4, 53:7, 53:15, 55:24, 59:10, 60:19, 62:2, 62:9, 65:9, 72:7, 72:9, 73:2

**arrested** [8] - 13:20, 44:6, 58:8, 58:22, 59:3, 63:1, 64:2, 64:3

**arresting** [4] - 55:6, 56:20, 59:6, 59:7

**arrests** [7] - 37:8, 41:18, 61:4, 72:6, 73:2, 77:13, 79:15

**arrival** [1] - 16:10

**Arthea** [1] - 71:7

**articulable** [1] - 60:23

**articulate** [1] - 76:4

**ascertain** [1] - 74:23

**ascertainability** [1] - 35:18

**ascertainability** [21] - 35:15, 35:24, 36:11, 37:10, 37:13, 39:21, 40:8, 40:15, 41:16, 41:24, 43:1, 62:11, 66:22, 67:5, 67:22, 68:1, 72:3, 73:9, 73:14, 74:17, 74:20

**ascertainable** [3] - 35:20, 38:5, 48:19

**aspect** [1] - 51:4

**asserted** [2] - 9:8, 10:14

**assessment** [1] - 36:24

**Assistant** [1] - 3:18

**assisting** [1] - 49:14

**associate** [1] - 3:16

**associated** [1] - 61:4

**assuming** [1] - 63:3

**attached** [6] - 31:6, 33:2, 58:15, 65:19, 76:12, 76:14

**attaches** [1] - 9:17

**attack** [1] - 56:11

**attempt** [1] - 6:22

**attempts** [2] - 12:11, 21:8

**attention** [1] - 29:9

**authorities** [1] - 19:11

**authority** [2] - 20:3, 67:5

**authorize** [3] - 45:13, 45:14

**authorized** [7] - 11:19, 19:18, 19:20, 20:1, 25:3, 25:12, 33:16

**automatically** [1] - 26:17

**available** [1] - 16:18

**averment** [1] - 28:4

**averments** [8] - 7:13, 49:22, 50:10, 55:5, 63:24, 64:2, 64:6

**avoid** [1] - 35:22

**await** [1] - 16:10

**aware** [3] - 9:24, 36:19, 86:6

**awfully** [2] - 79:6, 79:23

---

**B**

---

**b)(3** [1] - 67:12

**bad** [3] - 50:19, 69:12, 82:22

**Baker** [1] - 19:21

**balance** [1] - 40:1

**ball** [1] - 76:14

**Barron** [2] - 16:16, 70:19

**based** [20] - 6:20, 8:14, 15:1, 22:18, 29:19, 34:1, 41:3, 41:23, 43:10, 47:3, 49:4, 49:15, 54:10, 55:7, 56:17, 61:22, 63:19, 65:15, 66:6, 67:20

**basis** [1] - 25:16

**bat** [1] - 40:9

**become** [1] - 30:11

**BEFORE** [1] - 1:17

**began** [1] - 22:11

**beginning** [1] - 50:1

**behalf** [4] - 3:8, 3:13, 42:9, 68:13

**belabor** [1] - 31:3

**believes** [1] - 50:24

**best** [1] - 86:7

**better** [5] - 17:17, 45:3, 45:17, 48:14, 67:10

**beyond** [2] - 45:18, 47:9

**big** [2] - 6:16, 64:7

**binding** [1] - 32:24

**bit** [4] - 7:8, 43:14, 51:15, 82:8

**black** [1] - 48:3

**blank** [1] - 41:6

**blood** [6] - 15:4, 15:6, 16:5, 30:16, 30:18, 71:8

**booting** [1] - 3:4

**bottom** [2] - 12:23, 29:14

**brief** [7] - 14:14, 22:16, 25:4, 31:3, 57:19, 75:23, 84:24

**briefed** [2] - 7:12, 83:23

**briefing** [3] - 9:22, 84:11, 85:24

**briefly** [8] - 6:14, 9:14, 26:21, 28:21, 34:3, 51:18, 60:17, 60:20

**briefs** [1] - 14:24

**bring** [11] - 14:7, 14:17, 30:2, 33:7, 36:16, 37:5, 37:6, 64:5, 71:5, 75:6

**bringing** [5] - 16:8, 16:17, 16:22, 17:2, 17:8

**broad** [3] - 33:24, 79:16, 79:19

**brought** [20] - 13:24, 14:6, 14:16, 15:1, 16:5, 16:9, 41:6, 41:8, 41:11, 41:12, 44:19, 47:14, 47:19, 48:14, 53:11, 63:10, 63:16, 65:6, 65:9, 75:21

**burden** [1] - 82:9

**burdensome** [3] - 34:1, 48:1, 48:8

**bus** [3] - 69:6, 69:7, 69:12

**business** [1] - 6:9

**BY** [3] - 1:23, 2:3, 2:3

---

**C**

---

**C.A** [1] - 1:5

**cannot** [3] - 36:8, 36:11, 55:22

**Canton** [9] - 10:18, 10:23, 11:9, 11:18, 14:11, 19:22, 33:18,

51:4, 82:6

**Cape** [1] - 54:7

**captioned** [1] - 87:11

**car** [2] - 22:5, 53:12

**care** [2] - 55:18

**Carswell** [3] - 11:2, 11:10, 14:11

**case** [76] - 3:9, 7:10, 10:13, 10:24, 15:4, 16:9, 16:12, 17:4, 17:24, 20:2, 20:8, 21:5, 21:11, 23:18, 25:18, 26:4, 30:5, 30:12, 30:15, 30:21, 31:1, 32:16, 32:17, 33:6, 35:8, 35:12, 36:15, 38:21, 42:4, 42:15, 43:2, 43:3, 43:4, 45:21, 46:2, 47:1, 48:23, 49:5, 52:7, 52:16, 53:1, 53:18, 53:20, 53:23, 54:9, 56:3, 56:4, 60:24, 61:11, 61:21, 62:3, 67:20, 68:14, 68:16, 68:19, 68:23, 69:4, 70:8, 70:18, 71:5, 71:13, 71:19, 71:20, 72:11, 73:6, 73:13, 74:17, 75:8, 75:11, 75:12, 75:19, 79:21, 80:24, 81:8, 86:5

**cases** [26] - 14:6, 16:22, 25:5, 37:3, 37:19, 38:9, 40:13, 42:14, 46:9, 52:4, 56:2, 64:24, 65:17, 66:8, 67:24, 68:7, 70:15, 71:9, 71:20, 72:5, 80:20, 84:12, 84:14, 84:15, 84:17, 84:21

**Castle** [1] - 87:2

**casual** [1] - 83:3

**category** [1] - 22:1

**causation** [2] - 54:6, 54:14

**caused** [1] - 52:24

**causes** [1] - 84:15

**CCR** [1] - 87:20

**cede** [1] - 39:24

**cell** [1] - 53:13

**center** [2] - 75:1

**central** [3] - 13:24, 14:8, 44:19

**certain** [4] - 14:9, 15:2, 27:14, 44:2, 72:2

**certainly** [2] - 49:22, 51:6
**CERTIFICATE** [1] - 87:5
**certification** [11] - 4:22, 36:10, 38:21, 40:10, 40:13, 41:20, 63:5, 74:14, 82:5, 83:17, 83:19
**certified** [1] - 39:19
**Certified** [1] - 87:7
**certify** [3] - 38:4, 38:17, 87:8
**chain** [1] - 46:8
**challenge** [1] - 6:5
**challenged** [1] - 28:5
**chance** [1] - 66:4
**characterize** [2] - 32:14, 32:17
**characterizes** [1] - 31:16
**charge** [2] - 57:7, 59:11
**charged** [7] - 21:14, 21:17, 22:13, 42:22, 44:14, 57:4
**charges** [8] - 13:23, 22:14, 44:12, 47:16, 63:12, 63:13, 63:14, 72:9
**Chiafano** [10] - 32:14, 32:15, 32:22, 33:5, 47:4, 49:3, 55:9, 56:15, 57:21, 57:22
**Chiafano's** [2] - 56:6, 56:23
**chief** [1] - 49:12
**chose** [1] - 46:17
**CHRISTINE** [1] - 2:3
**Christine** [1] - 3:15
**Circuit** [20] - 11:1, 11:10, 16:7, 16:11, 16:16, 19:10, 19:22, 35:13, 36:7, 38:6, 42:3, 50:15, 53:16, 67:4, 68:23, 69:11, 69:17, 70:4, 70:16, 70:20
**circumstances** [15] - 13:16, 15:2, 16:21, 23:15, 30:7, 37:15, 38:12, 61:11, 61:14, 69:3, 69:18, 71:10, 71:12, 73:7, 75:11
**cite** [3] - 25:24, 32:13, 37:20
**cited** [26] - 16:6, 16:23, 19:11, 19:14, 25:16, 27:19, 30:8,

35:14, 46:9, 49:5, 52:7, 52:17, 57:18, 58:14, 59:21, 66:8, 67:24, 68:1, 68:8, 68:14, 68:19, 70:15, 71:19, 74:24, 75:7, 84:13
**cites** [2] - 29:13, 52:5
**CITY** [1] - 1:7
**city** [1] - 12:13
**City** [28] - 3:14, 3:18, 9:1, 10:14, 10:23, 17:17, 20:12, 23:23, 32:10, 32:24, 33:11, 34:1, 37:8, 42:16, 43:19, 45:20, 45:21, 46:16, 52:6, 52:16, 53:9, 53:16, 55:24, 62:3, 68:15, 73:17, 81:7
**civil** [4] - 40:11, 42:8, 42:21, 43:3
**claim** [30] - 6:21, 10:14, 10:15, 11:11, 11:13, 11:24, 15:24, 16:2, 17:20, 18:11, 24:2, 25:9, 25:14, 25:17, 30:23, 34:4, 36:17, 39:17, 45:11, 46:1, 46:3, 46:23, 53:19, 53:22, 54:24, 73:21, 73:23, 74:1, 79:21
**claims** [13] - 20:22, 21:1, 21:12, 24:23, 35:4, 35:5, 35:23, 50:16, 53:5, 79:8, 80:14, 82:6
**clarification** [1] - 78:11
**clarified** [1] - 49:1
**clarifies** [2] - 47:7, 57:8
**clarity** [1] - 44:1
**class** [62] - 3:8, 4:22, 9:14, 21:21, 21:22, 35:2, 35:5, 35:10, 35:22, 35:23, 36:1, 36:3, 36:5, 36:8, 36:9, 38:4, 38:18, 38:21, 38:22, 39:17, 40:10, 40:11, 40:13, 40:14, 40:17, 41:1, 41:13, 41:20, 41:23, 42:10, 42:11, 42:14, 42:19, 42:23, 46:2, 48:3, 48:19, 53:20, 62:16, 62:17, 62:19, 62:21, 62:22, 63:3,

63:4, 64:12, 66:1, 67:10, 67:15, 67:16, 72:12, 73:1, 74:20, 75:7, 78:19, 79:10, 79:11, 80:13, 80:18, 83:18
**classes** [2] - 35:20, 42:9
**classic** [1] - 39:18
**clear** [7] - 14:23, 23:24, 27:11, 28:8, 30:11, 44:18, 65:10
**clearly** [1] - 50:9
**closed** [1] - 26:17
**closer** [1] - 40:20
**COCHAN** [1] - 3:12
**COCHRAN** [50] - 2:3, 5:15, 6:1, 6:7, 7:18, 8:21, 9:21, 10:2, 10:5, 10:10, 12:5, 12:10, 12:21, 15:15, 15:20, 15:23, 18:7, 20:6, 20:11, 20:16, 20:19, 21:24, 27:1, 27:8, 27:16, 28:21, 31:15, 39:12, 40:5, 57:13, 57:16, 57:21, 58:13, 59:19, 60:8, 66:19, 68:18, 69:23, 70:10, 70:14, 71:24, 72:18, 72:23, 74:12, 78:18, 78:23, 82:19, 83:5, 84:7, 85:20
**Cochran** [19] - 3:11, 3:13, 5:10, 8:8, 8:20, 27:4, 28:11, 41:15, 50:23, 57:12, 66:16, 76:2, 77:5, 81:3, 82:2, 82:10, 82:16, 84:2, 85:8
**Code** [4] - 13:3, 32:7, 43:17, 45:10
**code** [2] - 45:12, 75:12
**codified** [1] - 43:22
**colleague** [1] - 3:15
**collect** [1] - 86:11
**comfortable** [1] - 84:13
**coming** [3] - 4:4, 28:1, 64:13
**comma** [1] - 44:21
**comment** [2] - 5:21, 59:24
**comments** [9] - 4:20, 5:5, 5:7, 7:21, 9:6, 9:10, 81:16, 82:12
**committed** [1] - 63:23
**common** [1] - 38:8

