## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAYVON WRIGHT, ANTOINE MURREY,) | |
| KEITH MEDLEY, GREGORY GRIFFIN, ) | |
| and RASHAD EL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 13-1966-SLR-SRF |
| ) | |
| CITY OF WILMINGTON, ) | **UNDER SEAL** |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

At Wilmington this **26th** day of June, 2017, the court having considered the parties'

submissions regarding plaintiffs' motion to de-designate certain documents marked confidential

under the terms of the protective order (D.I. 162; D.I. 164), IT IS HEREBY ORDERED that

plaintiffs' motion is denied without prejudice for the reasons set forth below.

**1. Background.** Plaintiffs initiated this civil rights action under 42 U.S.C. § 1983 on

November 21, 2013, alleging that defendant has a policy and custom of handcuffing,

transporting, searching, and imprisoning individuals based on reasonable suspicion rather than

probable cause in violation of the United States Constitution and relevant federal and state law.

(D.I. 1) Plaintiffs' second amended complaint, which was filed on May 4, 2017, alleges three

separate instances of constitutional violations by police officers involving five named plaintiffs.

(D.I. 146 at ¶¶ 53-146)

**2.** On January 12, 2017, the court conducted a teleconference to address a discovery

dispute regarding the form of a protective order. (1/12/17 Tr. at 4:8-43:10) During the course of

the dispute, plaintiffs argued that the entry of a protective order was not necessary, and stressed

that the public has a right to know about defendant's detention policy. (*Id.* at 26:11-27:3) The court concluded that the entry of a protective order was warranted. (*Id.* at 31:14-20)

**3.** Plaintiffs filed objections to the court's decision on January 26, 2017 pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. (D.I. 122) On April 19, 2017, Judge Robinson entered an order denying plaintiffs' objections and affirming the January 12, 2017 ruling. (D.I. 142) ("Although defendant is a public entity and plaintiffs have raised issues of legitimate public concern, such factors are counterbalanced by the strong public policy in favor of maintaining the confidentiality of non-public documents which relate to methods of law enforcement, as recognized by the court in *Reyes* and Delaware's FOIA statute.").

**4.** On February 27, 2017, the court conducted a second teleconference, addressing follow-up issues regarding the confidentiality designations in the protective order. Plaintiffs sought removal of the confidentiality designation for all discovery materials pertaining to the two-hour detention policy. (2/27/17 Tr. at 5:15-6-7) The court entered the form of protective order proposed by defendant, with some modifications, subsequent to the February 27 teleconference. (2/27/17 Tr. at 24:5-26:11; D.I. 129)

**5.** The court conducted a third discovery dispute teleconference on June 20, 2017 to address plaintiffs' objections to defendant's alleged overuse of confidentiality designations. (D.I. 162; D.I. 164) Plaintiffs contend that five categories of documents produced in discovery should be made publicly available in the interest of public policy, including: (1) turnkey logs, (2) citizen complaints of Murray and Medley, (3) plaintiffs' criminal records, (4) plaintiffs' crime reports, and (5) interviews and photos of plaintiffs El and Griffin. (D.I. 162) Defendant agreed to remove the confidentiality designation from plaintiffs' citizen complaints and criminal records. (D.I. 164 at 3) Accordingly, on the transcript during the June 20, 2017 teleconference,

2

the court granted plaintiffs' request to remove the confidentiality designation with respect to plaintiffs' citizen complaints and criminal records. The court reserved its ruling on the remaining categories, which are addressed below.

**6. Legal Standard.** The Third Circuit has held that "[t]he appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance," taking into account the parties' reliance on the confidentiality order in its original form. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994). The factors evaluated in the Third Circuit's balancing test include:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007). "All such orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Pansy*, 23 F.3d at 786; *see also Crum & Crum Enters., Inc. v. NDC of Cal.*, 2007 WL 886356, at *2 (D. Del. Mar. 10, 2011) (observing that the need for information must be balanced against "the injury that might result if uncontrolled disclosure is compelled.").

**6.** "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Pansy*, 23 F.3d at 786-87 (citing *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)). Consequently, the party wishing to maintain the confidentiality of discovery must demonstrate that good cause exists for the confidentiality designation in the protective order. *See id.* at 786; Fed. R. Civ. P.

