FILED
CLERK US DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE 2018 MAR -9  AM 11: 16

sr

| | |
|---|---|
| JAYVON WRIGHT, ANTOINE MURREY, * | |
| KEITH MEDLEY, GREGORY GRIFFIN, * | |
| AND RASHAD EL, INDIVIDUALLY, * | CASE NO. 13-1966-GAM/SRF |
| And on behalf of a Class of others similarly * | |
| situated, * | **CLASS ACTION COMPLAINT** |
| * | |
| Plaintiff, * | **JURY TRIAL DEMANDED** |
| * | |
| v. * | |
| * | |
| City of Wilmington * | |
| * | |
| Defendant * | |
| * | |

## MOTION OF PROPOSED INTERVENOR WEIH STEVE CHANG
## TO INTERVENE AND UNSEAL JUDICIAL RECORDS
## OF CIVIL RIGHTS CLASS ACTION

Weih Steve Chang Proposed Intervenor hereby petitions this Honorable

Court for permission to intervene in the above-captioned matter for the purpose of

moving to unseal the records for the reasons set forth below.

### Introduction

1.     Weih Steve Chang, a resident of New Castle County, State of

Delaware, residing at 122 Pumpkin Patch Lane, Hockessin, DE 19707, respectfully

petitions the Court for an Order (1) unsealing all judicial records in *1:13-CV-01966-*

*GAM (Wright v. City of Wilmington)*; and (2) changing the Court's docketing

practices to allow public access to these types of class action complaints involving

policies and/or customs by government actors in violating residents' constitutional rights records in future cases, consistent with the public's constitutional and common law rights of access to judicial proceedings and records.

2.      In this jurisdiction, the public's right to access civil trials under the First Amendment is exhaustively litigated in the proceeding of *Case# 1:11-CV-01015-MAM DELCOG v. Strine*. The Third Circuit sets precedent in its Opinion No. 12-3859.

3.      The judicial records sought by Petitioner contain detailed information supporting claims by multiple plaintiffs of a pattern of practice established and carried out by a group of police officers in the Wilmington Police Department ("WPD") so pervasively that such claims allegedly satisfied the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

4.      The class action covers a period lasting from November 22, 2011 to a date, unknown to Petitioner, on which the WPD is enjoined from continuing its unconstitutional policy and practice.

5.      Petitioner cannot access these judicial records without the Court's assistance because crucial, relevant portions of them are filed and docketed under seal in the Court's Case Management/Electronic Case Files (CM/ECF) system. In many instances, these judicial records are completely and indefinitely hidden from

public view, preventing Petitioner and the public from knowing how the Court is interpreting and applying the law in civil rights litigations.

6.     Petitioner seeks access to these judicial records to better understand and inform himself and the public about how minorities were mistreated by the WPD during all relevant times in order to advance the deep-seated American principle of equal justice under law.

7.     Similarly, public access to this class action serves the deep-seated American principle of open access to the courts and minimizes risks of activities that may be potentially considered to be fraud upon the court.

8.     The legal and factual bases for Petitioner's request are explained in detail below. Petitioner respectfully requests that the Court issue an order providing the specific relief of this Petition and in the accompanying proposed order.

### Jurisdiction

9.     The Court has jurisdiction over this Petition because "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)*; accord In re Motion for Release of Court Records, *526 F. Supp. 2d 484, 487 (FISA Ct. 2007)* (footnote omitted) (courts have "jurisdiction in the first instance to adjudicate a claim of right to [their] very own records and files. . . . [T]his Court's inherent power over its records supplies the authority to consider a claim of legal right to release of those records").

Jurisdiction is also proper under 28 U.S.C. § 1331.

## Background

10.     Petitioner is a member of the public within this District. Petitioner is a member of Asian American communities.

11.     Plaintiffs in *Wright* are members of African American communities.

12.     Petitioner, is also a plaintiff in the proceeding of Case #*1:15-CV-00963-LPS (Chang v. City of Wilmington)*, who shares the same rights, privileges and immunities secured to the Plaintiffs in *Wright* by the Fourth and Fourteenth Amendments to the Constitution of the United States.

13.     In *Wright*, the plaintiffs set forth common questions of law and fact including, without limitation, "the common and predominant question of whether the Defendant's Investigatory Detention policy of handcuffing, transporting, searching, and imprisoning citizens based solely on reasonable suspicion, without regard to the circumstances, is a violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution."