**commonality** [9] - 35:17, 38:7, 38:17, 39:21, 66:4, 66:5, 66:9, 73:15, 78:2
**companion** [1] - 10:18
**comparable** [1] - 52:20
**compartmentalize** [1] - 5:2
**compartmentalizing** [1] - 51:14
**compel** [1] - 4:23
**compensatory** [1] - 67:2
**compilation** [3] - 48:11, 76:2, 77:10
**compilations** [2] - 73:3, 73:11
**complaint** [47] - 6:3, 7:24, 8:24, 9:2, 9:13, 11:14, 11:22, 12:3, 12:11, 15:18, 16:23, 17:23, 19:1, 19:2, 19:23, 19:24, 20:8, 20:14, 21:13, 21:16, 22:3, 22:15, 23:19, 24:5, 25:10, 25:13, 25:19, 25:20, 25:21, 25:24, 27:22, 28:23, 29:11, 29:13, 30:2, 30:9, 32:22, 34:18, 51:1, 51:20, 66:24, 77:1, 77:2, 78:10
**completely** [1] - 25:10
**complex** [1] - 54:23
**complicated** [2] - 80:20, 80:23
**computer** [3] - 3:2, 4:3, 86:9
**concede** [2] - 21:22, 71:11
**concedes** [2] - 13:6, 45:11
**concept** [2] - 36:20, 36:23
**concern** [5] - 8:15, 14:4, 14:12, 15:5, 52:18
**conclude** [2] - 23:8, 24:22
**conclusion** [4] - 11:20, 34:7, 34:20, 41:7
**conclusions** [1] - 51:23
**conclusory** [3] - 19:3, 25:15, 52:2

**conduct** [5] - 13:13, 19:6, 19:12, 22:14, 52:13
**confer** [1] - 39:13
**conference** [1] - 81:17
**confirmed** [1] - 49:2
**confronted** [1] - 75:4
**confusing** [1] - 69:8
**confusion** [1] - 49:1
**consensual** [1] - 60:16
**consent** [1] - 50:11
**consider** [7] - 26:22, 29:4, 29:7, 31:21, 32:19, 63:4, 68:5
**considerably** [1] - 19:13
**consideration** [2] - 31:9, 85:24
**considered** [3] - 26:5, 68:6, 68:17
**considers** [1] - 68:4
**consistent** [1] - 17:16
**constitute** [1] - 19:8
**constituted** [1] - 55:23
**constitution** [2] - 75:21, 75:24
**constitutional** [9] - 13:4, 13:7, 34:12, 43:12, 45:16, 54:19, 71:4, 75:14, 75:18
**constraint** [1] - 55:4
**constraints** [2] - 5:8, 8:13
**contact** [2] - 10:23, 12:16
**contained** [2] - 51:20, 85:15
**containing** [1] - 51:13
**contains** [1] - 31:24
**contend** [4] - 18:11, 25:14, 29:7, 32:17
**contends** [2] - 31:17, 71:1
**contention** [3] - 11:23, 14:3, 16:1
**contents** [1] - 13:11
**context** [15] - 18:21, 26:22, 27:20, 28:13, 29:5, 30:10, 30:14, 30:18, 33:10, 46:5, 46:6, 55:12, 55:13, 55:14, 55:15
**contexts** [1] - 37:1
**CONTINUED** [1] - 2:1
**continuing** [1] - 31:12
**contrary** [1] - 19:3

**control** [1] - 29:24
**convenient** [1] - 10:6
**cop** [1] - 70:21
**Cop** [1] - 16:24
**copies** [1] - 10:3
**copy** [2] - 9:24, 27:1
**core** [1] - 66:6
**correct** [8] - 5:24, 12:5, 12:11, 57:23, 58:9, 58:22, 59:4, 67:21
**correcting** [1] - 12:8
**corresponds** [1] - 17:11
**corroborated** [2] - 47:5, 55:9
**corroborating** [1] - 56:7
**counsel** [6] - 4:5, 4:9, 81:16, 84:1, 84:9, 85:23
**Counsel** [2] - 1:24, 2:4
**count** [1] - 20:14
**County** [1] - 87:2
**couple** [4] - 47:23, 48:7, 66:20, 81:6
**course** [4] - 5:20, 19:6, 19:12, 86:2
**court** [3] - 38:11, 58:16, 82:18
**COURT** [86] - 1:1, 3:1, 3:10, 3:20, 4:2, 4:14, 5:24, 6:6, 6:11, 6:15, 8:6, 8:19, 9:20, 9:23, 10:4, 10:9, 12:2, 12:6, 12:20, 15:8, 15:19, 15:22, 18:6, 20:2, 20:10, 20:15, 20:18, 21:23, 26:24, 27:3, 27:10, 28:6, 28:19, 31:11, 39:8, 40:2, 40:19, 40:23, 41:14, 42:1, 42:6, 44:15, 45:9, 46:18, 50:4, 50:8, 50:21, 51:10, 51:24, 57:10, 58:1, 58:10, 58:15, 59:23, 60:7, 62:14, 62:24, 65:11, 65:21, 66:15, 68:11, 69:21, 69:24, 70:12, 71:23, 72:13, 72:22, 74:8, 76:4, 76:18, 76:21, 77:4, 78:6, 78:9, 78:22, 80:3, 81:2, 81:15, 82:16, 83:1, 83:24, 84:8, 85:1,

85:10, 85:19, 85:22
**Court** [40] - 1:17, 6:17, 8:22, 9:16, 10:1, 10:6, 10:24, 16:14, 16:19, 17:1, 17:5, 18:1, 19:9, 20:21, 21:7, 23:3, 23:24, 26:2, 27:2, 30:7, 31:20, 32:3, 37:19, 50:13, 51:19, 55:3, 60:14, 61:11, 61:16, 63:4, 68:4, 70:1, 70:4, 70:18, 72:8, 74:7, 75:6, 82:10, 83:21, 87:7
**Court's** [5] - 5:16, 26:20, 29:8, 77:6, 82:4
**court's** [1] - 62:12
**Courtroom** [1] - 1:12
**courtroom** [4] - 3:16, 3:22, 12:7, 83:7
**courts** [3] - 13:5, 13:14, 17:8, 19:14
**cover** [1] - 42:20
**craft** [1] - 79:2
**crime** [7] - 13:19, 41:9, 44:5, 45:2, 56:17, 63:22, 63:23
**crimes** [1] - 21:15
**Criminal** [1] - 13:3
**criminal** [2] - 13:23, 44:11
**criteria** [1] - 36:2
**critical** [1] - 54:9
**cure** [3] - 36:12, 37:11, 38:20
**custodian** [1] - 39:16
**custodians** [2] - 39:2, 79:9
**custody** [5] - 21:14, 22:12, 23:6, 24:16, 59:15
**custom** [20] - 10:20, 11:7, 11:12, 18:24, 19:4, 19:17, 19:19, 19:20, 20:4, 20:7, 21:9, 25:1, 25:9, 25:22, 32:12, 33:15, 33:19, 46:15, 54:1, 67:19
**cut** [1] - 8:13

# D

**Dakota** [1] - 56:2
**damages** [9] - 66:23, 67:1, 67:2, 67:23,

77:21, 77:22, 77:23, 77:24, 78:3
**data** [4] - 48:12, 73:4, 73:12, 79:20
**date** [2] - 76:24, 77:2
**Davis** [2] - 52:6, 52:10
**days** [1] - 64:16
**de** [1] - 62:2
**deal** [1] - 52:10
**decide** [1] - 84:15
**decided** [3] - 50:16, 69:16, 71:20
**decision** [16] - 11:2, 11:19, 14:14, 15:3, 26:7, 35:13, 36:7, 52:14, 67:18, 68:24, 70:1, 70:2, 70:3, 81:18, 81:22, 83:12
**decisions** [1] - 80:6
**defeats** [1] - 41:20
**defect** [4] - 35:10, 36:13, 37:11, 55:23
**Defendant** [9] - 1:8, 2:4, 15:13, 52:2, 52:5, 52:7, 52:17, 67:3, 78:14
**Defendant's** [1] - 27:5
**Defendants** [3] - 52:2, 56:11, 61:15
**defense** [4] - 7:10, 36:15, 50:23, 68:16
**deficiencies** [1] - 12:9
**deficiency** [2] - 11:24, 12:12
**deficient** [6] - 18:11, 20:11, 24:2, 34:9, 34:10
**defined** [1] - 36:1
**definitely** [1] - 86:5
**definiteness** [1] - 42:18
**definition** [1] - 79:22
**definitions** [1] - 79:4
**Del** [2] - 43:16, 45:10
**DELAWARE** [1] - 1:1
**Delaware** [10] - 1:14, 13:3, 13:5, 13:8, 16:19, 32:7, 45:12, 70:20, 75:12, 87:1
**delay** [1] - 50:19
**deliberate** [11] - 10:21, 11:5, 12:14, 14:10, 14:22, 16:2, 17:15, 17:19, 25:2, 48:16, 71:17
**deliberately** [3] - 34:17, 34:21, 71:2
**demonstrate** [3] -

11:6, 20:21, 73:24
**demonstrating** [3] - 19:17, 24:11, 25:11
**Department** [1] - 43:24
**department's** [1] - 12:13
**dependent** [1] - 36:20
**deponent** [1] - 46:16
**deposition** [8] - 21:5, 29:1, 31:19, 32:1, 32:8, 56:23, 58:5
**DeSanni** [1] - 3:17
**describe** [2] - 57:1
**designed** [1] - 42:20
**despite** [1] - 51:12
**detail** [1] - 50:24
**detailed** [3] - 7:13, 50:10, 72:10
**details** [1] - 5:12
**detain** [4] - 59:13, 60:17, 60:20, 70:6
**detained** [8] - 13:17, 23:1, 23:2, 41:3, 45:3, 45:8, 47:21
**detainee** [2] - 21:16, 36:16, 37:18
**detainees** [5] - 14:13, 14:24, 17:8, 26:16, 48:13
**detaining** [1] - 55:7
**detention** [25] - 12:23, 13:14, 14:5, 23:16, 30:3, 30:12, 30:17, 32:6, 37:16, 38:13, 39:3, 39:16, 41:4, 45:23, 47:15, 48:13, 49:10, 56:10, 56:22, 57:9, 59:9, 60:19, 61:18, 69:2, 76:9
**detentions** [4] - 13:22, 37:14, 41:18, 44:10, 44:12, 53:6, 61:13, 72:6, 73:8, 77:12, 77:15, 77:20, 79:15, 85:7
**determination** [3] - 37:24, 49:17, 85:9
**determine** [3] - 27:12, 41:10, 48:4
**determined** [4] - 36:8, 49:11, 67:3, 70:5
**determining** [1] - 74:19
**Devil's** [1] - 55:24
**DI** [2] - 26:8, 26:10
**differences** [1] - 46:24
**different** [5] - 7:8,