3

26(c). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

**7. Analysis.** Plaintiffs' motion to de-designate the turnkey logs, crime reports, and interviews and photos is denied without prejudice. "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order." *Pansy*, 23 F.3d at 790. Here, plaintiffs argue that defendant has failed to meet its burden to justify the confidentiality of each document, and assert that the public has a right to know about the allegedly unconstitutional activities of its police department. However, the court must balance the interests of the parties to determine whether good cause exists for the confidentiality designation. *Pansy*, 23 F.3d at 790. In the present case, defendant has demonstrated that the personal safety of members of the public, including victims, witnesses, and confidential informants, may be compromised by the public disclosure of identifying information contained in the disputed categories of documents. (D.I. 165 at ¶¶ 5-6) The court addresses each of the three remaining categories of documents in turn.

**8.** Plaintiffs first seek to remove the confidentiality designation applied to the 1185 pages of turnkey logs,[1] which feature redacted names, but identify the date and time of the detention,

---

[1] Plaintiffs' submission refers to both the turnkey logs and adult arrest logs, but appears to equate the two types of documents. (D.I. 162 at 2) ("Plaintiffs have attached 5 randomly selected pages from the Turn Key logs also known as the Adult Arrest logs for the Court to scrutinize.") During the June 20, 2017 teleconference, the parties applied the same analysis to both types of logs in their arguments without raising a distinction. However, plaintiffs' written submission subsequently acknowledges, and the in camera sampling confirms, that the two types of documents are not wholly interchangeable. (D.I. 162 at 2) Specifically, the turnkey logs contain less information than the adult arrest logs, referring only to the cell number, charges, amount of bail, disposition and time of release. (WILM00000555; WILM00001261) Despite these discrepancies, in accordance with the parties' presentations, the court will apply the same analysis to both types of documents for purposes of this decision.

the race, sex, age, and date of birth of the detainee, the arresting officer's name, and the nature of

the charge and disposition of the matter. (WILM00000164 – WILM00001349) Defendant has

established good cause to maintain the confidentiality of the logs by submitting the affidavit of

James Gestwicki, which explains that public disclosure of the turnkey logs could compromise the

police department's ability to obtain information provided by citizens to assist in its

investigations and enforcement of the law. (D.I. 165 at ¶ 5) Victims, witnesses, and confidential

informants may fear retribution or other safety risks if their information is publicly disclosed.

(*Id.*)

     **9.** Moreover, the Gestwicki affidavit explains that the turnkey logs may disclose

confidential police methods, such as the timing and frequency with which the police department

may bring individuals to the turnkey and release them without charge, which could result in the

identification of confidential informants. (*Id.* at ¶ 6) Although the public has an interest in

learning about the purportedly unconstitutional detention policies of the police department, this

interest must be weighed against

> the public policy imperative that people be comfortable in providing information
> to the police. If for example, witnesses or victims of crime were concerned that
> their identities could be revealed at any time because someone with whom they
> have no meaningful connection chooses to file a lawsuit, then the flow of
> information critical to successful law enforcement would be adversely affected.

*Reyes v. Freeberry*, C.A. No. , 2005 WL 3560724, at \*6 (D. Del. Dec. 29, 2005). "How the

police plan and execute the deployment of their resources is a matter that, in general, is rightly

kept confidential until such time as they deem it appropriate to share with the public." *Id.*

Consequently, defendant's interest in privacy to facilitate police investigations and protect the

safety of individuals working with police outweighs the public's interest in discovering

confidential police detention policies at this stage of the proceedings.

**10.** Plaintiffs challenge defendant's lack of specificity in identifying the risks of de-designating the disputed documents. While it is true that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test," *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), defendant has adequately satisfied its burden at this stage of the proceedings. Captain Gestwicki has specified the likely risks and harms that could occur if the disputed documents are de-designated. If plaintiffs reassert this issue in conjunction with dispositive motions, in accordance with paragraph 14, *infra*, defendant will be expected to provide additional detail in support of the confidentiality designation. *See Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2015 WL 12466532, at *8 (S.D. Cal. July 16, 2015) ("[D]efendant is forewarned that it must meet a more exacting and onerous standard if and when any of these documents is submitted with a dispositive motion or as evidence at trial.").