14.     In *Chang*, Plaintiff set forth, in part, the same claims "pursuant to 42 U.S.C. § 1983 to redress the deprivation by the Defendants (WPD), acting under color of state law, of rights, privileges and immunities secured to the Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States."

15.     The basis of the complaint in *Chang* is that City of Wilmington

4

discriminated on the basis of race and ethnicity by submitting, under seal, fabricated police reports. These reports give rise to his claims under the Fourth and Fourteenth Amendments to the United States Constitution.

## Legal Standards

16.     The public's right to access civil trials under the First Amendment is re-affirmed by the U.S. Supreme Court with its decision not to hear *DELCOG v. Strine* in 2014. The burden of overcoming the presumption of access rests on the party seeking to seal documents.

17.     The greater the public interest in the litigation, the greater the showing necessary to overcome the presumption of access. In class actions, the standard for denying public access is applied with "particular strictness."

18.     In a class action before the Third Circuit Court of Appeals, the Court stated as follows:

> The right of public access is particularly compelling here, because many members of the "public" are also plaintiffs in the class action. Accordingly, all the reasons… for the right of access to public records apply with even greater force here. Protecting the access right in class actions "promotes [class members'] confidence" in the administration of the case. Additionally, the right of access diminishes the possibility that "injustice, incompetence, perjury, [or] fraud" will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation. Finally, openness of class actions provides class members with a more complete understanding of the class action process and a better perception of its fairness. (No. 99-5485 IN RE: CENDANT)

19.     On the other hand, the party seeking non-disclosure should provide

detailed justifications for sealing, on a document by document basis:

> In order to override the common law right of access, the party seeking the closure of a hearing or the sealing of part of the judicial record "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." Miller , 16 F.3d at 551 (citing Publicker, 733 F.2d at 1071). In delineating the injury to be prevented, specificity is essential. See Publicker, 733 F.2d at 1071. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. (No. 99-5485 IN RE: CENDANT)

20.    There is a material difference between protective orders under Federal Rule of Civil Procedure 26 and orders to seal judicial records. The former relate to discovery between the parties, whereas the latter concern material that has been placed in the court record.

21.    A party cannot file documents under seal simply because they were originally produced pursuant to a Rule 26 protective order.

### Recent Decisions Involving Class Action Cases

22.    In *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, the Sixth Circuit Court of Appeals reversed a district court's orders sealing materials and approving a settlement in a class action against Blue Cross Blue Shield alleging it engaged in price-fixing to the detriment of millions of Michigan citizens. (*Shane, 2016 U.S. App. LEXIS 10264*)

23.    The Sixth Circuit held that, with the parties' substantive filings kept from public view, fairness of the settlement to unnamed members of the class was in

doubt, and that the parties' asserted bases for sealing were "brief, perfunctory, and patently inadequate." The Sixth Circuit faulted the parties and the district court for conflating "the standards for entering a protective order with the vastly more demanding standards for sealing off judicial records from public view." The Sixth Circuit also rejected Blue Cross' concern about disclosing "competitively-sensitive financial and negotiating information" because "information about a practice since outlawed by the Michigan Legislature is not entitled to protection as a legitimate trade secret."

24.     In *Center for Auto Safety v. Chrysler Group, LLC*, a class action against Chrysler alleging defects in certain of its vehicles, the Ninth Circuit Court of Appeals vacated a district court order refusing to unseal documents. (*Ctr. For Auto Safety, 809 F.3d at 1094-96, 1099-1103.*)

25.     The Ninth Circuit held that a motion for preliminary injunction, "which frequently requires the court to address the merits of the case" and "which often includes the presentation of substantial evidence" will often "reflect the need for public access," and therefore "compelling reasons" were required to seal materials.

26.     In the class action *Cohen v. Trump University*, the Southern District of California granted a motion by the Washington Post to intervene and unseal various exhibits the parties had filed in connection with the plaintiff's motion for

class certification, including materials that allegedly evidenced a deceptive advertising campaign by Trump that had defrauded thousands of consumers. (*Cohen v. Trump, No. 13-cv-2519-GPC-WVG, Order (S.D. Cal. May 27, 2016)*.)

27.   The Court held that the public interest in understanding the judicial process is heightened" given that Trump had become "the front-runner for the Republican nomination in the 2016 presidential race" and had himself "placed the integrity of these court proceedings at issue."