37:4, 67:14, 78:24, 82:15
**differently** [1] - 71:15
**difficult** [1] - 51:15
**dilatory** [1] - 50:20
**Dinardi** [1] - 3:17
**direct** [2] - 14:5, 29:8
**directed** [1] - 13:11
**directive** [12] - 12:12, 12:22, 13:10, 13:12, 13:15, 14:15, 44:14, 46:4, 47:2, 47:6, 48:24, 62:8
**directives** [2] - 12:14, 43:24
**directly** [5] - 7:16, 11:17, 17:11, 57:24, 74:24
**disagree** [1] - 21:6
**disclosure** [1] - 79:1
**disclosures** [1] - 79:3
**discovery** [33] - 4:23, 15:14, 23:22, 24:3, 33:22, 35:9, 35:11, 36:12, 37:11, 38:20, 39:20, 41:15, 48:4, 49:24, 64:22, 72:24, 73:10, 73:17, 76:13, 76:15, 78:17, 79:17, 79:18, 79:23, 80:7, 80:11, 81:12, 81:23, 82:1, 83:13, 83:17, 83:19
**discriminating** [1] - 42:22
**discuss** [1] - 4:11
**discussed** [2] - 8:23, 84:21
**discussing** [2] - 4:15, 84:12
**discussion** [1] - 74:11
**Discussion** [1] - 4:13
**dismiss** [22] - 4:18, 5:19, 6:4, 6:19, 6:20, 6:22, 6:24, 7:12, 7:20, 7:24, 8:4, 8:23, 9:2, 9:12, 9:13, 10:11, 25:5, 35:4, 46:12, 49:21, 54:13
**dismissal** [1] - 74:5
**dismissed** [6] - 6:24, 17:21, 25:15, 34:23, 38:22, 63:13
**disorderly** [1] - 22:14
**distinct** [1] - 38:10
**distinction** [2] - 14:19, 14:21
**distinguish** [3] -

46:24, 50:2, 52:6
**distinguished** [2] - 30:4, 52:5
**district** [1] - 53:23
**DISTRICT** [2] - 1:1, 1:1
**District** [3] - 1:17, 54:7, 68:22
**Docket** [1] - 26:8
**docket** [2] - 5:17, 78:11
**document** [5] - 40:18, 48:7, 58:17, 58:20, 65:14
**documents** [5] - 47:24, 51:9, 74:22, 77:16, 77:17
**dog** [3] - 69:6, 69:16, 70:7
**done** [7] - 20:5, 23:2, 54:1, 59:10, 62:13, 66:14, 71:15
**door** [1] - 23:22
**down** [7] - 28:9, 43:8, 45:19, 62:5, 76:5, 76:7, 78:24
**drafting** [1] - 17:18
**draw** [7] - 15:4, 15:6, 16:6, 30:16, 30:18, 51:21, 71:8
**drew** [1] - 14:18
**drive** [1] - 45:3
**driven** [2] - 29:23, 78:15
**driving** [1] - 59:13
**drops** [2] - 22:19, 24:21
**drug** [6] - 16:10, 33:8, 33:9, 69:6, 69:15, 70:7
**drugs** [2] - 30:14, 30:15
**due** [1] - 86:2
**DUI** [9] - 49:3, 49:5, 55:16, 55:18, 55:20, 56:5, 58:8, 58:22, 59:6
**DUI's** [1] - 30:13
**Dunaway** [5] - 61:20, 61:21, 71:19, 71:20, 75:7
**during** [2] - 22:6, 41:12

### E

**e-mail** [2] - 32:3, 46:8
**eager** [1] - 86:4

**easier** [1] - 82:17
**Eastern** [1] - 68:22
**easy** [1] - 77:18
**economy** [2] - 6:17, 7:6
**edict** [1] - 11:16
**effectuate** [1] - 61:1
**efforts** [1] - 51:13
**either** [1] - 86:4
**EI** [5] - 22:21, 24:4, 24:6, 24:7, 24:23
**EL** [1] - 22:22
**electronic** [1] - 77:17
**electronically** [2] - 48:9, 65:14
**element** [6] - 35:15, 35:18, 36:11, 66:22, 67:6, 67:12
**elements** [3] - 35:16, 35:24, 73:9
**embroil** [1] - 73:17
**emphasizes** [1] - 73:12
**employees** [2] - 52:13, 52:15
**encounter** [1] - 60:16
**encounters** [1] - 60:15
**end** [2] - 10:21, 11:16
**End** [1] - 86:13
**enforce** [1] - 83:3
**enforced** [1] - 75:20
**enforcement** [1] - 16:20
**engrafted** [1] - 35:16
**enshrined** [1] - 30:24
**ensure** [1] - 50:16
**entangled** [1] - 8:9
**entirety** [1] - 38:22
**entitlement** [1] - 9:4
**enumeration** [1] - 42:24
**Erwin** [1] - 3:23
**ESI** [5] - 39:2, 39:14, 39:16, 79:9, 79:14
**especially** [1] - 80:11
**ESQ** [3] - 1:23, 2:3, 2:3
**essentially** [13] - 7:21, 9:8, 11:1, 14:4, 14:19, 15:24, 19:1, 22:5, 23:5, 35:23, 72:7, 73:21, 83:13
**establish** [5] - 20:7, 25:1, 46:20, 52:9, 54:1
**established** [5] - 33:16, 53:24, 54:2,

73:14, 73:16
**establishes** [1] - 20:4
**estimate** [1] - 77:18
**event** [1] - 67:20
**eventually** [1] - 63:14
**evidence** [7] - 33:14, 35:19, 37:7, 37:24, 57:6, 65:6, 73:10
**exact** [2] - 7:7, 45:22, 75:16
**exactly** [4] - 26:12, 41:10, 51:24, 78:1
**example** [5] - 15:3, 16:3, 37:16, 37:17, 65:18
**examples** [1] - 60:10
**except** [1] - 41:5
**exception** [2] - 49:3, 55:16
**exceptions** [1] - 56:5
**excerpts** [1] - 56:12
**exchange** [1] - 32:3
**exercise** [3] - 33:21, 38:24, 39:18
**Exhibit** [3] - 27:5, 27:7, 31:6
**exhibit** [2] - 28:13, 33:3
**exhibits** [2] - 9:18, 10:7
**exigent** [1] - 23:15
**existed** [1] - 37:2
**existing** [1] - 52:24
**expedited** [2] - 81:11, 82:14
**expedition** [3] - 73:5, 73:18, 81:10
**expense** [1] - 73:18
**experience** [1] - 65:15
**expert** [1] - 80:22
**experts** [2] - 80:21, 80:23
**explain** [2] - 20:23, 21:6, 55:16
**explanation** [1] - 45:7
**explore** [1] - 66:4
**expressly** [3] - 17:1, 26:5, 33:8
**extend** [1] - 49:23
**extent** [8] - 4:19, 5:5, 8:12, 29:2, 32:23, 68:4, 83:11, 84:11
**externs** [1] - 3:21
**extraordinarily** [1] - 34:1
**extrapolation** [1] - 45:18

### F

**face** [8] - 17:14, 21:15, 22:15, 23:9, 30:20, 53:3, 54:5, 73:19
**fact** [8] - 13:6, 36:6, 36:9, 36:20, 61:14, 62:24, 71:10, 80:12
**fact-dependent** [1] - 36:20
**facto** [1] - 62:2
**factor** [1] - 51:22
**factors** [2] - 29:20, 62:1
**facts** [19] - 9:3, 19:5, 19:16, 22:1, 22:18, 22:24, 23:12, 24:2, 24:10, 25:23, 28:4, 28:5, 30:6, 34:8, 34:19, 37:4, 51:22, 63:20, 73:24
**factual** [10] - 7:13, 11:21, 25:11, 37:1, 38:8, 38:19, 49:22, 50:9, 51:9, 72:10
**factually** [2] - 25:13, 38:15
**fails** [1] - 11:14
**failure** [3] - 9:3, 54:15, 54:22
**fair** [3] - 39:10, 71:17, 80:18
**fairly** [1] - 79:17
**faith** [1] - 50:19
**FALLON** [1] - 1:17
**familiar** [3] - 10:17, 18:1, 81:7
**fan** [1] - 46:16
**far** [1] - 5:12
**fashion** [1] - 75:14
**fatal** [1] - 11:24
**fault** [1] - 54:6
**favor** [1] - 51:21
**favors** [1] - 48:15
**feasible** [1] - 74:19
**federal** [3] - 13:5, 35:6, 54:5
**feet** [1] - 22:4
**felt** [1] - 21:19
**few** [6] - 4:6, 29:12, 30:10, 68:14, 76:6, 81:10
**field** [2] - 15:7, 42:21
**fighting** [1] - 49:24
**figure** [2] - 50:3, 55:12
**file** [1] - 7:11
**filed** [1] - 26:10,

63:15, 78:10
**final** [3] - 33:3, 34:24, 74:9
**finally** [2] - 25:7, 32:10
**findings** [1] - 82:4
**fine** [3] - 69:18, 69:19, 77:4
**Finger** [1] - 3:13
**FINGER** [1] - 2:2
**fingerprint** [1] - 17:3
**fingerprinting** [3] - 17:2, 17:6, 70:23
**Firm** [1] - 3:8
**FIRM** [1] - 1:22
**first** [8] - 6:9, 8:20, 11:11, 44:2, 45:4, 68:19, 79:19
**First** [1] - 3:18
**fishing** [3] - 73:5, 73:18, 81:9
**five** [7] - 20:13, 20:16, 21:10, 64:8, 78:20, 79:8, 80:21
**flexibility** [2] - 26:21, 29:4
**floor** [1] - 8:8
**Florida** [4] - 16:13, 17:4, 70:17, 70:24
**Floyd** [1] - 68:3
**fluid** [1] - 36:23
**focus** [2] - 50:7, 83:21
**focused** [2] - 15:9, 15:21
**follow** [2] - 58:18, 75:24
**followed** [1] - 59:23
**following** [1] - 59:22
**foot** [1] - 12:7
**FOR** [1] - 1:1
**force** [3] - 11:8, 34:11, 74:4
**Ford** [1] - 42:16
**foregoing** [1] - 87:9
**form** [2] - 67:11, 77:17
**formalities** [1] - 83:4
**former** [1] - 70:21
**forth** [2] - 46:9, 61:16
**forward** [1] - 81:24
**four** [4] - 9:17, 47:12, 64:10, 76:7
**fourth** [3] - 12:19, 53:7, 53:10
**frame** [1] - 81:16
**frankly** [1] - 30:21
**fraudulent** [1] - 35:23
**FRD** [3] - 42:17, 68:3
**free** [4] - 51:15, 53:8,

60:16, 86:10
**freedom** [1] - 61:3
**freely** [1] - 50:14
**friend** [9] - 23:21,
31:16, 40:1, 50:13,
71:11, 71:18, 72:3,
73:21, 79:11
**friends** [5] - 32:12,
33:21, 37:19, 38:24,
39:14
**frisk** [1] - 62:10
**front** [4] - 27:15,
74:24, 75:1, 77:3
**frowned** [1] - 62:20
**full** [1] - 9:13
**fully** [2] - 7:11, 83:23
**furthermore** [2] -
33:1, 67:4
**futile** [7] - 6:23, 7:1,
7:2, 9:7, 17:24,
18:2, 51:2
**futility** [6] - 6:5, 8:2,
8:3, 10:11, 18:17,
50:22

## G

**game** [1] - 80:18
**gates** [1] - 36:21
**general** [1] - 85:14
**generally** [1] - 42:8
**gentleman** [2] - 31:22,
69:6
**gentlemen** [1] - 24:16
**Gestwicki** [19] -
25:18, 26:1, 26:3,
27:7, 27:18, 29:16,
29:18, 30:11, 30:19,
31:2, 31:4, 31:17,
46:5, 47:4, 47:5,
47:7, 49:1, 49:2,
72:1
**Gestwicki's** [1] - 56:8
**gettogethers** [1] -
81:6
**given** [7] - 7:10,
18:22, 26:3, 39:20,
73:6, 76:8, 78:13
**Glass** [5] - 45:21,
53:16, 53:18, 62:2,
68:14
**glass** [1] - 74:24
**Glover** [18] - 14:14,
14:18, 15:3, 16:3,
21:5, 21:11, 25:18,
26:3, 30:21, 32:15,
33:10, 46:22, 47:1,
50:3, 71:6, 71:7,

75:1
**granted** [1] - 50:12
**great** [2] - 44:21,
46:22
**greater** [1] - 50:24
**Griffin** [4] - 24:4, 24:6,
24:7, 24:23
**gross** [1] - 11:4
**grossly** [1] - 34:16
**ground** [1] - 22:10
**grounds** [2] - 8:2,
8:24
**Grove** [1] - 56:1
**guessing** [2] - 72:8,
73:1
**guidance** [2] - 13:13,
13:16
**guys** [1] - 63:24