**11.** Defendant has also established good cause to maintain the confidentiality designation with respect to the crime reports. In *Pansy*, the Third Circuit expressed concern that "confidentiality orders can frustrate, if not render useless, federal and state freedom of information laws." *Pansy*, 23 F.3d at 791. However, maintaining the confidentiality of the crime reports would not conflict with Delaware's freedom of information statute ("FOIA"), which protects from public disclosure "[c]riminal files and criminal records, the disclosure of which would constitute an invasion of personal privacy." 29 *Del. C.* § 10002(l)(4). Thus, Delaware's FOIA statute incorporates protections that preclude the public dissemination of "the names of witnesses, intelligence personnel and aids or any other information of a privileged and confidential nature." *Id.*

6

**12.** With respect to the interviews and photos of plaintiffs El and Griffin, the parties

failed to conduct a meaningful meet and confer prior to the June 20, 2017 teleconference. The

scheduling order requires the parties to verbally discuss a disputed discovery issue prior to

seeking the court's intervention. (D.I. 67 at ¶ 3(f) n.1) The issue pertaining to the interviews and

photos was not included in the parties' joint motion for teleconference to resolve the discovery

dispute. (D.I. 150) As a consequence, defendant's opportunity to respond to arguments favoring

de-designation of the interviews and photos was limited. Regardless, defendant has offered to

change the designation of the interviews and photos from "highly confidential" to "confidential,"

which would allow the individual plaintiffs the opportunity to review the materials. (D.I. 164 at

4 n.2) The court adopts defendant's proposed reduction in the confidentiality designation from

"highly confidential" to "confidential," but declines to eliminate the designation in its entirety at

this stage of the proceedings.

**13.** Plaintiffs also invoke the right of access doctrine,[2] which recognizes a public right of

access to judicial proceedings and judicial records. (D.I. 162 at 2) ("These interests in protecting

the confidentiality of some areas of police activity must be balanced against the competing

public interest in the right to know and obtain information concerning judicial proceedings.").

The Third Circuit has defined "judicial records" to include only documents which were "filed

with, interpreted or enforced by the district court." *Pansy*, 23 F.3d at 781 (concluding that a

settlement agreement was not a judicial record, and the right of access doctrine did not provide a

basis for a right of access to the document).

> Simply because a court has entered a confidentiality order over documents does
> not automatically convert those documents into "judicial records" accessible

---

[2] The issue of whether a confidentiality designation in a protective order should be modified is
separate from the question of whether documents produced in discovery constitute "judicial
records" for purposes of the right of access doctrine. *See Pansy*, 23 F.3d at 785.

7

> under the right of access doctrine.  For example, when a court enters an order of protection over documents exchanged during discovery, and these documents have not been filed with the court, such documents are not, by reason of the protective order alone, deemed judicial records to which the right of access attaches.

*Id.* at 782.  The disputed documents presently before the court are documents produced in discovery which have not been filed as court records, and are the types of documents expressly excluded from the Third Circuit's definition of "judicial records" in *Pansy*.  Consequently, plaintiffs cannot prevail on their suggestion that the documents should be made public in accordance with the right of access doctrine.[3]

**14.**  The court's ruling is made without prejudice, and may be revisited in conjunction with dispositive motions.  Plaintiffs did not provide a specific reason for the timing of their request at this stage of the proceedings beyond their assertion that the public has a right to know about defendant's allegedly unconstitutional detention policy.  The court finds that this interest may be better served at a time when the scope of the case is more clearly defined, after discovery is complete and dispositive motions are filed.  In *Crossfit, Inc. v. National Strength & Conditioning Association*, the court determined that a similar request for public disclosure was premature "[u]ntil and unless the challenged documents are proffered as evidence on an issue relevant to defendant's liability or some other material issue in this litigation."  2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015).  Application of this analysis to the present case will ultimately serve the interest in public disclosure while minimizing the dissemination of large volumes of confidential information to the public.

---

[3] The Third Circuit has held that "[c]ourts have inherent power to grant orders of confidentiality over materials not in the court file." *Pansy*, 23 F.3d at 785 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n.19, 35 (1984)).

**15. Conclusion.** In view of the foregoing analysis, plaintiffs' motion to de-designate certain documents marked confidential under the terms of the protective order is denied without prejudice.

**16.** Given that the court has relied upon material which technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe certain material in this Memorandum Order should be redacted, the parties should jointly submit a proposed redacted version by no later than **ten (10) days** from the date of this Memorandum Order. The court will subsequently issue a publicly-available version of its Memorandum Order.

**17.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**18.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

9