28.   In Target Corporation Customer Data Breach Litigation arising out of a breach of the company's data, a federal district court in Minnesota granted the plaintiffs' motion to unseal their memorandum of law in support of their motion for class certification. (*In re: Target Corporation Customer Data Breach Litig., Case No. 14-md-2522, Order (D. Minn. Aug. 13, 2015)*.)

29.   The court rejected Target's argument that disclosure would risk another data breach, ruling that Target had failed to demonstrate how statements about Target's alleged negligent conduct prior to and during the data breach in 2013 constituted a disclosure of confidential material about its information security procedures in 2015.

30.   With some exceptions, courts allow certain judicial records to remain sealed on a document by document basis.

31.   In General Motors Ignition-switch case, the Southern District of

New York sealed a number of documents because the documents were not considered in its ruling. (*In re General Motors Ignition Switch Litig., 14-md-2543, Orders (S.D.N.Y. July 2 and Dec. 2, 2015).*)

32.     In *Glass Dimensions, Inc. v. State Street Bank & Trust Corporation,* the U.S. district court recognized "the sensitive and confidential nature of the information" of the sealed documents and "a particularized showing of the presence of commercial harm" if released to the public. (*Glass Dimensions, 2013 U.S. Dist. LEXIS 170190.*)

33.     In a consumers' privacy rights class action against Google/Gmail, the Northern District of California conducted a detailed document by document analysis and permitted Google to seal most of the materials because not doing so could cause competitive harm to Google and lead to a breach in security of the Gmail system. (*In re Google Inc. Gmail Litig., No. 13-md-2430, Order (N.D. Cal. August 6, 2014).*)

## Argument

34.     The rulings by this Court and the Third Circuit in Case# *1:11-CV-01015-MAM DELCOG v. Strine* affirmed public's right to access civil trials.

35.     "Sealing Court Records and Proceedings: A Pocket Guide" (Exhibit A) published by the Judicial Conference of the United States in 2011 reflects a national policy of public access to civil cases.

36.    The burden of overcoming the presumption of access rests on City of Wilmington/WPD seeking to seal documents.

37.    The openness of administration of justice in class cases involving police misconduct is of public interest. Petitioner and the public has a Right to Access to class action *1:13-CV-01966-GAM (Wright v. City of Wilmington.)*

38.    To detain, unlawfully handcuff, transport, search, and imprison any person based solely on reasonable suspicion but without probable cause, as alleged in Wright, is facially unconstitutional.

39.    In *Wright*, the ACLU contends that policies such as stop-and-frisk or stop, frisk and detain undermine the trust the community has in the police and is one of the reasons that there is a contentious relationship between the police and the broader community (Exhibit B.)

40.    The relationship between WPD and the broader community is of public interest, and the public interest is heightened by the circumstances that both Wright and Chang belong to their respective minority groups.

41.    Sealing this class action of public interest effectively precludes unnamed class members in Wright, Petitioner, and the public from seeking to exercise their constitutional right of access.

42.    Unsealing this class action of public interest protects the public from the practice called "Blue Wall of Silence", also known as a practice of police

misconduct to cover up police misconduct.

43.     "[M]aking court files accessible" is particularly appropriate where, as here, the government is a party to the matter: "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987) (FTC);* see also *Doe, 749 F.3d at 271* ("[T]he public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation" (citing *FTC)).*

44.     Secrecy erodes the legitimacy of the institution of the courts: Maintaining "a two-tier system, open and closed," threatens public "[c]onfidence in the accuracy of [the court's] records ..., ... the authority of its rulings and the respect due its judgments." (*CBS, Inc. v. U.S. Dist. Ct., 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.).*)

45.     Petitioner does not object in general to redactions required by statute or rule, or to the redaction of sensitive law-enforcement information or personal information such as names or contact information of defendants, victims, unindicted third parties, surveillance targets, their interlocutors, or confidential informants.

46.     Upon information and belief, the investigative facts in Wright amounted to, at best, reasonable suspicion not probable cause.

11

## Specific Relief Requested

47.    Petitioner seeks unsealing of *1:13-CV-01966-GAM (Wright v. City of Wilmington)* as set forth below. Petitioner respectfully requests that

a.)  The Court issue an order permitting him to intervene for the limited purpose of moving to unseal the records;

b.)  The Court issue an order to unseal the records;

c.)  The Court issue an order to compel City of Wilmington/WPD to file requests for continued sealing within 120 days of the date of this order, in which City of Wilmington/WPD shall identify with particularity the information in each docket sheet and document to remain sealed and the compelling interest that justifies the continued sealing of that information.