## H

**half** [1] - 80:10
**halt** [1] - 81:24
**hand** [2] - 9:16, 87:15
**handcuffed** [2] -
53:13, 61:24
**handcuffing** [6] -
43:17, 45:13, 45:24,
55:7, 56:16, 75:10
**handcuffs** [4] - 58:3,
61:3, 61:5, 61:7
**hang** [2] - 27:3, 57:10
**happy** [3] - 6:1, 27:16,
39:23
**hard** [3] - 5:1, 79:6,
79:23
**Hayes** [4] - 17:4,
61:20, 61:21, 70:23
**HAYNES** [1] - 2:3
**Haynes** [2] - 3:15,
9:16
**Haynes'** [3] - 12:17,
31:6, 33:2
**hear** [9] - 5:4, 5:23,
8:19, 37:7, 37:23,
40:3, 82:2, 82:18,
84:16
**heard** [6] - 50:23,
75:15, 79:11, 79:13,
79:19, 83:8
**hearing** [7] - 3:22, 4:1,
65:24, 82:21, 83:2,
83:6, 84:22
**held** [11] - 13:4, 13:14,
16:11, 19:15, 21:1,
26:13, 30:20, 40:13,
57:2, 61:17, 69:12
**helps** [1] - 81:16

**Henlopen** [1] - 54:7
**hereby** [1] - 87:8
**hereunto** [1] - 87:14
**herring** [1] - 43:2
**Hicks** [6] - 16:18,
70:20, 75:11, 75:12,
75:19, 75:23
**hiding** [1] - 76:13
**high** [1] - 10:19
**highlighted** [1] -
29:14
**hindering** [1] - 22:16
**hits** [1] - 43:15
**holder** [2] - 18:4,
18:18
**Honor** [82] - 3:7, 3:12,
3:17, 3:23, 5:16,
5:22, 6:13, 7:16,
7:18, 8:18, 8:22,
9:12, 10:17, 12:16,
18:9, 18:19, 23:19,
24:20, 26:21, 27:9,
27:17, 27:24, 28:14,
29:4, 31:8, 31:14,
33:20, 35:3, 35:7,
36:11, 36:19, 37:3,
37:23, 38:10, 39:22,
40:6, 40:8, 40:22,
41:21, 43:2, 46:21,
47:23, 51:7, 51:17,
53:16, 53:18, 53:21,
54:9, 55:1, 58:13,
59:19, 60:5, 60:6,
60:11, 62:4, 62:13,
62:15, 63:7, 66:13,
66:18, 66:19, 68:18,
70:11, 71:19, 71:22,
74:6, 74:14, 76:12,
76:17, 76:24, 77:21,
78:4, 78:5, 80:9,
82:14, 82:21, 83:12,
84:7, 84:23, 85:18,
85:21
**HONORABLE** [1] -
1:17
**hood** [1] - 22:5
**hopefully** [1] - 86:9
**hour** [4] - 30:2, 43:14,
62:8, 62:10
**hours** [5] - 43:6,
43:12, 45:18, 53:14,
63:12
**house** [1] - 61:18
**housekeeping** [1] -
5:12
**hundred** [1] - 27:14
**hypothetical** [1] -
33:9
**hypothetically** [1] -

63:4

## I

**ID** [2] - 41:4, 47:14
**identical** [2] - 75:3,
78:4
**identifiable** [1] - 61:8
**identification** [2] -
41:1, 64:20
**identified** [11] - 11:18,
13:20, 20:17, 44:6,
47:2, 47:6, 47:18,
52:11, 64:12, 65:3,
65:4
**identifiers** [2] - 47:21,
65:10
**identifies** [1] - 48:2
**identify** [8] - 10:19,
11:14, 39:2, 39:14,
48:13, 58:16, 65:1,
72:5
**identifying** [3] -
12:12, 36:3, 36:5
**identity** [2] - 48:5,
73:3
**Illinois** [1] - 36:21
**imagine** [1] - 80:13
**impediments** [1] -
38:20
**impermissible** [1] -
70:6
**implicate** [2] - 83:14,
83:22
**implied** [1] - 42:18
**importance** [2] -
82:20, 83:10
**important** [6] - 10:12,
14:13, 14:21, 18:7,
26:1, 61:12
**impression** [2] - 58:7,
58:21
**imprisoned** [1] -
61:24
**improper** [2] - 74:2,
74:3
**improperly** [2] -
54:24, 73:23
**IN** [2] - 1:1, 87:14
**inaccurate** [1] - 56:12
**inadequate** [2] - 34:8,
34:13
**inappropriate** [1] -
36:10
**incapable** [1] - 42:24
**incarcerated** [1] -
52:19
**incident** [9] - 19:13,

22:21, 22:22, 24:8,
52:23, 61:19, 65:2,
65:4
**incidental** [1] - 77:22
**incidents** [7] - 19:15,
20:20, 20:23, 20:24,
24:24, 25:6, 52:8
**includes** [2] - 27:18,
52:24
**including** [2] - 67:2,
81:18
**inclusive** [1] - 87:9
**inconsistent** [1] -
71:14
**incorporated** [2] -
13:9, 15:16, 32:21
**incorporates** [1] -
71:3
**indicated** [1] - 77:5
**indicates** [1] - 14:15
**indifference** [1] -
10:21, 11:5, 12:15,
14:10, 14:23, 16:2,
17:15, 17:19, 25:2,
48:16, 71:17
**indifferent** [3] - 34:17,
34:22, 71:2
**individual** [10] -
21:12, 35:4, 36:6,
36:9, 63:18, 64:24,
78:20, 79:8, 80:13,
80:18
**individual's** [1] - 53:7
**individuals** [8] -
20:16, 21:10, 48:6,
64:3, 64:18, 65:1,
65:3, 82:7
**indulgence** [1] - 62:12
**infer** [1] - 23:3
**inference** [3] - 21:18,
45:20, 64:15
**inferences** [1] - 51:21
**influence** [2] - 29:24,
59:14
**information** [5] -
18:22, 73:3, 82:8,
84:2, 85:15
**Ingram** [3] - 87:7,
87:19, 87:20
**initial** [2] - 79:1, 79:3
**injunction** [1] - 67:14
**injunctive** [10] -
41:22, 41:23, 42:15,
48:21, 67:7, 67:8,
67:17, 67:22, 74:15,
77:23
**injured** [1] - 66:6
**injury** [2] - 11:8, 74:4

**inmate** [1] - 52:19
**inquired** [1] - 22:7
**inquiry** [3] - 41:17, 72:11, 85:4
**instance** [1] - 53:3
**instances** [2] - 52:12
**insufficient** [5] - 26:14, 26:18, 30:22, 52:9, 57:6
**intake** [10] - 40:18, 41:2, 41:3, 47:11, 76:11, 76:16, 76:20, 76:23, 82:3, 85:13
**integral** [3] - 29:3, 29:5, 31:21
**intended** [1] - 40:12
**interest** [3] - 7:6, 7:14, 16:21
**interfered** [1] - 22:6
**interference** [1] - 22:17
**interpret** [2] - 43:20, 75:17
**interpreted** [3] - 18:12, 43:21, 75:13
**introductions** [1] - 3:5
**intrusive** [3] - 16:18, 66:2, 75:10
**intrusiveness** [1] - 61:6
**investigate** [2] - 30:1, 43:14
**investigating** [1] - 49:13
**investigation** [8] - 17:10, 33:9, 33:10, 56:23, 57:2, 57:3, 57:5, 59:11
**investigative** [5] - 53:14, 58:23, 59:9, 60:20, 61:18
**investigatory** [15] - 41:4, 45:23, 47:15, 48:13, 49:10, 53:5, 56:9, 56:22, 59:3, 61:13, 77:11, 77:15, 77:19, 85:6, 85:7
**involve** [2] - 19:13, 72:8
**involved** [3] - 39:3, 39:15, 79:14
**involving** [2] - 30:13, 69:4
**Iqbal** [16] - 9:3, 12:1, 19:3, 20:20, 23:7, 23:12, 23:17, 23:20, 23:23, 23:24, 24:18, 33:18, 34:3, 34:14, 34:22, 74:6

**issue** [12] - 13:7, 14:19, 26:13, 37:22, 40:9, 52:14, 61:9, 66:11, 68:1, 74:23, 75:16, 84:24
**issued** [1] - 11:18
**issues** [10] - 30:16, 38:8, 38:19, 39:11, 54:5, 67:13, 69:4, 72:23, 72:24, 86:4
**Item** [1] - 26:8
**itself** [1] - 75:15
**IV** [1] - 2:3

**J**

**James** [1] - 46:4
**Jansen** [1] - 3:24
**JAYVON** [1] - 1:3
**judge** [1] - 14:18
**Judge** [11] - 1:17, 15:3, 16:4, 26:4, 26:7, 26:11, 26:13, 30:3, 30:15, 30:20, 33:12, 46:18, 71:6, 83:6
**judgment** [8] - 28:3, 28:17, 49:19, 49:20, 53:22, 54:10, 54:13, 60:12
**judicial** [2] - 6:17, 7:6
**jumped** [1] - 59:20
**June** [3] - 1:11, 87:11, 87:15
**Justice** [1] - 70:21
**justice** [1] - 50:14
**justifiable** [1] - 80:11
**justification** [6] - 16:13, 16:15, 17:3, 17:6, 24:14, 38:1
**justified** [3] - 23:16, 70:23, 73:20
**justifies** [1] - 71:13
**justify** [8] - 16:8, 16:22, 17:8, 30:17, 37:15, 64:1, 70:19, 71:10

**K**

**keep** [1] - 77:12
**keeping** [6] - 48:12, 48:17, 77:11, 77:14, 77:18, 84:3
**KEITH** [1] - 1:4
**kept** [1] - 48:8
**key** [3] - 36:4, 44:4,

47:21
**keys** [1] - 24:3
**kind** [6] - 6:8, 18:4, 43:6, 48:15, 61:8, 72:10
**kinds** [3] - 23:22, 60:14, 60:15
**King** [1] - 1:14
**kingdom** [1] - 24:3

**L**

**Lake** [1] - 55:24
**land** [1] - 60:13
**language** [3] - 11:17, 14:4, 52:22
**large** [3] - 6:19, 65:14, 84:4
**last** [1] - 61:1
**LAW** [1] - 1:22
**law** [25] - 13:15, 14:23, 16:20, 17:16, 17:24, 18:13, 19:8, 25:3, 30:2, 30:24, 33:12, 33:16, 36:13, 36:22, 52:9, 54:5, 56:3, 56:4, 60:13, 65:8, 68:23, 69:19, 69:20, 71:13, 73:6
**Law** [1] - 3:7
**lawful** [1] - 67:1
**layman's** [1] - 56:24
**LAYTON** [1] - 2:2
**Layton** [1] - 3:13
**learn** [1] - 36:22
**least** [6] - 16:17, 21:19, 37:21, 67:23, 68:23, 81:20
**leave** [3] - 45:1, 50:14, 60:16
**leaves** [3] - 17:1, 22:20, 70:22
**lectern** [1] - 76:6
**left** [1] - 41:6
**less** [7] - 15:9, 17:9, 24:5, 24:7, 49:4, 64:22, 69:3
**letter** [2] - 72:20, 84:8
**level** [3] - 52:13, 52:15, 59:17
**liability** [4] - 10:15, 10:18, 26:19, 54:3
**liberal** [2] - 50:16, 51:11
**lies** [1] - 54:24
**light** [3] - 5:16, 18:13, 80:12
**likely** [2] - 83:3, 84:18

**limit** [2] - 43:15, 47:8
**limitation** [1] - 84:18
**limited** [2] - 7:15, 47:11
**line** [7] - 23:11, 28:9, 29:15, 29:16, 57:14, 57:16, 59:23
**lines** [1] - 29:12
**linked** [1] - 81:21
**list** [1] - 68:12
**literally** [1] - 39:1
**litigated** [1] - 53:21
**litigator** [1] - 76:3
**location** [3] - 14:1, 44:19, 45:6
**log** [15] - 40:18, 41:2, 41:4, 41:19, 47:18, 48:1, 48:15, 64:11, 72:15, 76:11, 76:16, 76:17, 76:18, 86:8
**logging** [2] - 85:5, 86:10
**logs** [24] - 41:10, 47:11, 47:22, 48:12, 63:9, 64:10, 65:1, 65:2, 65:12, 65:16, 65:19, 65:20, 72:5, 76:8, 76:9, 77:7, 82:3, 84:3, 85:4, 85:12, 85:13, 85:14, 85:16
**loitering** [1] - 22:13
**look** [14] - 26:19, 28:9, 33:1, 33:4, 55:1, 56:12, 56:13, 64:24, 70:12, 73:10, 77:6, 77:10, 79:5, 81:19
**looked** [2] - 66:12, 79:1
**looking** [10] - 64:10, 64:21, 74:21, 76:1, 76:7, 76:15, 76:22, 81:5, 81:9, 85:11
**looks** [1] - 12:17
**low** [2] - 52:13, 52:15