## Conclusion

For the reasons explained herein, Petitioner respectfully requests that the Court grant the requested relief set forth above and in Petitioner's concurrently filed Proposed Order.

Respectfully Submitted,

Weih (Steve) Chang
122 Pumpkin Patch Lane
Hockessin, DE 19707
302-494-9992
March 9, 2018

12

# CERTIFICATE OF SERVICE

CA NO. 13-1966-GAM/SRF

I hereby certify that on <u>March 9 2018,</u> I served a copy of the foregoing

<u>Motion of Proposed Intervenor Weih Steve Chang to Intervene and Unseal</u>

<u>Judicial Records of Civil Rights Class Action</u> document with exhibits upon

the following Parties listed below by <u>email</u>.

Stephen Price Norman
The Norman Law Firm
30838 Vines Creek Road, Suite 3
Dagsboro, DE 19939
snorman@thenormanlawfirm.com

Ryan R. Tack-Hooper
ACLU of Delaware
100 West 10th Street
Wilmington, DE 19801
rtackhooper@aclu-de.org

C. Malcolm Cochran , IV
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cochran@rlf.com

Christine Dealy Haynes
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
haynes@rlf.com

Kelly E. Farnan
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com

Travis Steven Hunter
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
hunter@rlf.com

Weih Steve Chang
122 Pumpkin Patch Lane
Hockessin, DE 19707
302-494-9992

DATED: March 9, 2018

# Exhibit A

# Sealing Court Records and Proceedings:
## A Pocket Guide

Robert Timothy Reagan

Federal Judicial Center

2010

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop and conduct research and education programs for the judicial branch. The views expressed are those of the author and not necessarily those of the Federal Judicial Center.

# Exhibit B

THE NEWS JOURNAL SATURDAY, NOV. 23, 2013
COVER STORIES

delawareonline.com

Lawsuit: Court papers detail two incidents

Jayvon Wright claims that on Nov. 23, 2011, he was tackled, handcuffed, searched and
transported to the police station and held based only on reasonable suspicion of two
minor charges that later were dropped. Jennifer corbet the news journal Continued from
Kathleen MacRae, executive director of the Delaware American Civil Liberties Union,
said Friday that if Wilmington has engaged in that practice -without probable cause to
arrest the suspect - it is unconstitutional. "If this is a regular practice of the Wilmington
Police Department, it should stop immediately," she said. On Thursday night, Prado said
that stop-and-frisk prevents crime. "The city government is scared to take a forceful,
aggressive stance against crime and until we have a forceful, aggressive public safety
policy, we're going to continue to see this shootings," said Prado, who could not be
reached for comment about the federal lawsuit on Friday. MacRae, meanwhile, said
Prado was wrong about stop-and-frisk, saying the policy has "been shown to be
ineffective in reducing crime and in fact counterproductive." According to court papers,
the existence of the Wilmington stop, frisk and detain policy is not in dispute and police
officials have admitted to it under oath. The lawsuit filed Friday details two incidents
where three individuals were stopped, frisked, handcuffed, transported and imprisoned by
Wilmington Police. In one case, the two plaintiffs claimed they were also subjected to a
cavity search in a stop that never resulted in any charges. Wilmington Police spokesman
Cpl. Mark Ivey declined comment on the lawsuit Friday citing a department policy on
pending litigation. Norman said Friday that he believes there are "But based on what
these suspects were charged with you have to wonder," he said. In court papers, Wright
claims that on Nov. 23, 2011, he saw a friend of his being searched by police and walked
over to ask the friend if he needed him to call his parents. A Wilmington Police officer
responded by tackling Wright and handcuffing him and cursing at him, saying, "Shouldn't
you be playing basketball?" according to the suit. Wright was told he was being charged
with resisting arrest but that charge was never filed, according to court papers. Two hours
later, Wright was released and charged with loitering and disorderly conduct. Both
charges were later dropped. In the second incident detailed in the suit, on March 15,
2013, Antoine Murrey and Keith Medley were walking from a friend's apartment to pick
up Medley's son at a school across the street when three officers emerged from a police
vehicle with guns drawn. The men complied with orders to get on the ground, were
handcuffed and searched, according to the suit. After finding a set of car keys on Murrey,
officers then searched Murrey's nearby car, according to court papers and even drove it
around the block. The men were then walked back into the apartment building and were
strip searched and cavity searched, according to the suit, with officers aiming stun guns at
them. Finally, the two said they were taken to police headquarters and held in a cell for
an hour before being released. No charges were ever filed, a large number of people in
the city of Wilmington who have had their rights violated under this policy and likely do
not realize it. He said his firm will be seeking other plaintiffs to join the suit. On Friday,
lead plaintiff Jayvon J. Wright, 23, said he came forward as a plaintiff "to get justice" for