**M**

**mail** [2] - 32:3, 46:8
**main** [1] - 50:21
**majority** [2] - 13:21, 44:10
**maker** [7] - 11:19, 19:18, 19:20, 20:1, 25:3, 25:12, 33:17
**makers** [1] - 52:15
**MALCOLM** [1] - 2:3
**manageable** [2] -

36:2, 36:4
**manual** [1] - 12:13
**margin** [1] - 73:4
**Marion** [1] - 52:17
**mark** [1] - 27:4
**mart** [2] - 35:13, 36:7
**Maryland** [1] - 3:24
**matter** [7] - 7:23, 30:24, 39:19, 52:9, 55:19, 73:6, 87:12
**matters** [5] - 18:15, 31:24, 32:2, 32:4, 37:23
**mean** [3] - 41:5, 63:15, 80:21
**means** [3] - 14:2, 44:22, 48:24
**meantime** [1] - 3:3
**measure** [1] - 15:14
**mechanism** [1] - 74:19
**Medley** [3] - 22:20, 22:23, 24:22
**MEDLEY** [1] - 1:4
**meet** [2] - 39:13, 42:10
**member** [2] - 35:21, 62:19
**members** [10] - 36:3, 36:5, 36:8, 41:1, 42:23, 48:3, 62:16, 62:18, 64:12, 74:19
**mention** [1] - 72:4
**mentioned** [2] - 71:18, 72:24
**mentions** [1] - 70:16
**merits** [3] - 15:9, 15:12, 50:17
**met** [3] - 36:12, 37:10, 78:3
**method** [1] - 16:18
**microphone** [6] - 40:20, 82:17, 82:20, 82:23, 83:10, 85:2
**Mifflin** [1] - 16:6
**might** [4] - 23:8, 34:11, 37:12, 81:19
**Mike** [1] - 3:12
**mind** [1] - 81:20
**mindful** [1] - 5:7
**mini** [3] - 36:9, 37:3, 41:17
**minutes** [2] - 4:6, 76:6
**mischaracterization** [1] - 39:6
**mischaracterized** [1] - 32:18
**misconduct** [1] -

23:10
misheard [1] - 79:12
misinterpretation [1] - 62:6
mistake [1] - 43:19
mistaken [1] - 60:2
model [1] - 44:1
moment [9] - 3:1, 4:12, 14:21, 20:24, 21:7, 27:3, 57:11, 71:21, 71:22
Monell [17] - 10:14, 10:18, 11:17, 19:8, 25:14, 25:17, 26:19, 33:18, 35:4, 46:1, 46:3, 46:23, 51:3, 53:5, 53:22, 80:14, 82:6
money [1] - 66:23
months [2] - 81:12, 81:14
Moore [1] - 70:21
moot [2] - 6:19, 7:5
morning [6] - 3:6, 5:8, 5:13, 9:10, 9:19, 10:8
Mosley [1] - 3:16
most [4] - 5:4, 44:13, 66:14, 80:20
mother [1] - 22:11
motion [46] - 4:17, 4:18, 4:22, 4:23, 5:19, 6:3, 6:4, 6:18, 6:19, 6:21, 6:23, 7:4, 7:7, 7:9, 7:12, 7:16, 7:20, 7:24, 8:1, 8:4, 8:23, 9:1, 9:7, 9:11, 10:11, 10:12, 18:9, 18:16, 25:4, 28:3, 28:15, 28:17, 46:12, 49:21, 50:7, 51:5, 54:10, 54:12, 60:11, 73:12, 83:14, 83:15, 83:22
motions [12] - 4:9, 4:16, 4:19, 4:21, 5:4, 5:6, 5:22, 8:15, 8:23, 74:10, 80:2, 80:6
motivated [1] - 24:15
motive [1] - 50:20
motor [1] - 29:24
mouth [1] - 83:8
move [8] - 9:12, 9:13, 14:8, 38:2, 59:5, 60:12, 83:11, 86:10
moved [4] - 9:2, 9:5, 13:18, 37:20
movement [1] - 61:4

moving [5] - 11:8, 34:11, 37:16, 74:4, 83:8
MR [100] - 3:6, 3:12, 3:23, 5:15, 6:1, 6:7, 6:13, 6:16, 7:18, 8:17, 8:21, 9:21, 10:2, 10:5, 10:10, 12:5, 12:10, 12:21, 15:15, 15:20, 15:23, 18:7, 20:6, 20:11, 20:16, 20:19, 21:24, 27:1, 27:8, 27:12, 27:16, 27:24, 28:14, 28:21, 31:8, 31:13, 31:15, 39:5, 39:12, 40:5, 40:7, 40:22, 40:24, 41:21, 42:3, 42:7, 44:17, 45:12, 46:21, 50:5, 50:9, 51:6, 51:17, 52:4, 57:13, 57:15, 57:16, 57:18, 57:21, 57:22, 58:2, 58:12, 58:13, 58:19, 59:19, 60:4, 60:8, 60:10, 62:15, 63:6, 65:18, 65:22, 66:17, 66:19, 68:18, 69:23, 70:10, 70:14, 71:24, 72:18, 72:23, 74:12, 74:13, 76:11, 76:20, 76:24, 77:9, 78:8, 78:18, 78:23, 80:8, 81:4, 82:13, 82:19, 83:5, 84:7, 84:23, 85:3, 85:17, 85:20
municipal [2] - 10:17, 54:4
municipality [2] - 10:15, 42:13
municipality's [1] - 54:3
Murphy [7] - 16:6, 68:24, 69:1, 69:19, 70:2, 70:8, 70:16
Murrey [3] - 22:20, 22:23, 24:22
MURREY [1] - 1:4
must [10] - 10:19, 11:6, 13:20, 19:5, 19:12, 19:16, 35:18, 44:6, 49:9, 60:24
myriad [1] - 38:12

N

name [1] - 76:9

named [4] - 3:8, 62:19, 63:17, 64:8
narrow [1] - 79:17
nature [1] - 79:22
nauseam [2] - 55:10, 74:21
nearly [1] - 75:3
necessarily [4] - 46:23, 63:7, 63:15, 70:4
necessary [2] - 8:12, 61:1
need [16] - 18:12, 40:19, 43:15, 55:15, 56:13, 59:17, 63:9, 63:12, 65:5, 67:21, 69:5, 80:14, 81:13, 82:8, 82:16, 84:20
needed [2] - 22:8, 69:15
needs [2] - 67:16, 75:24
negligence [3] - 11:3, 11:4, 82:23
negligent [3] - 17:17, 34:16
never [1] - 44:13
New [4] - 42:16, 52:7, 61:22, 87:2
new [1] - 7:13
next [2] - 13:1, 44:17
nine [2] - 81:12, 81:13
nobody [1] - 71:1
non [1] - 66:2
non-intrusive [1] - 66:2
nonchalantly [2] - 49:7, 49:8
none [1] - 32:4
Normal [1] - 9:24
normal [2] - 49:18, 58:2
normally [3] - 7:8, 42:10, 61:4
NORMAN [52] - 1:22, 1:23, 3:6, 3:23, 6:13, 6:16, 8:17, 27:12, 27:24, 28:14, 31:8, 31:13, 39:5, 40:7, 40:22, 40:24, 41:21, 42:3, 42:7, 44:17, 45:12, 46:21, 50:5, 50:9, 51:6, 51:17, 52:4, 57:15, 57:18, 57:22, 58:2, 58:12, 58:19, 60:4, 60:10, 62:15, 63:6, 65:18, 65:22, 66:17, 74:13, 76:11, 76:20,

76:24, 77:9, 78:8, 80:8, 81:4, 82:13, 84:23, 85:3, 85:17
Norman [20] - 3:5, 3:7, 8:16, 10:3, 23:21, 29:17, 31:12, 38:3, 39:9, 40:3, 58:17, 66:21, 67:21, 68:13, 71:11, 71:18, 72:3, 74:9, 80:5
norman [1] - 60:1
North [1] - 56:2
Notary [1] - 87:8
note [6] - 14:13, 31:11, 33:20, 34:14, 52:21, 83:10
noted [3] - 9:6, 17:5, 41:19
notes [4] - 42:19, 73:4, 73:22, 87:10
nothing [10] - 23:3, 23:10, 24:12, 24:18, 25:9, 34:6, 34:18, 43:16, 83:9, 85:20
notice [5] - 31:5, 31:19, 31:23, 35:22, 46:10
noticed [1] - 31:4
November [1] - 78:10
number [13] - 4:8, 4:16, 12:24, 17:7, 25:5, 30:11, 41:11, 47:1, 57:19, 62:23, 64:7, 64:14, 77:20
numerosity [2] - 64:8, 74:23
NW [1] - 56:1

O

object [4] - 27:13, 28:1, 31:9, 39:5
objection [2] - 31:12, 57:11
objective [1] - 36:1
obtaining [1] - 65:16
obvious [1] - 54:16
obviously [1] - 54:20
occurred [1] - 29:21
OF [3] - 1:1, 1:7, 87:5
offer [1] - 45:5
officer [12] - 23:14, 30:4, 32:22, 37:18, 39:3, 39:15, 49:13, 49:14, 54:19, 56:20, 69:14
Officer [16] - 25:18, 29:16, 29:18, 30:11,

30:19, 31:4, 31:16, 32:13, 32:15, 33:5, 47:4, 55:9, 56:6, 56:8, 56:15, 71:24
officers [20] - 10:16, 18:14, 18:22, 21:18, 22:4, 22:9, 22:11, 22:17, 23:5, 23:13, 24:12, 24:15, 36:15, 37:5, 44:24, 45:4, 63:18, 69:8, 79:9, 79:14
official [4] - 11:15, 20:5, 54:2, 59:11
once [10] - 46:11, 48:6, 51:22, 53:23, 60:11, 62:11, 65:2, 65:4, 65:7, 80:24
one [36] - 10:19, 14:1, 19:13, 22:21, 24:8, 26:9, 30:11, 35:24, 37:2, 37:22, 42:23, 44:19, 47:1, 48:1, 48:2, 48:6, 49:16, 52:7, 52:19, 53:2, 57:10, 61:12, 64:11, 64:13, 64:15, 65:19, 65:20, 67:20, 73:8, 76:11, 76:12, 79:7, 79:16, 84:24
ongoing [1] - 77:1
open [3] - 17:1, 66:13, 70:22
opening [1] - 25:4
opens [1] - 23:22
operated [1] - 29:23
opinion [3] - 46:22, 75:2
opportunity [13] - 7:10, 8:11, 39:9, 39:11, 46:17, 51:11, 64:21, 68:5, 68:9, 68:20, 74:9, 75:5, 81:3
opposed [1] - 9:7
opposition [1] - 8:1
oral [7] - 4:17, 5:4, 5:16, 8:11, 27:6, 51:12, 84:20
order [16] - 4:10, 4:23, 5:16, 6:2, 8:10, 8:14, 15:12, 37:1, 38:4, 72:5, 73:10, 73:13, 81:19, 83:14, 83:16, 83:22
orders [1] - 6:9
ordinarily [1] - 50:18
original [8] - 8:24, 9:2, 11:14, 11:22, 19:23,

25:20, 25:21, 66:23
**originally** [1] - 45:6
**otherwise** [2] - 39:24, 52:3
**ourselves** [1] - 8:9
**outcome** [1] - 70:9
**outer** [1] - 43:16
**outlining** [1] - 63:20
**outset** [1] - 39:10
**outside** [1] - 18:15
**overall** [1] - 4:7
**overbearing** [1] - 64:22
**overlap** [3] - 4:19, 4:21, 7:21
**own** [3] - 14:2, 44:14, 44:22