all the people whose rights have been violated by the police policy. "In my case, I was tackled, handcuffed, searched and then taken to prison ... justified only on 'reasonable suspicion' that I had committed loitering and disorderly conduct," said Wright, reading a prepared statement. "I was half a block from my own house when all of this happened." The suit says the policy violates the Constitution's Fourth Amendment protection against unreasonable searches and Fourteenth Amendment protection against wrongful imprisonment and violations of due process. Norman said, in his experience with clients from Wilmington, policies like this also breed a deep distrust between police and the community. MacRae and community activist, Pastor Derrick Johnson, of the Joshua Harvest Church, agreed. "The Wilmington Police Department regularly complains that they get little cooperation from the community when trying to solve crimes," MacRae said. "The ACLU contends that policies such as stop-and-frisk or stop, frisk and detain undermine the trust the community have in the police and is one of the reasons that there is a contentious relationship between the police and the broader community." Johnson said the stop, frisk and detain policy "may be the single biggest contributor to the aggravation in the community in terms of how people perceive police." Legal experts said the Wilmington policy, if carried out as detailed in the suit, appears to push and perhaps cross legal boundaries for stop-and-frisk. Philadelphia civil rights attorney Paul Messing said on stop-and-frisk alone there is a tough two-step legal process where police first have to have a reasonable suspicion - based on something specific and not just a feeling - that a crime took place. Then, after the stop, police have to have reason to believe the person may be armed and dangerous and a frisk is required to ensure the officer's safety. To then move from there to actually handcuffing, transporting and detaining a suspect requires an even higher standard, he said, known as probable cause. And from what was described in the suit, he said, "It doesn't appear the suspicions were well-founded at all." Wesley Oliver, an associate professor and director of the criminal justice program at Duquesne University School of Law, agreed. He said without hearing the evidence or suspicions the police had before these stops, it is tough to evaluate the legality of the policy. Tell us what you think at delaware online.com What do you think about police officers using "stop-and-frisk" methods? according to the suit, and no one ever offered the men any explanation. "Medley had to subsequently describe to his 6-year-old son why he was handcuffed at gunpoint," according to the suit. According to a search of court records, Wright had no previous criminal history. Murrey and Medley both had a history of convictions, the bulk of which appeared to involve low-level drug crimes like possession. Norman acknowledged the criminal backgrounds of Murrey and Medley but said that did not justify what happened. "A few minor issues in their past doesn't mean you can violate their constitutional rights," Norman said, or hold their treatment to a lesser standard. The suit seeks a permanent injunction against the police policy and damages. Norman said he also believes that city police need additional training. MacRae called on city police to release data on how frequently they use stop-and-frisk and stop-frisk-and-detain methods, including the race and age of the person stopped and the location where stops occurred.

Contact Sean O'Sullivan at (302) 324-2777
or sosullivandela-wareonline.com
or on Twitter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAYVON WRIGHT, ANTOINE MURREY,          *
KEITH MEDLEY, GREGORY GRIFFIN,          *
AND RASHAD EL, INDIVIDUALLY,            *     CASE NO. 13-1966-GAM/SRF
And on behalf of a Class of others similarly   *
situated,                               *
                                        *
              Plaintiff,                *
                                        *
              v.                        *
                                        *
City of Wilmington                      *
                                        *
              Defendant                 *
                                        *

## ORDER

Upon Consideration of Proposed Intervenor's Motion to Unseal

a.  Weih Steve Chang is hereby granted to proceed as Intervenor for the limited
    purpose of moving to unseal the judicial records of the above-captioned
    action;

b.  Intervenor's petition to unseal judicial records is hereby granted;

c.  Defendant City of Wilmington/WPD is hereby ordered to file requests for
    continued sealing within 120 days of the date of this order, in which
    Defendant shall identify with particularity the information in each docket
    sheet and document to remain sealed and the compelling interest that justifies
    the continued sealing of that information.

IT IS SO ORDERED.

JUDGE: _____

DATE: _____