**P**

**PA** [1] - 2:2
**Page** [1] - 19:9
**page** [27] - 12:19, 12:24, 13:1, 26:6, 29:14, 29:15, 30:22, 36:22, 43:1, 48:6, 48:7, 53:17, 54:15, 56:1, 56:19, 57:14, 57:15, 57:19, 58:5, 58:12, 58:20, 59:5, 59:21, 59:24, 65:20, 84:17
**Pages** [1] - 87:9
**pages** [17] - 25:4, 26:8, 26:11, 26:14, 27:17, 27:19, 29:9, 30:8, 47:23, 47:24, 48:8, 58:14, 65:13, 65:20, 65:23, 72:15
**Palmer** [2] - 52:16, 52:21
**papers** [11] - 11:3, 16:7, 19:11, 19:14, 34:4, 35:14, 68:2, 68:9, 70:16, 71:21, 84:13
**paragraph** [1] - 67:1
**paragraphs** [1] - 28:22
**paralegal** [1] - 3:24
**parameters** [3] - 43:13, 45:16, 75:21
**parents** [1] - 22:9
**part** [8] - 9:19, 18:23, 23:4, 46:8, 52:1, 57:9, 61:9, 69:12
**particular** [7] - 13:10, 13:19, 27:2, 35:12,

36:24, 44:5, 74:2
**particularly** [2] - 67:12, 82:23
**parties** [3] - 5:11, 5:18, 86:3
**party** [1] - 42:21
**past** [1] - 75:9
**pat** [2] - 43:8, 45:19
**path** [1] - 5:3
**pattern** [1] - 52:10
**pause** [3] - 33:20, 34:3, 34:14
**pending** [7] - 4:9, 4:16, 5:22, 6:4, 56:22, 57:2, 83:17
**Pennsylvania** [1] - 68:22
**people** [15] - 10:22, 13:18, 33:7, 38:12, 41:2, 44:3, 44:4, 44:8, 47:18, 47:19, 48:18, 63:9, 64:15, 66:5, 69:13
**per** [2] - 48:6, 48:7
**perceived** [1] - 69:14
**percent** [2] - 27:14, 64:23
**perfect** [2] - 17:13, 71:1
**perhaps** [2] - 70:1, 79:8, 84:12
**perimeter** [1] - 43:16
**period** [5] - 26:17, 41:12, 44:20, 72:16, 76:22
**permanent** [2] - 19:7, 25:1
**permissible** [5] - 15:4, 61:14, 61:19, 71:12, 72:21
**permission** [1] - 26:20
**permit** [2] - 71:9, 81:23
**permits** [1] - 69:2
**permitted** [10] - 5:6, 5:21, 12:4, 16:4, 18:2, 39:20, 50:18, 51:2, 78:17, 79:6
**person** [6] - 13:22, 29:19, 29:22, 44:11, 46:17, 60:20
**persons** [2] - 12:15, 56:17
**pertaining** [2] - 42:12, 55:19
**Philadelphia** [5] - 45:22, 53:9, 53:17,

62:3, 68:15
**phrase** [1] - 36:21
**physical** [1] - 29:23
**pick** [1] - 62:21
**picked** [4] - 13:17, 13:18, 44:4, 44:8
**pinpoint** [1] - 58:11
**place** [4] - 18:4, 18:18, 45:4, 58:3
**placed** [4] - 13:23, 44:12, 53:13, 72:10
**plain** [2] - 30:14, 33:4
**plainly** [4] - 32:1, 35:8, 69:1, 74:5
**Plaintiff** [22] - 9:5, 10:19, 13:6, 15:16, 19:5, 19:15, 21:8, 24:1, 27:19, 27:21, 27:23, 28:23, 29:10, 29:12, 35:18, 36:18, 51:22, 61:23, 76:7, 78:1, 78:14, 79:18
**Plaintiff's** [3] - 9:1, 53:2, 53:10
**plaintiffs** [1] - 63:18
**Plaintiffs** [9] - 1:5, 1:24, 11:6, 16:24, 21:3, 32:13, 39:1, 68:14, 72:16
**plan** [1] - 79:24
**plausibility** [2] - 23:11, 74:1
**plausible** [2] - 24:20, 56:10
**plausibly** [1] - 9:4
**play** [3] - 4:5, 47:13, 52:16
**plead** [4] - 20:8, 20:10, 21:9, 24:1
**pleading** [21] - 11:23, 12:8, 12:11, 15:21, 15:24, 23:5, 23:9, 23:16, 24:14, 29:3, 29:6, 31:16, 31:18, 34:2, 43:5, 56:14, 64:6, 68:20
**pleadings** [3] - 18:15, 67:24, 73:19
**pled** [1] - 15:11
**plus** [1] - 4:9
**podium** [1] - 76:6
**point** [18] - 18:3, 33:23, 34:24, 49:21, 51:8, 52:10, 53:18, 56:3, 58:24, 61:12, 64:20, 68:7, 68:17, 70:24, 72:13, 80:19, 83:2, 85:16
**points** [1] - 20:12

**Police** [1] - 43:24
**police** [36] - 10:16, 10:22, 12:13, 12:16, 14:7, 16:5, 23:4, 23:10, 23:13, 23:14, 24:15, 26:15, 26:16, 36:17, 39:2, 39:15, 43:18, 45:1, 45:15, 46:1, 48:14, 49:14, 53:12, 55:21, 56:21, 58:4, 59:4, 59:15, 60:15, 69:8, 69:10, 69:11, 69:17, 71:8, 80:22
**policies** [2] - 63:19, 75:3
**policy** [70] - 10:20, 11:7, 11:11, 11:13, 11:15, 11:16, 11:22, 11:24, 12:13, 12:22, 15:17, 16:1, 17:10, 17:13, 17:20, 18:10, 18:13, 18:20, 19:18, 19:20, 20:1, 20:5, 21:4, 25:3, 25:8, 25:12, 25:22, 30:23, 33:6, 33:13, 33:14, 33:16, 41:3, 41:8, 42:12, 44:13, 45:22, 45:23, 46:14, 46:15, 48:10, 48:17, 50:16, 52:11, 52:12, 52:18, 53:1, 53:3, 53:19, 53:23, 54:2, 54:12, 54:17, 54:21, 55:6, 56:9, 56:16, 63:17, 64:4, 65:7, 65:8, 66:7, 66:10, 67:18, 75:2, 75:19, 77:13, 80:15
**portion** [1] - 6:19
**portions** [3] - 27:6, 28:10, 65:16
**pose** [1] - 80:4
**position** [6] - 6:18, 7:3, 7:5, 32:19, 35:5, 53:2, 63:2, 83:15
**possibility** [1] - 70:22
**possible** [1] - 24:19
**possibly** [1] - 23:9
**potential** [2] - 64:12, 65:1
**practice** [16] - 11:12, 18:24, 19:4, 19:17, 19:19, 19:21, 21:9, 25:9, 25:22, 32:12, 33:19, 38:11, 54:14, 67:19, 80:15, 80:17

**practices** [1] - 80:22
**preceding** [1] - 64:5
**precertification** [7] - 35:9, 35:11, 39:20, 49:23, 78:16, 80:10, 82:1
**prejudice** [1] - 6:21
**prepared** [5] - 5:18, 5:21, 7:19, 8:4
**preponderance** [1] - 35:19
**present** [1] - 17:20
**presentation** [1] - 66:14
**presented** [3] - 10:1, 14:20, 16:21
**pretty** [3] - 43:4, 54:16, 64:7
**prevailed** [1] - 53:21
**PRICE** [1] - 1:23
**primarily** [1] - 34:5
**primary** [1] - 8:15
**printed** [1] - 65:24
**priority** [1] - 8:9
**prison** [2] - 47:22, 72:5
**probabilities** [1] - 36:24
**probable** [27] - 17:9, 21:19, 22:18, 23:13, 24:10, 24:11, 36:14, 36:16, 36:19, 36:23, 37:2, 37:14, 38:14, 44:9, 47:14, 47:17, 49:5, 49:11, 49:15, 53:6, 55:17, 59:2, 59:12, 60:18, 63:21, 69:3
**problems** [1] - 39:22
**procedurally** [2] - 6:3, 6:10
**procedure** [4] - 4:8, 7:23, 49:18, 58:3
**procedures** [2] - 46:7
**proceed** [3] - 6:2, 8:7, 8:14
**proceeding** [3] - 67:11, 79:4, 79:5
**process** [2] - 36:3, 36:4
**proclamation** [1] - 11:16
**proffer** [3] - 27:13, 27:17, 49:19
**proffered** [1] - 70:9
**profiling** [1] - 73:11
**proof** [5] - 18:20, 19:12, 52:23, 52:24,

59:17
**proper** [1] - 18:21
**properly** [3] - 15:11, 23:1, 72:9
**proposal** [1] - 41:15
**proposals** [2] - 78:14, 78:15
**proposed** [17] - 12:3, 15:17, 19:2, 19:23, 20:14, 24:5, 25:19, 25:24, 27:22, 28:23, 29:11, 29:13, 30:9, 32:21, 51:1, 79:24
**proposition** [1] - 52:8
**prosecution** [1] - 22:16
**protective** [5] - 4:23, 73:13, 83:14, 83:16, 83:22
**provide** [8] - 8:11, 9:23, 13:16, 25:23, 45:7, 46:17, 72:20, 82:10
**provided** [1] - 18:14
**provides** [1] - 13:12
**provisions** [1] - 18:13
**public** [2] - 26:10, 73:18
**Public** [1] - 87:8
**punitive** [1] - 42:10
**purple** [1] - 12:18
**purported** [3] - 11:7, 21:11, 32:11
**purportedly** [1] - 74:3
**purpose** [3] - 23:4, 28:7, 61:2
**purposes** [7] - 35:22, 53:14, 58:24, 59:3, 60:21, 66:9, 81:17
**pursuant** [2] - 54:2, 64:4
**push** [2] - 23:11, 24:18
**put** [8] - 5:13, 12:18, 18:4, 18:17, 28:13, 37:18, 84:17, 86:4
**puts** [1] - 18:20

## Q

**questions** [5] - 39:23, 66:13, 74:7, 78:5, 78:6
**quick** [2] - 43:8, 45:19
**quite** [1] - 25:5
**quote** [11] - 10:21, 11:15, 11:16, 19:6, 26:14, 26:18, 32:16,

36:22, 56:24, 75:22
**quoted** [1] - 29:6
**quoting** [4] - 53:6, 55:20, 60:2

## R

**race** [1] - 48:2
**racial** [4] - 48:5, 73:3, 73:11, 79:20
**Ralph** [2] - 32:14, 47:4
**range** [1] - 33:24
**ranging** [1] - 33:22
**Rashad** [1] - 22:21
**rather** [5] - 8:8, 11:4, 11:19, 14:7, 52:18
**read** [4] - 58:6, 84:14, 84:19
**reader** [2] - 13:2, 13:10
**reading** [3] - 58:11, 58:17, 70:2
**reads** [2] - 13:18, 30:7
**ready** [1] - 82:13
**realize** [1] - 4:8
**really** [10] - 20:22, 28:7, 43:1, 43:7, 62:4, 62:7, 66:2, 78:15, 80:5, 82:22
**realm** [3] - 24:19, 28:16
**rearrest** [1] - 42:12
**reason** [7] - 23:8, 24:21, 25:14, 29:19, 29:22, 41:5, 47:16
**reasonable** [16] - 15:1, 21:16, 29:17, 38:14, 41:7, 43:10, 51:21, 55:8, 55:22, 56:18, 59:18, 60:22, 60:23, 61:23, 64:14, 75:8
**reasonably** [1] - 61:15
**reasons** [5] - 9:8, 17:7, 20:23, 71:6, 73:15
**received** [1] - 5:17
**recent** [2] - 69:22, 70:1
**recently** [1] - 42:13
**recess** [1] - 86:12
**recite** [1] - 25:5
**recited** [2] - 14:24, 25:19
**recites** [1] - 28:24, 29:11
**recognize** [2] - 40:15, 86:3

**recognized** [3] - 17:7, 42:8, 75:23
**recognizes** [1] - 66:8
**record** [16] - 4:11, 4:13, 4:15, 5:14, 9:19, 18:3, 18:8, 18:18, 27:11, 28:1, 28:8, 28:22, 31:9, 78:12, 87:9
**red** [1] - 43:2
**refer** [1] - 28:10
**reference** [6] - 13:9, 15:16, 26:8, 32:21, 36:1, 71:3
**referred** [2] - 32:20, 69:1
**referring** [3] - 9:18, 41:19, 85:12
**refers** [1] - 13:2
**reflect** [3] - 12:14, 16:1, 17:15
**reflected** [1] - 26:6
**reflects** [2] - 14:4, 14:11
**regard** [18] - 4:21, 5:3, 8:2, 10:10, 11:13, 12:2, 20:13, 21:9, 21:10, 24:4, 31:2, 37:13, 38:7, 41:16, 73:20, 78:13, 81:24, 84:21
**regarding** [11] - 22:1, 22:24, 23:6, 24:12, 34:9, 43:4, 54:14, 67:13, 67:18, 75:8, 79:22
**regardless** [1] - 82:4
**reign** [1] - 51:16
**reiterate** [1] - 51:18
**relate** [3] - 14:13, 31:3, 32:5
**related** [6] - 11:3, 11:22, 15:11, 26:6, 32:4, 79:20
**relates** [1] - 35:1
**relationship** [1] - 81:5
**release** [1] - 76:16
**released** [5] - 13:22, 14:1, 44:11, 44:22, 57:8
**relevance** [2] - 68:8, 82:6
**reliable** [1] - 74:18
**relied** [2] - 27:21, 29:2
**relief** [14] - 9:5, 9:15, 35:1, 41:22, 41:23, 42:9, 42:15, 48:21, 67:6, 67:8, 67:16, 67:17, 67:22, 74:15

**relies** [1] - 27:23
**rely** [1] - 34:4
**remarks** [2] - 8:5, 69:1
**remedy** [1] - 35:9
**remember** [4] - 13:20, 18:8, 44:6, 83:5
**removal** [1] - 69:2
**remove** [1] - 69:16
**render** [2] - 67:18, 72:11
**Renee** [1] - 3:16
**reopen** [1] - 84:10
**repeated** [1] - 11:2
**repeatedly** [1] - 21:1
**reply** [7] - 7:9, 7:11, 57:23, 57:24, 58:16, 74:24, 75:23
**reporter** [1] - 82:18
**REPORTER** [1] - 87:5
**Reporter** [1] - 87:7
**reports** [2] - 65:2, 65:4
**represent** [1] - 32:3
**representative** [4] - 62:17, 62:20, 62:22, 63:3
**representatives** [3] - 3:9, 62:21, 64:9
**request** [5] - 6:20, 9:15, 35:1, 76:15, 84:9
**requested** [3] - 67:6, 67:8, 72:16
**require** [4] - 14:15, 36:5, 61:15, 69:4
**required** [5] - 17:13, 40:14, 48:20, 51:19, 62:11
**requirement** [6] - 40:16, 41:24, 42:18, 62:18, 62:23, 64:19
**requirements** [3] - 42:10, 78:3, 79:1
**requires** [2] - 32:1, 41:17, 50:14
**reserve** [1] - 81:18
**reserving** [1] - 83:12
**resist** [1] - 47:20
**resisting** [5] - 47:19, 65:9, 72:7, 72:9, 73:2
**resort** [1] - 4:4
**resources** [1] - 38:3
**respect** [20] - 6:10, 13:8, 14:12, 17:12, 17:22, 18:10, 19:4, 19:16, 19:24, 24:7, 25:8, 25:10, 32:9,

32:10, 34:5, 34:6, 37:12, 38:18, 72:24, 74:1
**respond** [3] - 28:22, 46:11, 68:21
**rest** [2] - 59:1, 86:4
**restraints** [1] - 61:3
**restrictive** [2] - 4:24, 37:21
**result** [2] - 13:22, 44:10
**return** [1] - 30:17
**returned** [2] - 69:10, 71:7
**review** [1] - 13:11
**RICHARDS** [1] - 2:2
**Richards** [1] - 3:13
**rights** [8] - 10:22, 12:15, 14:12, 40:11, 42:8, 42:21, 43:3, 53:10
**rise** [2] - 26:19, 30:22
**risk** [1] - 37:18
**Robinson's** [1] - 83:7
**Rose** [1] - 3:17
**Royer** [2] - 16:13, 70:17
**rule** [3] - 32:1, 35:16, 42:19
**Rule** [6] - 4:10, 5:9, 31:4, 74:11, 78:13, 81:17
**rules** [1] - 35:6
**rulings** [3] - 80:1, 82:8, 83:17
**run** [1] - 45:10
**running** [1] - 3:2

## S

**safety** [11] - 15:5, 16:7, 16:12, 16:14, 16:16, 16:19, 30:16, 37:17, 61:8, 69:5, 70:18
**sake** [2] - 28:15
**sat** [1] - 78:24
**satisfy** [2] - 34:2, 73:8
**save** [1] - 51:3
**scene** [1] - 29:21
**schedule** [2] - 80:5, 82:15
**scheduled** [2] - 4:17, 79:24
**scheduling** [5] - 4:10, 5:9, 74:11, 81:19, 83:13
**school** [1] - 36:22

**School** [1] - 54:7
**scope** [4] - 31:20, 67:13, 78:23, 79:22
**scream** [1] - 22:11
**screeching** [1] - 81:24
**seal** [2] - 26:10, 87:15
**search** [3] - 22:6, 43:13
**searching** [1] - 22:4
**seated** [1] - 4:5
**second** [7] - 18:23, 21:2, 22:22, 25:16, 47:10, 72:8, 73:1
**secondly** [4] - 31:2, 32:10, 40:17, 68:21
**section** [5] - 13:2, 13:11, 13:12, 32:6, 63:10
**Section** [1] - 45:10
**security** [11] - 15:5, 16:8, 16:12, 16:15, 16:16, 16:20, 30:16, 37:17, 69:5, 69:14, 70:19
**see** [6] - 47:24, 60:4, 65:5, 66:3, 67:15, 79:7
**seeing** [1] - 66:5
**seek** [1] - 48:9
**seeking** [7] - 42:9, 48:4, 48:20, 66:23, 67:1, 67:23, 72:7
**seeks** [1] - 24:6
**seem** [1] - 71:11
**sees** [2] - 38:10, 52:12
**seizures** [1] - 53:9
**sense** [3] - 72:14, 72:17, 77:5
**sensitivity** [1] - 86:6
**sentence** [1] - 44:18
**series** [1] - 70:14
**serve** [2] - 63:1, 63:3
**service** [1] - 37:9
**set** [2] - 8:22, 87:14
**setting** [1] - 61:16
**settled** [5] - 19:7, 20:4, 20:7, 25:1, 33:15
**several** [2] - 64:9, 65:23
**SHERRY** [1] - 1:17
**short** [2] - 17:12, 84:8
**shortcut** [1] - 38:5
**show** [8] - 9:4, 19:6, 35:18, 47:13, 47:15, 74:1, 80:15, 80:16
**showing** [2] - 50:19, 63:24

**shows** [1] - 47:16
**side** [4] - 8:10, 38:11, 39:10, 51:11
**sides** [1] - 5:20
**sides'** [2] - 4:20, 84:16
**significant** [2] - 23:7, 23:17
**silent** [4] - 23:5, 23:16, 24:14, 25:10
**similar** [4] - 42:14, 53:4, 53:19
**simple** [2] - 43:4, 48:23
**simplicity** [1] - 28:15
**simply** [1] - 13:15
**single** [9] - 20:3, 37:22, 39:2, 39:15, 52:22, 53:24, 62:19, 73:7, 78:1
**site** [1] - 55:21
**sitting** [1] - 3:22
**SLR** [1] - 1:5
**SLR-SRF** [1] - 1:5
**sniffing** [4] - 16:10, 69:6, 69:16, 70:7
**so-called** [2] - 25:17, 35:14
**solely** [3] - 47:3, 54:10, 67:8
**Solicitor** [1] - 3:18
**solid** [1] - 49:22
**someone** [1] - 59:13
**soon** [1] - 86:7
**sophisticated** [1] - 76:3
**sorry** [9] - 25:8, 29:9, 29:17, 40:19, 42:1, 57:17, 68:3, 68:12, 69:23
**sort** [1] - 6:7
**sought** [5] - 67:17, 67:23, 74:15, 77:21, 77:24
**speaking** [3] - 65:15, 83:8, 85:13
**special** [2] - 16:20, 75:11
**specific** [12] - 11:15, 26:2, 27:19, 28:4, 42:24, 45:21, 61:10, 64:2, 64:19, 64:24, 74:22, 75:22
**specifically** [7] - 19:4, 20:12, 27:22, 40:18, 52:11, 65:8, 76:14, 76:21, 85:12
**spectrum** [1] - 79:16
**spend** [2] - 5:13, 86:2

**spot** [1] - 81:22
**spread** [1] - 80:17
**squarely** [1] - 61:17
**SRF** [1] - 1:5
**Stacy** [3] - 87:7, 87:19, 87:20
**stage** [3] - 15:10, 46:12, 56:11
**stand** [1] - 6:10
**standard** [15] - 7:7, 8:3, 10:17, 11:1, 11:5, 17:18, 17:19, 28:3, 29:1, 34:15, 35:15, 38:6, 50:11, 64:8, 71:16
**standards** [1] - 32:19
**standpoint** [2] - 14:22, 38:16
**start** [1] - 81:12
**started** [1] - 5:10
**starting** [1] - 29:15
**state** [11] - 9:3, 18:3, 19:11, 20:22, 22:16, 24:23, 42:20, 43:5, 43:9, 56:14, 75:17
**State** [3] - 16:19, 70:20, 87:1
**statement** [2] - 13:15, 24:9
**STATES** [1] - 1:1
**states** [5] - 13:12, 15:24, 20:3, 31:18, 65:8
**States** [7] - 1:17, 16:14, 17:1, 17:5, 19:9, 23:24, 60:21
**stating** [3] - 23:12, 23:14, 56:9
**station** [37] - 14:7, 14:16, 14:18, 15:1, 16:5, 16:9, 16:17, 16:22, 17:2, 17:9, 26:16, 30:17, 33:7, 36:17, 37:17, 37:20, 38:2, 43:19, 45:1, 45:15, 46:1, 48:14, 49:15, 53:12, 55:22, 56:21, 57:9, 58:4, 59:4, 59:16, 61:18, 69:2, 69:10, 69:11, 69:12, 69:17, 71:8
**status** [1] - 84:3
**statute** [11] - 13:3, 13:8, 43:5, 43:9, 43:20, 62:5, 62:6, 62:9, 71:3, 75:15, 75:17
**stay** [1] - 5:3
**stenographic** [1] -

87:10
**step** [1] - 85:1
**STEPHEN** [1] - 1:23
**Steve** [1] - 3:7
**sticky** [2] - 12:18, 12:19
**still** [5] - 46:10, 51:1, 55:11, 58:24, 59:1
**stop** [17] - 43:6, 43:7, 43:8, 43:10, 45:17, 45:19, 55:21, 60:17, 60:19, 60:24, 61:2, 61:6, 61:19, 62:2, 62:10, 70:5, 70:7
**stopped** [1] - 45:6
**Stopping** [1] - 42:13
**stops** [1] - 60:14
**stored** [1] - 65:14
**story** [1] - 69:8
**straight** [1] - 7:4
**straighten** [1] - 66:21
**straightforward** [1] - 54:6
**streamlined** [2] - 80:24, 81:8
**Street** [1] - 1:14
**stricken** [4] - 34:23, 35:6, 35:11, 38:23
**strike** [1] - 9:13
**Stuart** [2] - 42:4, 68:2
**stuff** [1] - 80:16
**subject** [9] - 6:5, 22:7, 22:8, 23:23, 31:24, 32:2, 32:4, 61:13, 74:5
**subjects** [1] - 14:5
**submitted** [2] - 9:21, 63:22
**subsequent** [1] - 64:6
**subsequently** [1] - 9:5
**substantially** [1] - 61:5
**sued** [1] - 10:16
**suffered** [1] - 11:9
**suffice** [1] - 52:23
**suffices** [1] - 54:1
**sufficient** [10] - 9:4, 13:13, 19:5, 20:22, 21:2, 24:1, 33:17, 34:16, 38:17, 46:20
**suing** [1] - 63:18
**summary** [8] - 28:3, 28:17, 49:19, 49:20, 53:22, 54:10, 54:13, 60:12
**summer** [2] - 3:16, 3:21

**Sup** [3] - 26:6, 53:17, 61:2
**support** [3] - 34:19, 41:15, 42:2
**supported** [3] - 55:22, 56:8, 61:21
**supports** [1] - 53:2
**Supreme** [16] - 10:24, 16:14, 16:19, 17:1, 17:5, 19:9, 23:24, 37:19, 60:14, 61:11, 61:16, 70:1, 70:3, 70:18, 70:20, 75:6
**sur** [1] - 7:11
**survive** [1] - 49:20
**suspect** [8] - 16:4, 16:8, 16:9, 22:5, 55:20, 56:21, 58:7, 58:21
**suspected** [1] - 56:17
**suspects** [12] - 12:23, 13:17, 13:19, 13:21, 14:16, 14:17, 32:6, 44:4, 44:7, 44:8, 58:3, 61:13
**suspicion** [4] - 15:2, 21:17, 29:18, 38:15, 43:11, 55:8, 55:23, 56:18, 59:13, 59:18, 60:22, 60:23, 61:23, 75:8
**sweeping** [1] - 56:16

**T**

**talks** [5] - 26:11, 43:17, 43:18, 47:8
**tandamental** [1] - 25:2
**tantamount** [1] - 33:15
**technicalities** [1] - 50:17
**technology** [1] - 50:5
**temporary** [1] - 60:24
**terms** [6] - 40:24, 56:24, 58:2, 62:10, 72:14, 84:4
**Terry** [7] - 43:7, 43:10, 45:18, 60:17, 61:6, 61:19, 62:1
**test** [3] - 14:23, 15:12, 34:3
**testified** [1] - 32:15
**testify** [3] - 30:5, 56:15, 56:19
**testifying** [1] - 33:5
**testimony** [34] - 26:1,

26:3, 26:5, 26:12, 26:13, 26:15, 26:20, 27:18, 27:21, 27:23, 28:24, 29:2, 30:8, 30:19, 30:20, 31:2, 32:9, 32:13, 32:16, 32:20, 33:1, 33:4, 46:13, 47:3, 54:11, 55:3, 55:10, 56:7, 56:8, 56:14, 58:6, 58:14, 59:20, 59:21
**Texas** [2] - 16:24, 70:21
**THE** [89] - 1:1, 1:1, 1:17, 1:22, 3:1, 3:10, 3:20, 4:2, 4:14, 5:24, 6:6, 6:11, 6:15, 8:6, 8:19, 9:20, 9:23, 10:4, 10:9, 12:2, 12:6, 12:20, 15:8, 15:19, 15:22, 18:6, 20:2, 20:10, 20:15, 20:18, 21:23, 26:24, 27:3, 27:10, 28:6, 28:19, 31:11, 39:8, 40:2, 40:19, 40:23, 41:14, 42:1, 42:6, 44:15, 45:9, 46:18, 50:4, 50:8, 50:21, 51:10, 51:24, 57:10, 58:1, 58:10, 58:15, 59:23, 60:7, 62:14, 62:24, 65:11, 65:21, 66:15, 68:11, 69:21, 69:24, 70:12, 71:23, 72:13, 72:22, 74:8, 76:4, 76:18, 76:21, 77:4, 78:6, 78:9, 78:22, 80:3, 81:2, 81:15, 82:16, 83:1, 83:24, 84:8, 85:1, 85:10, 85:19, 85:22
**theft** [1] - 55:19
**theirs** [1] - 82:15
**themselves** [2] - 74:10, 77:8
**theory** [2] - 25:7, 36:18
**therefore** [2] - 16:2, 53:9
**thereof** [1] - 65:16
**Third** [16] - 10:24, 11:10, 16:7, 16:11, 19:10, 19:21, 35:13, 36:7, 38:6, 42:3, 50:15, 67:4, 68:23, 69:11, 70:4, 70:16
**third** [1] - 69:17

**thousand** [5] - 47:24, 48:7, 64:16, 64:18, 65:23
**threat** [1] - 69:14
**three** [12] - 20:19, 47:12, 47:23, 53:13, 60:14, 60:15, 64:10, 64:12, 64:15, 65:20, 76:7, 78:20
**Thress(sic** [1] - 42:14
**tied** [2] - 80:1, 80:6
**Title** [2] - 13:2, 32:7
**title** [1] - 62:7
**today** [3] - 3:22, 4:8, 50:6, 75:4, 79:19, 81:13, 81:22, 84:22
**together** [3] - 22:21, 22:22, 66:12
**took** [3] - 22:9, 24:12, 49:14
**topics** [1] - 33:24
**total** [2] - 20:13, 20:19
**touch** [2] - 9:15, 56:6
**towards** [1] - 48:16
**town** [1] - 69:13
**track** [5] - 48:17, 77:11, 77:12, 77:14, 77:19
**traffic** [4] - 55:21, 60:24, 70:5, 70:6
**train** [2] - 54:15, 54:22
**trained** [1] - 54:21
**training** [20] - 18:14, 18:21, 34:4, 34:6, 34:7, 34:9, 34:11, 34:12, 34:15, 34:18, 34:21, 34:23, 49:8, 54:17, 54:23, 73:21, 73:22, 74:2, 74:3
**transcript** [6] - 27:7, 28:9, 28:10, 29:10, 60:3, 87:10
**transform** [1] - 62:1
**transmittal** [3] - 9:17, 12:17, 27:5
**transport** [9] - 26:16, 43:18, 44:24, 45:5, 45:14, 58:4, 59:15, 61:12, 71:12
**transportation** [4] - 14:2, 44:23, 55:20, 61:17
**transported** [2] - 56:20, 61:24
**transporting** [3] - 45:24, 55:7, 56:16
**trial** [2] - 41:17, 63:13
**trials** [2] - 36:9, 37:4

**trip** [1] - 69:7
**trouble** [1] - 67:9
**true** [3] - 51:19, 63:7, 87:9
**try** [2] - 39:23, 66:20
**trying** [2] - 55:11, 77:5
**turning** [3] - 21:12, 29:15, 36:23
**turnkey** [6] - 76:17, 76:18, 76:20, 76:23, 82:3, 85:13
**two** [31] - 5:3, 8:22, 10:20, 19:15, 20:12, 20:23, 20:24, 21:8, 21:15, 24:24, 25:6, 30:2, 35:24, 36:2, 43:6, 43:12, 43:14, 45:18, 47:21, 48:7, 52:8, 52:12, 53:13, 62:8, 62:10, 63:11, 65:10, 65:20, 66:8, 67:24, 78:21
**two-hour** [3] - 30:2, 43:14, 62:8
**Twombly** [14] - 9:3, 12:1, 19:3, 20:20, 23:7, 23:12, 23:17, 23:20, 24:17, 33:17, 34:3, 34:13, 34:22, 74:6
**type** [2] - 40:14
**types** [1] - 40:16
**typicality** [10] - 35:17, 38:7, 38:19, 39:22, 65:10, 66:4, 66:5, 66:9, 73:15, 78:2
**typically** [1] - 40:12

## U

**U.S** [8] - 10:24, 16:15, 60:13, 60:22, 61:22, 70:16, 70:18, 70:19
**ultimately** [2] - 69:10, 78:19
**uncertifiable** [1] - 72:12
**uncle** [1] - 22:10
**unconstitutional** [14] - 17:14, 21:4, 25:22, 45:11, 52:13, 53:1, 53:4, 54:17, 54:21, 63:17, 64:4, 66:10, 75:2, 75:16
**uncovers** [1] - 57:3
**under** [54] - 9:2, 10:18, 11:24, 14:10, 16:3, 16:21, 17:24,

20:20, 23:7, 23:11, 23:17, 23:20, 23:23, 24:17, 26:10, 26:22, 29:1, 29:23, 29:24, 30:2, 31:21, 32:6, 32:18, 33:12, 33:17, 34:13, 34:22, 35:6, 35:17, 36:6, 36:17, 37:18, 38:5, 38:12, 40:10, 41:5, 41:8, 42:16, 44:13, 45:10, 47:9, 47:14, 48:11, 49:9, 51:3, 56:21, 59:13, 63:10, 71:13, 74:6, 74:15, 77:23, 82:11, 85:24
**understandably** [1] - 50:12
**Understood** [1] - 28:19
**understood** [1] - 21:23
**undue** [1] - 50:19
**unique** [4] - 38:9, 38:15, 69:18, 73:7
**UNITED** [1] - 1:1
**United** [7] - 1:17, 16:14, 16:24, 17:5, 19:9, 23:24, 60:21
**universe** [1] - 47:11
**unlawful** [2] - 11:7, 11:21
**unlawfully** [1] - 42:22
**unless** [2] - 61:10, 74:6
**unnecessary** [1] - 73:17
**unreasonable** [1] - 53:8
**unspecified** [4] - 32:13, 34:10, 34:21, 73:11
**unsupported** [2] - 11:20
**up** [16] - 3:2, 3:4, 3:24, 4:4, 13:17, 13:18, 25:23, 40:20, 44:4, 44:8, 63:12, 64:14, 75:6, 76:5, 82:22, 85:1
**upheld** [3] - 46:2, 46:3, 53:5

## V

**valid** [3] - 13:6, 16:11, 16:13
**validity** [1] - 13:8

**vehicle** [1] - 29:24
**version** [1] - 26:10
**versus** [21] - 16:6, 16:13, 16:15, 16:18, 16:24, 17:4, 52:6, 52:16, 53:16, 54:7, 56:1, 60:21, 61:21, 62:3, 68:15, 70:17, 70:19, 70:20, 70:21, 70:23
**vicinity** [1] - 69:13
**view** [4] - 68:16, 71:18, 79:7, 81:20
**viewpoint** [1] - 84:16
**violate** [1] - 53:7
**violated** [1] - 53:10
**violates** [1] - 54:5
**violation** [1] - 34:12
**virtually** [1] - 19:7
**volume** [7] - 65:13, 72:14, 72:15, 72:19, 82:9, 84:4, 84:19
**voluminous** [2] - 77:7, 85:11
**voluntarily** [1] - 53:11
**vs** [1] - 42:16

## W

**wait** [4] - 69:5, 69:15, 70:7, 82:2
**Wal** [2] - 35:13, 36:7
**Wal-mart** [2] - 35:13, 36:7
**walk** [1] - 82:22
**wants** [1] - 73:9
**ways** [2] - 21:8, 46:22
**weapons** [1] - 45:20
**Wednesday** [1] - 1:11
**week** [1] - 84:5
**weigh** [1] - 4:10
**well-settled** [4] - 20:4, 20:7, 25:1, 33:15
**Westlaw** [1] - 54:8
**Whelihan** [3] - 53:23, 54:7, 75:17
**WHEREOF** [1] - 87:14
**whole** [2] - 65:23, 66:3
**wholly** [1] - 34:13
**wide** [2] - 33:22, 80:17
**wide-ranging** [1] - 33:22
**WILMINGTON** [1] - 1:7
**Wilmington** [9] - 1:14, 3:14, 3:19, 37:9, 43:20, 43:24, 55:6,

81:7, 87:16
**wish** [1] - 5:22
**witness** [7] - 26:4,
31:5, 31:17, 31:23,
32:8, 32:23, 54:11
**WITNESS** [1] - 87:14
**witnesses** [2] - 37:7,
54:18
**word** [1] - 76:1
**words** [1] - 73:5
**works** [1] - 36:14
**world** [1] - 79:7
**WPD** [2] - 56:9, 56:15
**Wrensford** [2] - 16:12,
70:17
**wright** [1] - 21:13
**WRIGHT** [1] - 1:3
**Wright** [12] - 21:14,
21:15, 21:20, 22:2,
22:8, 22:10, 22:12,
22:19, 24:21, 63:1
**writing** [1] - 43:23
**written** [5] - 46:13,
46:15, 47:2, 47:6,
48:23
**wrongful** [1] - 23:4
**wrote** [5] - 26:14,
73:4, 73:22, 76:5,
76:6

## Y

**year** [2] - 80:10, 81:10
**years** [4] - 47:12,
64:10, 76:8
**yields** [1] - 57:5
**York** [3] - 42:17, 52:7,
61:22

## Z

**zero** [1] - 25:13
**Zochalov** [1] - 60:21